QUINN EMANUEL URQUHART & SULLIVAN, LLP
Viola Trebicka (Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Ryan Sullivan (*pro hac vice*)
ryansullivan@quinnemanuel.com
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200

*Attorneys for Defendant Lakeview Loan Servicing, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELIJAH IDRIS, GOWAN MCLIN, and JUSTIN BICKHAM individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LAKEVIEW LOAN SERVICING, LLC,<br><br>Defendant. | Case No.: 3:25-CV-05087-TLT<br><br>**LAKEVIEW LOAN SERVICING, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**<br><br>Before: Hon. Trina L. Thompson<br><br>Hearing Date: November 11, 2025<br>Hearing Time: 2:00 p.m. |

**NOTICE OF MOTION AND MOTION AND STATEMENT OF REQUESTED RELIEF**

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on November 11, 2025 at 2:00 p.m., in Courtroom 9 of the United States District Court for the Northern District of California, San Francisco Division, 50 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, defendant Lakeview Loan Servicing LLC will, and hereby does, move this Court for an order dismissing with prejudice the complaint (ECF 1) filed by plaintiffs Elijah Idris, Gowan McLin, and Justin Bickham, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] This motion is based upon the following Memorandum of Points and Authorities; the concurrently-filed Request for Judicial Notice ("RJN") and Declaration of Kawsar Ali ("Ali Decl."); the filings in this action; and any such additional material or argument as may be submitted to the Court.[2]

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should dismiss plaintiffs' complaint for lack of Article III standing where plaintiffs have not alleged any concrete injury analogous to one conferring standing under traditional common law privacy torts and specifically where there is no alleged conduct that would be "highly offensive" to a reasonable person, as compelled by the United States Court of Appeals for the Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, — F.4th —, 2025 WL 2448824 (9th Cir. Aug. 26, 2025)?

2. Whether the Court should dismiss plaintiffs' complaint because plaintiffs consented to the complained-of conduct under Lakeview's comprehensive online privacy notice?

3. Whether the Court should dismiss plaintiffs' claims for negligence *per se* (Count II), violation of the Comprehensive Computer Data Access and Fraud Act (Count III) and Unfair Competition Law (Count IV), breach of express and implied contract (Count VI), and breach of

---

[1] Unless otherwise indicated, "Rules" in the accompanying Memorandum of Points & Authorities refers to the Federal Rules of Civil Procedure.

[2] The Court granted the parties' stipulated request for an extension of page limits applicable to the briefing of this motion, permitting Lakeview to file an opening brief of up to 30 pages and a reply brief of up to 18 pages. ECF 22.

confidence (Count IX), as it did in *Shah v. Capital One Financial Corp*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025), where plaintiffs' counsel (who represented plaintiffs in *Shah*) have done nothing to improve upon these claims in this case?

4. Whether the Court should dismiss plaintiffs' remaining claims for numerous claim-specific reasons, including:

a. Plaintiffs do not state a claim for negligence (Count I) because they have not alleged cognizable damages under California law;

b. Plaintiffs do not state a claim for violation of the California Consumer Privacy Act (CCPA) (Count V) because they do not (and cannot) allege a security breach involving personal information as defined and expressly required by the CCPA for a private cause of action;

c. Plaintiffs do not state a claim for unjust enrichment (Count VII) because they have not plausibly alleged Lakeview received and unjustly retained any benefit at their expense;

d. Plaintiffs' claim for declaratory judgment (Count VIII)—and its incorporated request for injunctive relief—fails because (i) both declaratory judgment and injunctive relief are remedies, not independent causes of action; (ii) plaintiffs' request for declaratory judgment necessarily fails with the failure of plaintiffs' substantive claims; and (iii) plaintiffs have not plausibly alleged irreparable harm or lack of an adequate legal remedy warranting injunctive relief;

e. Plaintiffs' claim for violation of the California Invasion of Privacy Act (CIPA) (Count X) because Lakeview cannot eavesdrop on its own communications with plaintiffs; plaintiffs have not alleged actual eavesdropping by third parties; and no "contents" of communications are at issue; and

f. Plaintiffs' claims for violation of the Electronic Communications Privacy Act (ECPA) (Counts XI & XII) fail because the ECPA excepts from its scope the interception of communications by parties to the communication or interceptions to which one party has consented unless the interception was made for a criminal or tortious purpose, which plaintiffs have not adequately alleged, and Lakeview is not a provider of "electronic communications services" merely by offering a website on which consumers may communicate with Lakeview (and not third parties)?

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION AND STATEMENT OF REQUESTED RELIEF ............ i

STATEMENT OF ISSUES TO BE DECIDED ............ i

MEMORANDUM OF POINTS AND AUTHORITIES ............ 1

PRELIMINARY STATEMENT ............ 1

RELEVANT FACTUAL ALLEGATIONS ............ 2

ARGUMENT ............ 5

I. *POPA* REQUIRES DISMISSAL BECAUSE PLAINTIFFS LACK ARTICLE III STANDING ............ 5

A. Plaintiffs' Complaint Fails on Its Face to Establish Article III Standing Under *Popa* ............ 6

B. Lakeview's Factual Challenge to Standing Also Compels Dismissal Under *Popa* ............ 9

II. PLAINTIFFS CONSENTED TO LAKEVIEW'S ALLEGED CONDUCT, REQUIRING DISMISSAL ............ 10

A. Plaintiffs Agreed to Lakeview's Online Privacy Notice ............ 11

B. The OPN Clearly Discloses the Complained-Of Conduct ............ 12

III. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM ............ 16

A. Plaintiffs Have Not Improved Upon the Claims This Court Dismissed in *Shah* ............ 16

1. Negligence *Per Se* (Count II) ............ 16

2. Comprehensive Computer Data Access & Fraud Act (CDAFA) (Count III) and Unfair Competition Law (UCL) (Count IV) ............ 17

3. Breach of Express and Implied Contract (Count VI) ............ 17

4. Breach of Confidence (Count IX) ............ 18

B. Plaintiffs' Remaining Claims Should Be Dismissed with Prejudice ............ 18

1. Negligence Fails Because Plaintiffs Allege No Actual Loss (Count I) ............ 18

2. The California Consumer Privacy Act (CCPA) Also Fails (Count V) ............ 20

(a) Plaintiffs' Claims Based on Sections 1798.100-148 Fail ............ 20

(b) Plaintiffs' allegations are insufficient to trigger the right to private action under Section 1798.150 ....20

(c) Plaintiffs' request for statutory damages should be dismissed for failure to send a pre-suit notice letter ....22

3. Unjust Enrichment (Count VII) ....22

4. Declaratory Judgment and Injunctive Relief (Count VIII) ....23

5. California Invasion of Privacy Act (CIPA) (Count X) ....24

(a) Plaintiffs' Section 631(a) wiretapping claim should be dismissed ....24

(b) Plaintiffs' recording claims under Section 632(a) should be dismissed ....26

6. The Electronic Communications Privacy Act (ECPA) (Counts XI & XII) ....27

(a) No Improper Interception under 18 U.S.C. § 2511(1) (Count XI) ....27

(b) Lakeview is not an ECS under 18 U.S.C. § 2511(3) (Count XI) ....29

CONCLUSION ....30

## TABLE OF AUTHORITIES

**Page**

### Cases

*A.J. v. LMND Med. Grp.*,
No. 23-cv-03288-RFL, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .......... 23

*Am. Diabetes Ass'n v. United States Dep't of the Army*,
938 F.3d 1147 (9th Cir. 2019) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 26

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) .......... 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 26

*Beltran v. Nationstar Mortgage LLC*,
No. 4:25-cv-04412-JSC (N.D. Cal.) .......... 2

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) .......... 18

*In re BetterHelp, Inc. Data Disclosure Cases*,
No. 23-CV-01033, 2024 WL 3416511, (N.D. Cal. July 15, 2024) .......... 22

*Birdsong v. Apple, Inc.*
590 F.3d 955 (9th Cir. 2009) .......... 17

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 24

*Brown v. Google*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 25

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 10

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) .......... 9

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) .......... 8

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) .......... 18

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 11, 17

*Crispin v. Christian Audigier, Inc.*,
717 F. Supp. 2d 965 (2010) .......... 30

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal 2001) .......... 30

*Delgado v. Meta Platforms, Inc.*,
718 F. Supp. 3d 1146 (N.D. Cal. 2024) .......... 20

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) .......... 9

*Doe v. Genesis Health Sys.*,
No. 23-CV-04209, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .......... 29

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 28

*Doe v. MKS Instruments, Inc.*,
No. 23-CV-00868, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) .......... 22

*Drury v. Ryan*,
109 Cal. App. 5th 1102 (2025) .......... 16, 17

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......... 23

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589, 605 (9th Cir. 2020) .......... 25

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) .......... 29

*Fleshman v. Wells Fargo Bank, N.A.*,
27 F. Supp. 3d 1127 (D. Or. 2014) .......... 13, 16

*Gardiner v. Walmart Inc.*,
No. 20-CV-04618, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......... 21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 28

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) .......... 19, 22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 17

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .......... 17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 23

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 8

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 11, 12, 15, 16, 28

*Low v. LinkedIn Corp.*,
No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .......... 9

*Marden v. LMND Medical Group*,
No. 23-cv-03288-RFL, 2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 19

*McCoy v. Alphabet, Inc.*,
No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 27

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 26

*Pica v. Delta Air Lines, Inc.*,
No. 18-cv-2876, 2019 WL 1598761 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591 (9th Cir. 2020) .......... 30

*Pica v. Delta Air Lines, Inc.*,
No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) .......... 16

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 28

*Popa v. Microsoft Corp.*,
— F.4th —, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 1, 5, 6, 7

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) .......... 19

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 19

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 24

*Ruiz v. Gap, Inc.*,
622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd,* 380 F. App'x 689 (9th Cir. 2010) .......... 18, 19

*Sawicky v. AMC Networks Inc.*,
753 F. App'x 501 (9th Cir. 2019) .......... 18

*Shah v. Capital One Financial Corp*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... *passim*

*Shah v. Capital One Financial Corp.*,
No. 3:24-cv-05985-TNT (N.D. Cal.) .......... 2, 18

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) .......... 9

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018) .......... 12

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 5, 6

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 28

*Svenson v. Google Inc.*,
No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .......... 19

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22-cv-2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL 1704437 (9th Cir. June 18, 2025) .......... 27

*Tian v. Bank of Am., N.A.*,
No. 24-CV-09877, 2025 WL 1377767 (C.D. Cal. Apr. 2, 2025) .......... 21, 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*Valenzuela v. Kroger Co.*,
No. 22-cv-6382, 2023 WL 4418887 (C.D. Cal. June 23, 2023) .......... 24

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 24, 26

*Yunker v. Pandora Media, Inc.*,
No. 11-cv-03113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........ 29

*Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 28

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 24, 25

**<u>Rules/Statutes</u>**

<u>Federal</u>

Fed. R. Civ. P. 12(b)(1) ........ 1

Fed. R. Civ. P. 12(b)(6) ........ 1, 2

16 C.F.R. § 313.3(p)(1)-(3) ........ 13

15 U.S.C. § 6809(4)(B) ........ 13

18 U.S.C. § 2510(8) ........ 24

18 U.S.C. § 2510(15) ........ 29

18 U.S.C. § 2511 ........ 27

18 U.S.C. § 2511(1) ........ 27, 29

18 U.S.C. § 2511(2)(c) ........ 27

18 U.S.C. § 2511(2)(d) ........ 11

18 U.S.C. § 2511(3) ........ 29

18 U.S.C. § 2511(3)(a) ........ 29

18 U.S.C. § 2511(a) ........ 13

18 U.S.C. § 2702(a)(1) ........ 29

18 U.S.C. § 2711 ........ 29

<u>State</u>

Cal. Civ. Code § 1798.81.5(d)(1)(A) ........ 21

Cal. Civ. Code § 1798.81.5(d)(1)(A)(i)-(vii) ........ 21

Cal. Civ. Code § 1798.100-148. ........ 20

Cal. Civ. Code § 1798.115 .......... 11
Cal. Civ. Code § 1798.145(e) .......... 20
Cal. Civ. Code § 1798.150 .......... 20
Cal. Civ. Code § 1798.150(a) .......... 21
Cal. Civ. Code § 1798.150(b) .......... 22
Cal. Civ. Code § 1798.150(c) .......... 20
Cal. Penal Code § 502(c)(1)(B) .......... 11
Cal. Penal Code § 502(c)(2) .......... 11
Cal. Penal Code § 630. .......... 24
Cal. Penal Code § 631(a) .......... 11
Cal. Penal Code § 632 .......... 11
Cal. Penal Code § 632(c) .......... 27

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## Preliminary Statement

Despite making dramatic allegations of "outrageous, illegal, and widespread" disclosure of "Nonpublic Personal Information" and "Personally Identifiable Financial Information," plaintiffs allege the disclosure of nothing more than mundane, non-sensitive information regarding their interactions with Lakeview's website, such as the fact of visiting the top-level *https://lakeview.com* domain webpage, button clicks, scrolling rates, and browser or device specifications. The routine practice of sharing this limited information allows companies to deliver advertising to consumers who are more likely to be interested in their products; it also benefits consumers by alerting them, for example, that the camping gear they admired last week is now on sale (or mortgage interest rates have dropped). The complained-of conduct in plaintiffs' 77-page complaint—when stripped of its vague but inflammatory characterizations and conclusory allegations—boils down to a ubiquitous online practice that courts have routinely found cannot be the basis for any claim because it does not disclose *any* sensitive information.

Plaintiffs' complaint should be dismissed on the following three independent grounds:

*First*, plaintiffs have not alleged any concrete injury sufficient for Article III standing. As the Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, — F.4th —, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) makes clear, courts must consider whether alleged data disclosures meet Article III's concrete injury requirement by comparing them to the type of privacy violations or reputational injuries that traditionally have been grounds for suit. As in *Popa*, the disclosure of mundane information about online browsing alleged in the complaint is simply not analogous to those redressed by traditional torts. The *Popa* decision—which is controlling and squarely on-point—compels the conclusion that any alleged mishandling of such unrevealing information (which Lakeview denies) does not give rise to a concrete injury. Pursuant to the Ninth Circuit's clear holding in *Popa*, the entire complaint should be dismissed for lack of standing under Rule 12(b)(1).

*Second*, plaintiffs' complaint should be dismissed under Rule 12(b)(6) because plaintiffs consented to the alleged data collection and distribution. Lakeview fully discloses the complained-of conduct in its comprehensive privacy notice (attached to plaintiffs' complaint). Plaintiffs do not

contest they saw this notice; to the contrary, they affirmatively allege it is a binding privacy contract Lakeview has with its customers. Because plaintiffs consented to Lakeview's alleged conduct, they cannot be heard to complain of it now.

*Finally*, plaintiffs' "kitchen sink" pleading—which attempts to spin the same alleged data disclosure into ***twelve*** different statutory violations, common law claims, and remedies—should be dismissed for failure to state a claim. This Court already dismissed ***five*** of these claims on the basis of a near-identical complaint filed by the same plaintiffs' counsel in *Shah v. Capital One Financial Corp*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025). Plaintiffs' counsel has not improved upon those claims here and they can and should be dismissed with short shrift. The remaining seven claims fare no better for reasons individual to each claim that are discussed below. For these reasons too, plaintiffs' complaint should be dismissed with prejudice.

## Relevant Factual Allegations[3]

Plaintiffs and Their Counsel. The named plaintiffs are all California residents with mortgages serviced by Lakeview. ECF 1, ¶¶ 17-19. Their counsel, CohenMalad, LLP, has filed two other nearly identical complaints against other defendants in this District: *Shah v. Capital One Financial Corp.*, No. 3:24-cv-05985-TNT ("*Shah*") and *Beltran v. Nationstar Mortgage LLC*, No. 4:25-cv-04412-JSC. *See* RJN at §1 & Exs. 1-2. For the Court's convenience, a redline showing alterations to the near-identical complaint the Court has already considered in *Shah* (in which the Court dismissed several claims) is attached as Exhibit 3 to the RJN.

Defendant Lakeview. Lakeview services and refinances mortgage loans throughout the United States. ECF 1, ¶ 20. It maintains a website, *lakeview.com*, that markets mortgage and refinancing products. *See, e.g.*, *id.* at 18:7-24. The separate *apply.lakeview.com* subdomain allows customers to create a "tavant_new_account" and log-in online to submit loan applications, including applications for refinancing. *See, e.g.*, *id.* at 20:1-18, ¶¶ 62-65, 106, 112, 118.

[3] For purposes of the Rule 12(b)(6) portions of this motion only, Lakeview assumes the truth of plaintiffs' non-conclusory factual allegations, to the extent not contradicted by the other allegations in the complaint (ECF 1) or the materials attached to it (ECF 1-1 & 1-2). Page citations are to internal pagination if available.

The Information Allegedly Collected and Transmitted by Lakeview. Plaintiffs' allegations are conspicuously light on specifics of the information actually collected and disclosed. Plaintiffs contend that "IP addresses and browser characteristics are necessarily transmitted to the tracking platforms." ECF 1, ¶ 53. But plaintiffs' allegations are different for each alleged third-party code:

*Meta Pixel*. Plaintiffs only specifically allege that the website name "Lakeview: Largest Mortgage Loan Servicer in the U.S." and the URL *https://lakeview.com/* are collected and transmitted by the Meta Pixel. *Id.* ¶ 54; *cf. id.* at 16, § ii (omitting Meta Pixel from analysis of alleged "personal and financial information" collected from user interactions with Lakeview's website). Plaintiffs also assert that the Meta Pixel collects the "the 'c_user cookie,' which enables Facebook [one of Lakeview's advertising service providers] to link the user to their logged in Facebook account and thereby identify the user." *Id.* ¶ 43.

*Google Analytics*. Plaintiffs allege Google code collects and transmits: (1) pageview events showing website information, including the title and URL for each webpage on the *lakeview.com* website; (2) information related to other specific events, including the event category and event name parameters, for button, outbound link, and phone number click events, scroll events (how far a user scrolled on a page), and a "tavant_new_account" event when a user makes a new account on *https://apply.lakeview.com/*; (3) information related to the browser settings; and (4) an identifier for a first-party cookie set by Lakeview. ECF 1, ¶¶ 46, 54, 56-67. Plaintiffs allege this information shows a user is viewing pages where they might "learn about refinancing loans" and/or indicates a user created or logged into an account to submit a refinancing application. *Id.* ¶¶ 57, 62-65. When a user is filling out an application for refinancing, the only specific information plaintiffs allege is collected or transmitted is "that the user is viewing a 'loan-application'" page. *Id.* ¶ 67. Plaintiffs do not allege any of this information is linked to a user's identity. Only plaintiff Idris alleges he created an account and submitted a loan application through *lakeview.com*. *Id.* ¶ 106; *cf. id.* ¶¶ 112, 116.

*Microsoft Clarity*. Plaintiffs allege the Microsoft Clarity code is a "session recording" tool which collects and transmits the current webpage a user is visiting, session recording information for the webpage, and a first-party cookie ID. ECF 1, ¶¶ 47, 54, 57, 62. Plaintiffs do not allege this information is linked to a user's identity.

*Tavant's VELOX NXT*. Finally, plaintiffs allege Tavant's VELOX NXT platform collects "user data, including granular information about users' device[s], such as CPU architecture, available memory, and browser characteristics, as well as behavioral tracking, including mouse movements and click events." ECF 1, ¶ 48. Like Microsoft Clarity, the VELOX NXT platform is allegedly a "session replay" tool. As with the Google and Microsoft Clarity code, plaintiffs do not allege that this information is linked to a user's identity.

<u>Lakeview's Declaration For Factual Standing Challenge.</u> Although plaintiffs' lack of Article III standing is facially apparent from the pleadings, Lakeview is additionally asserting a factual challenge. To that end, Lakeview has provided a declaration from its Website Manager, Mr. Kawsar Ali, which confirms and adds context to plaintiffs' allegations. For example, Mr. Ali confirms the Meta Pixel on the Lakeview website is configured to transmit "only pageview events" and sends only the truncated *https://lakeview.com* URL regardless of which page is viewed or action is taken on Lakeview's website. Ali Decl. ¶¶ 13-14, 16. It is not configured to, and will not, collect or transmit any information entered by a user or any other user behavior. *Id.* ¶ 17.

Similarly, consistent with plaintiffs' allegations, Mr. Ali confirms the Google code transmit only a limited set of events including button presses, clicked links, and scrolling, and does not transmit any information entered by a user into a text field. *Id*. ¶ 24, 27-29. Mr. Ali also confirms that the Google code does not collect or transmit any personally-identifying information and that Lakeview has no way to link a first-party cookie ID with an individual user. *Id.* ¶ 25. Mr. Ali further explains that if a user is applying for a loan, no application information entered into any field will be collected. *Id.* ¶¶ 27, 34. Moreover, all information collected by the Google code is anonymous, and Lakeview is unaware of any way that it could be re-identified. *Id.* ¶ 25.

Mr. Ali also confirms Microsoft Clarity collects only anonymous session recordings, that it is configured to mask information entered by a user and sensitive information on the webpages, and that Lakeview is unaware of any way this information could be re-identified. *Id.* ¶ 20.

Finally, Mr. Ali explains that Lakeview did not install and does not manage the VELOX NXT platform on the *apply.lakeview.com* subdomain. ¶ 32. Tavant is an independent company that provides online application technology for use by Lakeview to originate loans and manages the

*apply.lakeview.com* subdomain. *Id.* ¶¶ 12, 30-31. Thus, this platform is not third-party code at all, but instead a first-party program used by *Tavant* to collect information for its own use when a customer applies for a loan. Lakeview does not have access to the VELOX NXT platform. *Id.* ¶ 32.

## Argument

### I. *Popa* Requires Dismissal Because Plaintiffs Lack Article III Standing

To proceed in federal court, plaintiffs must sufficiently allege they "suffered an injury in fact that is concrete, particularized, and actual or imminent," that must be "real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 424 (2021). "At base . . . *TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system" to determine standing. *Popa v. Microsoft Corp.*, — F.4th —, 2025 WL 2448824, at *4 (9th Cir. Aug. 26, 2025). Applying this standard, plaintiffs have not alleged a "concrete" injury that confers standing.

The Ninth Circuit's recent decision in *Popa*—a single-issue appeal considering the sole question of whether the plaintiff alleged a "concrete" injury for standing purposes—controls and compels dismissal here. In *Popa*, the plaintiff alleged a website's use of Microsoft Clarity's "session replay" technology to capture user interactions, including some "30 different categories" of information such as "the date a user visited the website, the device the user accessed the website on, the type of browser [used], the [device's] operating system [], the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls," violated statutory and common law privacy laws. *Id.* at *2. Summarizing the Supreme Court's teachings in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) and *TransUnion*, the Ninth Circuit explained that for intangible injuries (such as alleged data privacy violations), courts must "assess whether the alleged injury to the plaintiffs has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," *i.e.*, "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at *4 (quotation marks and citations omitted). Further, the court reiterated that although *Spokeo* "does not require an exact duplicate in American history and tradition," that "is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving

beliefs about what kinds of suits should be heard in federal courts." *Id.* (quotation marks and citations omitted). The court then surveyed recent decisions applying *Spokeo* and *TransUnion*, finding "these approaches all share an important feature: they look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common law tort." *Id.*

Turning to the *Popa* plaintiff's alleged injuries—which are strikingly similar to those alleged here—the Ninth Circuit considered the two relevant common law tort analogues: intrusion upon seclusion and public disclosure of private facts. *Id.* at *5. The Court of Appeals found neither was apt because both torts involved an element of conduct that would be highly offensive to a reasonable person. *Id.* Specifically, the former requires "an intentional interference" with a plaintiff's "interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man*," and the latter requires that a defendant "gives publicity" to a matter that concerns "the private life of another" and that the "information is *highly offensive* to a reasonable man." *Id.* (quotation marks and citations omitted). The Ninth Circuit found the plaintiff in *Popa* identified no such information that was collected by the session replay technology; instead, the court likened the recording of the plaintiff's website interactions to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* The court also noted the stark difference in nature between plaintiff's alleged injuries and those resulting from the Restatement's hypothetical examples of the traditional torts, such as "taking intimate pictures" through an upstairs bedroom window with a telescopic lens (as an example of intrusion upon seclusion) and the unauthorized publication of a photograph of a woman nursing her child (as an example of public disclosure of private facts). Finally, relying on *Spokeo*, the court rejected plaintiffs' argument that the statutory violations she alleged, by creating a private right of action, necessarily conferred standing. *Id.* at *5-8. Rather, it noted, "'Article III standing requires a concrete injury even in the context of a statutory violation,'" *id.* at *5 (quoting *Spokeo*, 578 U.S. at 341), which did not exist there.

A. <u>Plaintiffs' Complaint Fails on Its Face to Establish Article III Standing Under *Popa*</u>

There is no material or qualitative difference between the relevant facts of this case, the legal analysis applicable to those facts, or the conclusions that follow, and those in *Popa*. The intangible

injury alleged in this case derives from the alleged improper collection, use, and/or disclosure of mundane, non-sensitive information, just as in *Popa*: plaintiffs allege the four pieces of code in this case collect the same type and nature of information the Microsoft Clarity session recorder in *Popa* collected, namely, (i) the URL and title of the webpage visited; (ii) webpage events, such as mouse movements, scrolling, and click events like clicking links and buttons or scrolling on the page (which plaintiffs allege disclose information regarding whether a user has a *lakeview.com* account or has initiated a call to Lakeview through the webpage); and (iii) users' IP addresses and device characteristics, including "CPU architecture, available memory, and browser characteristics." ECF 1, ¶¶ 53-67. Even for the sole (Google) code on the *apply.lakeview.com* loan application pages (which, unlike other pages, at least *could* implicate sensitive financial information), plaintiffs' allegations confirm Lakeview captures only pageview events. ECF 1, ¶ 66-67. This code does not capture any of the information a user enters, and it does not even show how much progress, if any, a user makes on the application. *Id*. Plaintiffs do not (and cannot) allege that sensitive financial information such as account numbers, loan acceptance or denial decisions, loan status, or details of any specific loan are captured and disclosed by any code on the *lakeview.com* website.

Likewise, just as in *Popa*, the only two common law invasion of privacy torts that could *potentially* provide analogues to plaintiffs' alleged injuries are claims for intrusion upon seclusion and public disclosure of private facts.[4] The alleged collection and limited disclosure of the non-sensitive information in this case cannot give rise to an injury analogous to those redressed by these torts. Plaintiffs do not and cannot allege that any collection or disclosure of such information would be "highly offensive" to a reasonable man; like the recording in *Popa*, the tracked data bears no resemblance to the hypothetical examples of actionable invasions of privacy in the Restatement (intimate photos taken through an upstairs bedroom window with a telephoto lens or publication of a photograph of a nursing mother).[5]

---

[4] As the Ninth Circuit explained in *Popa*, "there existed no free-roaming privacy right at common law," 2025 WL 2448824, at *6; rather, in addition to the torts discussed above, there are only two other torts "protecting specific kinds of privacy-related harms," namely, (i) appropriation of a person's name or likeness and (ii) false light publicity. *Id.* Neither has any applicability here.

[5] Indeed, courts have found specific information plaintiffs allege was collected and disclosed—

Rather, just as the Ninth Circuit analogized the session replay recording in *Popa* to a store clerk observing shoppers, here too, information that someone visited a mortgage-related website is not sufficiently sensitive to give rise to a privacy tort. Just three decades ago, before the complete ascendance of the Internet and online conveniences, people walked into banks—public places in their communities—to apply for mortgages. They asked to see a mortgage consultant and sat at the mortgage desk to discuss options. They did not wear disguises or hide their faces to do so. Seeking or having a mortgage simply is not the type of information that would cause a reasonable person "embarrassment or humiliation" if disclosed. *Cook v. GameStop, Inc.*, 148 F.4th 153, 159 (3d Cir. 2025) (affirming dismissal for lack of standing, finding collection of similar information using session replay was not analogous to injuries redressed by intrusion upon seclusion or public disclosure of private facts). Indeed, that a property is encumbered by a mortgage, and the identity of the owner of the property, is typically a matter of public record. RJN at § III.

Finally, although all of the information alleged to be at issue here is non-sensitive even when personally-identifiable, most of the collected information in this case is not—and cannot be—identified with a specific person, confirming the impossibility of a concrete injury. *See* pp. 2-4, *supra*. Plaintiffs make no non-conclusory allegations that the anonymous information collected by Google, Microsoft or Tavant code on the *lakeview.com* website can be—or have ever been—re-identified to specific individuals. *See id*. The only information in this case that can be linked to a particular individual at all (and ***only if*** the user is concurrently logged into a Facebook account) is the fact that a user visited Lakeview's website, ECF 1, ¶ 43, and the code that collects this information is alleged to transmit ***only*** pageview events and the *https://lakeview.com* URL. *Id.*, ¶ 54. The other information is collected anonymously by cookies, *id.* at ¶¶ 46-47,[6] which are tied only to browsers, not individuals.

Plaintiffs cannot explain why or how their privacy has been invaded—much less in a manner

---

such as IP addresses—are not subject to a protected privacy interest. *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (dismissing for lack of standing because disclosure of IP addresses does not give rise to privacy injury) (collecting cases).

[6] Plaintiffs' cited article, ECF 1 at 13 n.15, is in accord. *See* RJN Ex. 5 ("Google Analytics strictly prohibits sending Personally Identifiable Information (PII).").

that was highly offensive—by the collection or disclosure of the fact that ***someone*** clicked a button, scrolled to a certain point on webpage, or had a browser with certain configurations. Even with respect to traditionally private and sensitive information like medical records, there is no standing where the information is not associated with an individual. *See, e.g.*, *Dinerstein v. Google, LLC*, 73 F.4th 502, 513-14 (7th Cir. 2023) (noting skepticism that allegations related to de-identified medical records "would give rise to any injury at all—let alone one concrete enough to support Article III standing"); *see also Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (no privacy injury where there are "no specific allegations as to why this data is sensitive or individually identifiable"); *Low v. LinkedIn Corp*., No. 11-CV-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (no concrete injury from collection of anonymous, de-identified data); *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 230 (1998) (no public disclosure of private facts claim where there is "a complete lack of identification or identifiability"). Because plaintiffs do not allege any disclosure of information giving rise to a concrete injury, the complaint should be dismissed in its entirety for lack of Article III standing.

B. Lakeview's Factual Challenge to Standing Also Compels Dismissal Under *Popa*

Plaintiffs' lack of standing is evident on the face of the complaint, despite plaintiffs' efforts to obfuscate precisely what information is collected and shared through vague and artful pleading. To provide further comfort there is no injury-in-fact, Lakeview also brings a factual challenge based on Mr. Ali's declaration, which evidences all of the key facts confirming plaintiffs' lack of standing.

In a factual challenge to standing, "the 'court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.'" *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019). "'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Id.*

Here, Mr. Ali's declaration clearly establishes that (i) the Meta Pixel transmits only the fact that a user visited the top-level *lakeview.com* URL (and no other information) and, since early 2022, has not actually "collected" the top-level URL information at all because Lakeview terminated the

Meta Pixel account associated with the code on its website, Ali Decl. ¶¶ 13-18; (ii) the Microsoft Clarity code installed on *lakeview.com* is session-recording software that is configured to mask all sensitive information that appears in the text of a webpage and all information a user may type into any input box or select from a drop-down menu, and any other information collected (such as mouse clicks or scrolling) is anonymous and cannot be identified with a specific user, *id.* ¶¶ 19-20; (iii) the Google Analytics code (now deprecated) and Google Analytics 4 code never captured or transmitted any personally identifiable information, and instead have collected only specific page events (like clicking on an outbound link), and Lakeview's data sharing configurations relating to Google allows only aggregated data collection that cannot be identified with a user (or even Lakeview), *id.* ¶¶ 21-29; and (iv) as to the Tavant Velox NXT code on the *apply.lakeview.com* subdomain, this page is managed and controlled by Tavant (not Lakeview), and the only Tavant-specific information collected by Lakeview is that a Tavant account was created or a Tavant application was submitted by an anonymous user, but Lakeview collects no user input information, personally identifying information, sensitive financial information, or other private information. Moreover, Mr. Ali confirms that all alleged servicing of loans occurs on the independent subservicer websites, and does not occur on the *lakeview.com* website. *Id.* ¶¶ 8-9; *cf.* ECF 1, ¶¶ 106, 112, 116 (conclusory assertion that named plaintiffs "uses Lakeview's Website" to make mortgage payments).

Because Mr. Ali's declaration confirms that no personal or sensitive information of any kind is collected or transmitted by Lakeview's website, the Court can and should dismiss the complaint in its entirety on the basis of Lakeview's factual challenge to plaintiffs' standing as well. *See, e.g.*, *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *2-3 (C.D. Cal. Apr. 5, 2023) (where standing challenge included both facial and factual aspects, dismissing complaint based on factual challenge to standing where evidence showed no record that online privacy plaintiff ever chatted with defendant's website and based on facial challenge where plaintiff failed to allege she disclosed any sensitive information to defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest").

## II. Plaintiffs Consented to Lakeview's Alleged Conduct, Requiring Dismissal

Where, as here, a plaintiff consents to the collection or disclosure of information, there can

be no liability. "Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim," *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (Thompson, J.) (citations and quotation marks omitted) (dismissing similar claims based on website tracker), which is the case for at least five of plaintiffs' twelve causes of action.[7] Consent is also dispositive for plaintiffs' remaining seven causes of action,[8] because consent is an affirmative defense that can be established on the pleadings. *Id.* at 1058 (dismissing claims where pleadings established consent defense). Here, Lakeview's detailed Online Privacy Notice ("OPN"), ECF 1-1, definitively establishes plaintiffs consented to the complained-of conduct, defeating their claims.

A. Plaintiffs Agreed to Lakeview's Online Privacy Notice

There is no dispute Lakeview's Online Privacy Notice ("OPN") governs the collection and disclosure of plaintiffs' information in this case;[9] plaintiffs specifically allege that "[t]he contracts that Lakeview has with its Customers include the 'Privacy Notice' and 'Privacy Policy' (collectively, 'Privacy Contracts')," ECF 1, ¶ 71, and attach both the OPN and Lakeview's Privacy Policy to the complaint. ECF 1-1, 1-2.[10] *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D.

---

[7] *See, e.g.*, Cal. Penal Code § 502(c)(1)(B) (requiring conduct that is "knowing . . . and without permission"); Cal. Penal Code § 502(c)(2) (same); Cal. Civ. Code § 1798.115 (creating notice and opt-out rights); Cal. Penal Code §§ 631(a), 632 (prohibiting communication interception and eavesdropping "without the consent of all parties"); 18 U.S.C. § 2511(2)(d) (no liability for consensual conduct).

[8] *See, e.g.*, ECF 1, ¶ 157 (alleging negligence based on failure to protect information from "unauthorized transmittal and use"), ¶ 173 (claiming negligence *per se* based on failure to detect and prevent "unauthorized dissemination"), ¶ 190 (claiming Lakeview violated CDAFA by installing code "without permission"), ¶¶ 198, 200, 206, 209, 211 (alleging UCL violation based on statutory violations that require lack of consent and repeatedly alleging UCL violations based on lack of consent), ¶ 232 (alleging breach of express and implied contract based on allegedly unauthorized "disclos[ures]" described in complaint), ¶ 242 (alleging unjust enrichment based on "unauthorized Disclosure alleged herein"), ¶¶ 254, 256, 257, 258, (alleging "breach of confidence" based on disclosures "without . . . consent," "without express permission," and "without [plaintiffs'] consent").

[9] In *Shah*, 768 F. Supp. 3d at 1044, this Court declined to reach defendant's consent argument, citing *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021) for the proposition that consent is a factual dispute that cannot be resolved on the pleadings. *Cottle* is distinguishable because the privacy notices at issue were not (as here) attached by plaintiffs to the pleadings. *See Cottle*, 536 F. Supp. 3d at 477-78.

[10] Indeed, plaintiffs allege Lakeview customers both read and rely on these disclosures. ECF 1,

Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (plaintiffs bound by data and cookie policies where they alleged they "constitute[] a valid contract" and alleged reliance on policies for fraud claim).

Plaintiffs' own allegations are binding and dispositive here. But even beyond that, users of the Lakeview website have ample notice of the disclosures in the OPN. Users navigating to the Lakeview webpage are immediately greeted with a banner alerting them to the use of cookies on the website, including "for analytics about [Lakeview] visitors." RJN at § IV & Ex. 4. The banner invites users to see Lakeview's OPN (hyperlinked in the banner). *Id*. Finally, the banner instructs users they can consent to the cookies by (i) continuing to scroll or (ii) clicking an "Accept" button; it also offers a "Dismiss" button and instructions on how to opt-out of cookies.[11] RJN Ex. 4, at 2.

Although plaintiffs complain they never "sign[ed] any written authorization permitting [Lakeview] to send their [so-called] Personal and Financial Information to Third Parties (or fourth parties)," this allegation takes issue with the *sufficiency* of Lakeview's disclosures in the OPN, not their agreement to be bound by them. Indeed, none of the plaintiffs alleges he sought to opt-out, ECF 1, ¶¶ 105-131, and they all allege they continued using Lakeview's website, whether to "research refinancing options," *id.* ¶ 107, or to regularly pay or manage a mortgage and explore refinancing options, *id*. ¶¶ 106, 112, 116. In any event, as noted above and dispositive here, plaintiffs admit they agreed to Lakeview's OPN and privacy policy by alleging they are "contracts that Lakeview has with its customers." ECF 1, ¶ 71. This court can decide whether plaintiffs consented as a matter of law based on the text of the contracts plaintiffs acknowledge exist between Lakeview and its customers. *Lakes*, 777 F. Supp. 3d at 1056 (interpreting disclosures in similar policy on motion to dismiss).

B. <u>The OPN Clearly Discloses the Complained-Of Conduct</u>

Plaintiffs seek to obfuscate the precise complained-of conduct at issue by lumping together distinct concepts, such as collection and disclosure, disparate types of information, and disclosure

---

¶ 81 ("***Lakeview's Privacy Contracts only reinforced this reasonable understanding*** [that Lakeview will "securely maintain and protect their information]**.**") (emphases added).

[11] Lakeview's Terms and Conditions, available on its website, also state plainly that "[y]our use of this website constitutes your agreement to all such terms, conditions and notices." RJN Ex. 6, at 4.

to third and (unspecified) fourth parties, in vague allegations.[12] Untangling these concepts, plaintiffs' (few) specific allegations regarding the information and actions at issue in this case, as they relate to Lakeview's OPN, comprise three discrete categories: (i) information collected by Lakeview; (ii) information allegedly disclosed to third-party code (Google, Microsoft, Tavant, and Meta); and (iii) bald allegations of disclosure to unspecified "fourth" parties.

*Lakeview's Collection Is Disclosed.* The OPN clearly discloses that "Lakeview may collect certain types of information from you, such as information you voluntarily provide via forms, surveys, applications, etc. when you visit the Company's sites." ECF 1-1 at 2. It further states it "may also collect information about you from your online browsing and transactions, including your preferences, pages visited, technical information regarding your computer and operating systems, such as your Internet Protocol (IP) address, domain name and system configuration and settings." Thus, all claims—to the extent they rely on Lakeview's alleged improper collection of information—should be dismissed.[13]

---

[12] For example, plaintiffs combine two definitions from the Gramm-Leach-Bliley Act ("GLBA") and its implementing regulations to create a plaintiff-defined term, "Personal and Financial Information," to suggest the information at issue in this case is imbued with statutory privacy rights. ECF 1, ¶ 1 & nn. 1-2. As an initial matter, the GLBA affords no private right of action, *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1138-39 (D. Or. 2014), so its definitions are not controlling here. In any event, plaintiffs ***omit*** the GLBA's carve-out in these definitions for public information, 15 U.S.C. § 6809(4)(B), which can include, *e.g.*, ***the fact a person has a mortgage*** or a consumer's telephone number, 16 C.F.R. § 313.3(p)(1)-(3), both of which are more substantive than any of the information at issue in this case. Plaintiffs then use their selectively-crafted, intentionally broad, and sensationally-worded "Personal and Financial Information" term throughout the complaint to suggest anything from social security numbers to credit scores were collected, disclosed, and even "reflect[ed]" in ads plaintiffs received and are at issue in this case, *e.g.*, ECF ¶ 109, despite that plaintiffs' own *specific* allegations confirm they are not. *E.g.*, *id.* ¶ 110. This too-cute-by-half pleading style pervades the complaint.

[13] Section 632(a) of the California Invasion of Privacy Act specifically applies to eavesdropping—*i.e.*, the obtainment or collection of information—not its use, and plaintiffs' claim Lakeview violated this provision is thus barred in its entirety in view of plaintiffs' consent to this specific disclosure. Similarly, 18 U.S.C. § 2511(a) applies to a party's interception of an electronic communication, and those claims are also barred. The remainder of plaintiffs' claims—which purport to be based on both collection and disclosure—are likewise barred to the extent they are based on the collection of information.

*Lakeview Also Disclosed It Would Share Information with Advertisers*. Lakeview's OPN also makes clear Lakeview and its "third-party advertising service providers" may use "cookies," which "allow [Lakeview] to collect technical and navigational information, such as browser type, time spent on its respective site, and pages visited," ECF 1-1 at 3, which is precisely the information plaintiffs claim was improperly disclosed, *see* pp. 2-4, *supra*. Within a section of the online privacy policy entitled "Advertising," Lakeview further informs users that it "advertises on pages within its websites as well as on other websites not affiliated with [Lakeview]. [Lakeview] may contract with another organization to advertise to you through the use of cookies, social media platforms and web beacons." *Id.* at 4. Lakeview also explains that it "contracts with other companies to advertise Lakeview's services on websites not affiliated with Lakeview," *id.*, and that these third party advertising service providers may use this data for "to assist [Lakeview] in measuring the effectiveness of the Lakeview ads," *id.* at 5. The OPN thus leaves no question Lakeview may collect the information at issue in this case and share it with third parties.

Plaintiffs' complaints that Lakeview discloses de-identified information to Google, Microsoft, and Tavant fail for another reason: Lakeview disclosed it "may . . . share aggregated or anonymous data about [its] customers and visitors to [Lakeview's] websites with advertising service providers and with companies that help Lakeview understand how use its websites." ECF 1-1 at 5. This disclosure dooms any claim to the extent it is based on the alleged collection or distribution of deidentified information such as that collected by the Microsoft, Google, or Tavant code.[14]

*Plaintiffs' Inchoate Allegations About Disclosure to "Fourth" Parties Should Be Disregarded.* The only type of use or disclosure of customer information that is even arguably ***not*** expressly covered by Lakeview's extensive but plain-language disclosures is the alleged

---

[14] Were there *any* doubt these plaintiffs agreed to having information like URL and browser data disclosed for advertising purposes, it would be extinguished by yet another provision in Lakeview's privacy policy, ECF 1-2, under which plaintiffs agreed to having even sensitive personal information—like their social security number—shared for "marketing purposes" including for "joint marketing" with "other financial institutions," with no ability to "limit this sharing." ECF 1-2 at 2-3. To be clear, no such sensitive information is at issue in this case, and the mere fact that Lakeview *can* do something under its privacy policies does not mean that it *does* do those things. But the broad permissions to which plaintiffs concede they agreed highlights the absurdity of their claims.

***hypothetical*** disclosure of information to what plaintiffs have termed "fourth parties"—presumably to distinguish them from the "third parties" disclosed as using and receiving data at multiple points in Lakeview's privacy policy. Scrutiny of the complaint allegations shows plaintiffs are simply speculating that Meta, Google and other "third parties" ***might*** sell data to fourth parties because there is reporting these companies—which have many different business lines within their organizations—are alleged to have done so in certain instances (none of which relates to Lakeview).[15] Thus, in terms of what plaintiffs allege Lakeview or any third party has *actually* done with any Lakeview customer's data, it is all plainly disclosed in Lakeview's OPN.

Because all of the specifically alleged collection and disclosures of plaintiffs' information was disclosed to plaintiffs in Lakeview's OPN, plaintiffs' consent defeats all of their claims. This Court's opinion in *Lakes* is instructive. There, the plaintiff alleged defendant violated statutory and common law with its use of the Meta Pixel on its website and sharing of information regarding plaintiff with Meta under the Meta Pixel's terms of use. 777 F. Supp. 3d at 1051. The defendant—like Lakeview—disclosed its use of cookies and its sharing of data with its partners for advertising. *Compare, e.g., id.* at 1051-52 (cookies banner notified users defendant "and its partners" used cookies 'to offer advertising adapted to your interests'" *with* RJN Ex. 4 (Lakeview cookie banner alerting to use of cookies for analytics and linking to OPN) & ECF 1-1 at 3, 5 (OPN disclosing Lakeview and its "third-party advertising service providers" may use "cookies," which "allow [Lakeview] to collect technical and navigational information, such as browser type, time spent on its respective site, and pages visited" and advertise to users). This Court found plaintiffs' consent

[15] For example, plaintiffs cite to articles asserting Meta shared Facebook profiles with third parties, and an article reporting on a complaint filed against Facebook and Google. *See* ECF 1, ¶ 87 & n. 39; RJN Exs. 7-9. Plaintiffs also assert that Meta and Google "sell [data] to third parties," but cite an article suggesting that developers have access to Facebook and Google data through an Application Programming Interface (API). *See* ECF 1, ¶ 88 & n. 40; RJN Ex. 10. Similarly, plaintiffs allege Google and Meta "buy information from, and sell information to, [] data brokers," but cite to an article which states that "[a]ll of Facebook's agreements with its data vendors are one-way in which the companies send Facebook all the information they hold on each user, but Facebook does not share any information back with them." ECF 1, ¶ 88 & n. 41; RJN Ex. 11, at 10. None of these articles suggest Meta or Google is selling information collected through Lakeview's use of their code.

defeated their claims because they were put on notice of these policies at multiple junctures. 777 F. Supp. 3d at 1054-55. In doing so, it rejected the plaintiff's argument that more "granular" disclosures—identifying, for example, that information would be shared with Meta specifically—was required for consent. *Id.* at 1056-57. Because Lakeview's OPN fully discloses the collection and disclosure of information specifically alleged by plaintiffs, and plaintiffs cannot allege they did not consent to this policy, plaintiffs' claims all fail as a matter of law.

## III. Plaintiffs' Complaint Fails to State a Claim

### A. Plaintiffs Have Not Improved Upon the Claims This Court Dismissed in *Shah*

In *Shah*, this Court parsed plaintiffs' counsel's "kitchen sink" pleading of ***fifteen*** legal claims, all premised on Capital One's alleged collection and sharing of data in connection with the operation of its website. Five of the claims plaintiffs assert in this litigation were already considered—and rejected—by this Court in *Shah* as legally flawed. The law has not changed, nor have the pertinent facts plaintiffs' counsel appears to have copied wholesale from their complaint in *Shah*; thus, the Court should dismiss these claims.

#### 1. Negligence *Per Se* (Count II)

This Court made clear in *Shah* that negligence *per se* is not a separate cause of action (but rather an evidentiary presumption that applies in certain circumscribed circumstances), requiring dismissal with prejudice of such claims. 768 F. Supp. 3d at 1046-47; *see also id.* at 1045. There are no material differences between plaintiffs' counsel's pleading of this (non-)claim here, *compare* ECF 1 at ¶¶ 170-180 *with* RJN Ex. 1 at ¶¶ 229-239, and this claim should be dismissed with prejudice here too.[16]

---

[16] Plaintiffs contend they are pleading negligence *per se* "in the alternative" to a negligence claim, suggesting it may proceed if their negligence claim is dismissed (as it should be, *see* Section III.B.1). Because negligence *per se* remains an evidentiary presumption, not a cause of action, dismissal with prejudice is required. Regardless, neither the FTC Act nor the GLBA (invoked by plaintiffs) can provide the standard of care for a negligence *per se* theory because neither provides a private right of action. *See, e.g.*, *Pica v. Delta Air Lines, Inc.*, No. 18-cv-2876, 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (FTC Act); *Fleshman*, 27 F. Supp. 3d at 1138-39 (GLBA). Moreover, plaintiffs do not allege how these complex statutory schemes "explicitly spell out the standard of care for [the] given situation," *Drury v. Ryan*, 109 Cal. App. 5th 1102, 1112 (2025), as required to impose a heightened duty of care under negligence *per se* theory.

2. Comprehensive Computer Data Access & Fraud Act (CDAFA) (Count III) and Unfair Competition Law (UCL) (Count IV)

In *Shah*, the Court dismissed identically-pleaded CDAFA and UCL claims for plaintiffs' failure to allege they lost money or property as a result of the alleged disclosure of their information to third parties, as required to establish statutory standing.[17] 768 F. Supp. 3d at 1047-48. Plaintiffs' statutory standing allegations are deficient for the same reasons articulated in *Shah*: plaintiffs do not have a property interest in their "personal information," did not allege any participation in the market for their information or any economic benefit they derived from it, confused alleged gains by the defendant with losses by plaintiffs, and cannot claim diminution in value of information as damages. 768 F. Supp. 3d at 1048 (citing cases); *compare* ECF 1 at ¶¶ 191, 212-215 *with* RJN Ex. 1 at ¶¶ 261, 282-285. Counts III and IV should be dismissed with prejudice. *See, e.g.*, *Hernandez-Silva v. Instructure, Inc.*, No. 25-cv-2711, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025) (dismissing CDAFA claim for lack of standing where plaintiff did not allege what valuable data defendant obtained or its use caused its value to plaintiff to diminish).

3. Breach of Express and Implied Contract (Count VI)

In *Shah*, the Court dismissed the breach of express contract because plaintiffs "state generally that Defendant breached its express contract with Plaintiffs 'to protect their nonpublic personal information'" but cited no specific contract provision. 768 F. Supp. 3d at 1050. So too here: plaintiffs nebulously allege "Lakeview breached its express . . . contracts with Plaintiffs . . . to protect their nonpublic personal information, including Personal and Financial Information," ECF 1, ¶ 232, without citing to a specific contract provision (or even a specific contract) they contend Lakeview breached. The breach of express contract should be dismissed. *Shah*, 768 F. Supp. 3d at 1050; *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022) (plaintiffs could not state claim for breach of contract without alleging "specific promise" that was breached).

---

[17] For a CDAFA claim, a plaintiff must have "suffer[ed] damage or loss by reason of a violation" of the statute. *Shah*, 768 F. Supp. 3d at 1047-48; *see also Cottle*, 536 F. Supp. 3d at 487. Similarly, for a UCL claim, a plaintiff must allege among other elements that they "lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.* 590 F.3d 955, 959 (9th Cir. 2009).

This Court also rejected the *Shah* plaintiffs' claim for breach of implied contract, finding identical allegations failed to state a claim because: (i) they allege "an implied contract with Defendant that it would keep their personal information confidential" but did not expand on the nature or scope of the implied contract; and (ii) they did not differentiate between the express contract claim and implied contract claim. 768 F. Supp. 3d at 1050. Plaintiffs' counsel made no attempt to correct those defects here; indeed, the complaint alleges an implied contract with plaintiffs "to protect their nonpublic personal information" in the same breath as alleging an ***express*** contract to do the same. ECF 1, ¶ 232. Plaintiffs have thus also failed to allege breach of an implied contract, requiring dismissal of Count VI. *Shah*, 768 F. Supp. at 1050-51.

4. Breach of Confidence (Count IX)

In dismissing an identical claim in *Shah*, the Court explained that, because a breach of confidence claim is "grounded on an implied-in-law or quasi-contractual theory," such claims are barred where (as here) plaintiffs allege the existence of an ***express*** contract covering the same subject matter. 768 F. Supp. 3d at 1051; ECF 1, ¶¶ 228-232 (alleging existence of express contract covering handling of plaintiffs' data). Plaintiffs' counsel has not attempted to cure this defect, *compare* ECF 1 at ¶¶ 252-259 *with* RJN Ex. 1 at ¶¶ 338-345, nor can it; thus, the Court should dismiss this claim with prejudice. *Accord Sawicky v. AMC Networks Inc.*, 753 F. App'x 501, 502 (9th Cir. 2019) (affirming dismissal of breach of confidence claim); *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (claims are "mutually exclusive").

B. Plaintiffs' Remaining Claims Should Be Dismissed with Prejudice

1. Negligence Fails Because Plaintiffs Allege No Actual Loss (Count I)

Plaintiffs allege Lakeview was negligent in its handling of their information, but fail to allege any cognizable damages. Because "actual loss (damages)" is an essential element of a negligence claim,[18] *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009), this claim should be dismissed.[19]

---

[18] Even if the Court finds the alleged injuries are sufficiently concrete to confer Article III standing, it does not necessarily follow that the injury "rise[s] to the level of appreciable harm necessary to assert a negligence claim under California law." *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

[19] Whether plaintiffs stated cognizable damages for their negligence claims was not raised or

"Under California law, appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *Ruiz*, 622 F. Supp. 2d at 913. Plaintiffs offer boilerplate allegations asserting a litany of damages, including "improper disclosure of their Personal and Financial Information," "receipt of targeted advertisements," "lost value of their Personal and Financial Information," and (implausibly) "embarrassment, humiliation, frustration, and emotional distress." EFC 1, ¶ 165. But the Ninth Circuit has held "the mere misappropriation of personal information does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) (citation and internal quotations marks omitted). "[G]eneral allegations that a plaintiff's personal information has diminished in value are not enough." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021). Rather, plaintiffs "must establish both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Svenson v. Google Inc.*, No. 13-cv-4080, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016).

Here, the ***only*** concrete, non-speculative "harm" plaintiffs assert is that they received ads "related to mortgages with other companies like rocket lawyer and for refinancing." ECF 1, ¶ 109; *see also id.* ¶¶ 114, 118. Plaintiffs vaguely allege these ads "reflect[]" the information plaintiffs input on Lakeview's website. *Id.* ¶¶ 109, 114, 118. They do not allege these ads included or referenced any private, deanonymized information about plaintiffs at all. Nor do they include any non-conclusory allegations regarding how these ads caused them any injury or emotional distress.

Courts addressing similarly conclusory allegations of harm have dismissed negligence claims. For example, in *Marden v. LMND Medical Group*, No. 23-cv-3288, 2024 WL 4448684, at *5 (N.D. Cal. July 3, 2024), the court dismissed plaintiffs' negligence claims as insufficiently pleaded where plaintiffs complained of "targeted health ads" but failed to "state how these ads caused them injury or mental distress[.]" Similarly, in *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897-99 (C.D. Cal. 2024), the court dismissed the negligence claim because claims of "loss of the benefit of the bargain, increased infiltrations into their privacy through spam and targeted

---

briefed in *Shah* and this Court therefore had no occasion to address this issue.

advertising they did not ask for, loss of privacy, loss of confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life" were "too vague and conclusory to survive." For these reasons, plaintiffs cannot show any cognizable damages sufficient to assert a negligence claim.

2. The California Consumer Privacy Act (CCPA) Also Fails (Count V)

Plaintiffs allege Lakeview violated various provisions of the CCPA, Cal. Civ. Code § 1798.100, *et seq.*, all of which fail for the reasons below.

(a) Plaintiffs' Claims Based on Sections 1798.100-148 Fail

Plaintiffs' attempt to sue Lakeview on the basis of purported violations of Sections 1798.100-148 fail at the threshold. The CCPA provides a private right of action ***only*** for violations of section 1798.150. Cal. Civ. Code § 1798.150(c) ("The cause of action established by this section ***shall apply only to violations as defined in subdivision (a) and shall not be based on violations of any other section of this title***." (emphases added)); *accord Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1155 (N.D. Cal. 2024) (noting CCPA "calls for enforcement by the California Attorney General, allowing a private right of action only in the event of a security breach" under section 1798.150); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (dismissing CCPA claim for lack of alleged security breach).

Plaintiffs' claims based on Sections 1798.100-148 should also be dismissed because the CCPA expressly provides those sections "***shall not apply*** to personal information collected, processed, sold, or disclosed subject to the federal [GLBA]," with the exception of claims brought under section 1798.150. Cal. Civ. Code § 1798.145(e) (emphases added). Here, plaintiffs actually ***define*** the alleged personal information at issue as information that is "subject" to the GLBA. *See, e.g.*, ECF 1, ¶¶ 1, 10-12 & nn.1-2.

(b) Plaintiffs' allegations are insufficient to trigger the right to private action under Section 1798.150

Under Section 1798.150, plaintiffs must allege: (1) disclosure of personal information that includes an email address in combination with a password or security question or information as defined in Section 1798.81.5(d)(1)(A); and (2) that the disclosed personal information was "subject to an unauthorized access and exfiltration, theft, or disclosure" through a "violation of the duty to

implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a). Plaintiffs do not allege either requirement.

*First*, Plaintiffs do not allege Lakeview disclosed any email address in combination with a password or security question—*i.e.*, log-in credentials. Nor do plaintiffs allege any disclosure of "nonredacted personal information" as defined in Section 1798.81.5(d)(1)(A), which requires that the disclosed information include "[a]n individual's first name or first initial and . . . last name" in combination with another specified data element. These additional "data elements" that must be disclosed with the name/initial identifier to bring the disclosure within the scope of Section 1798.150(a) are social security numbers, driver's license numbers, or other unique identification numbers issued on government documents, account numbers or credit or debit card numbers in combination with a security code, or any medical, health insurance, genetic, or biometric information, Cal. Civ. Code § 1798.81.5(d)(1)(A)(i)-(vii), none of which is alleged to be disclosed. For this reason, plaintiffs' CCPA claim must be dismissed. *See Gardiner v. Walmart Inc.*, No. 20-cv-04618, 2021 WL 2520103, at *3 (N.D. Cal. Mar. 5, 2021) (dismissing CCPA claims that did not "allege disclosure of Plaintiff's personal information" as defined in section 1798.81.5(d)(1)(A)).

*Second*, even if plaintiffs ***had*** alleged a disclosure of information covered by the CCPA's private right of action (which they have not), plaintiffs have not alleged that their supposed personal information was subject to unauthorized access and exfiltration, theft, or disclosure due to any failure to implement or maintain reasonable security procedures and practices. "Courts regularly require CCPA claimants to 'allege sufficient facts to establish how or why . . . systems were inadequate or unreasonable or how or why a business knew or should have known its systems were inadequate or unreasonable.'" *Tian v. Bank of Am., N.A.*, No. 24-cv-9877, 2025 WL 1377767, at *3 (C.D. Cal. Apr. 2, 2025) (citations omitted). As discussed above, Lakeview employed different configurations for each piece of code, and different configurations for the different sections of its website. *See* pp. 4-5, *supra*. But plaintiffs' complaint contains no specific allegations that these *any* of these policies are inadequate or unreasonable.

Other "tracker" cases allowing CCPA claims to proceed are distinguishable. In *Shah*, this Court did not address whether the allegedly disclosed information met the statutory requirements

under Section 1798.150(a)(1), and further found allegations the defendant "***allowed third parties to embed*** trackers, such as Google and Microsoft, on its website" sufficient. 768 F. Supp. 3d at 1049 (emphases added). Here, the complaint alleges Lakeview itself installed the alleged "trackers" and that it has "exclusive control" over their behavior and the information they transmit. ECF 1, ¶¶ 34-35. In *In re BetterHelp, Inc. Data Disclosure Cases*, the court found plaintiffs adequately alleged that allowing tracking software on a website could "reasonably be argued was not an appropriate security procedure or practice, ***given the nature of the information***." No. 23-cv-1033, 2024 WL 3416511, at *5 (N.D. Cal. July 15, 2024) (emphases added). There, the disclosed information was a customer's email and (potentially sensitive) fact of "seeking and/or receiving mental health treatment." *Id.* at *1. Here, the complaint does not allege any personally identifying information is disclosed, nor any basis to conclude Lakeview's security procedures were inadequate given the information at issue.

(c) Plaintiffs' request for statutory damages should be dismissed for failure to send a pre-suit notice letter

Plaintiffs' request for statutory damages should also be dismissed because plaintiffs did not provide Lakeview with statutorily-required 30 days' pre-suit written notice. Cal. Civ. Code § 1798.150(b). This notice requirement serves an important function by giving businesses "an opportunity to cure the defect outside of court." *Griffey*, 2022 WL 1811165, at *6. Plaintiffs concede the required pre-suit notice was not provided. ECF 1, ¶ 225 ("Plaintiffs will send Defendant notice of their CCPA claims shortly after the date of this filing."). This admitted failure to give pre-suit notice warrants (i) dismissal of plaintiffs' CCPA claim in the absence of any allegations of actual damages, *Griffey*, 2022 WL 1811165, at *6, or ***at minimum*** (ii) limitation of plaintiffs' available remedies to their actual pecuniary damages. *Doe v. MKS Instruments, Inc.*, No. 23-cv-868, 2023 WL 9421115, at *4 (C.D. Cal. Nov. 3, 2023).

3. Unjust Enrichment (Count VII)

"To allege unjust enrichment as an independent cause of action, a plaintiff must show the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiffs' allegations do not meet this burden.

Notwithstanding plaintiffs' allegation they "conferred a monetary benefit upon [Lakeview] in the form of valuable, sensitive, personal, and financial information," ECF 1, ¶ 236, plaintiffs do not allege any specific information collected and distributed through code on Lakeview's website has any value (much less alleging how or why), warranting dismissal. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 946 (N.D. Cal. 2023) (dismissing unjust enrichment claim where plaintiffs "neither directly expended their own resources, nor show[ed ] their property has become less valuable."). This stands in stark contrast to *Shah*, where the Court determined that the defendant "benefited from using Plaintiffs' information." 768 F. Supp. 3d at 1051. Similarly, the cases on which *Shah* relied concerned "valuable and confidential medical information," *A.J. v. LMND Medical Group*, No. 23-cv-3288, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024), or allegations "that Meta ***<u>sold</u>*** their data without consent and unjustly retained the proceeds," *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (emphasis added). Here, in contrast, the vast majority of the specific information alleged to be shared is anonymized and none is sensitive, personal, or private (*see* pp. 2-4, *supra*), and plaintiffs do not allege Lakeview sold ***any*** customer information.

4. <u>Declaratory Judgment and Injunctive Relief (Count VIII)</u>

Plaintiffs request declaratory judgment and injunctive relief on the ground that Lakeview's actions allegedly create an "imminent risk that additional disclosure of their Personal and Financial Information will occur in the future." ECF 1, ¶ 245. But "[d]eclaratory relief is a remedy, not an independent cause of action." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 913 (N.D. Cal. 2024), and this claim should be dismissed for the same reasons plaintiffs' other claims should be dismissed. Plaintiffs' request for injunctive relief—in addition to being a remedy and not a substantive cause of action—should be dismissed because a plaintiff must show that he or she will suffer irreparable harm from a defendant's actions and that no adequate legal remedy is available in order to obtain injunctive relief. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (party must show lack of adequate remedy at law to seek injunctive relief); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (party seeking permanent injunction must show irreparable harm). Plaintiffs allege neither except in the most conclusory terms and this "claim" should be dismissed.

5. California Invasion of Privacy Act (CIPA) (Count X)

Plaintiffs contend Lakeview violated the CIPA, Cal. Penal Code § 630, *et seq.*, by (a) aiding and abetting third parties' attempts to read or use the contents of a communication; and (b) intentionally recording a confidential communication. ECF 1, ¶¶ 261-81. Neither theory withstands scrutiny, and this claim should be dismissed with prejudice.

(a) Plaintiffs' Section 631(a) wiretapping claim should be dismissed

Plaintiffs contend Lakeview aided and abetted third parties (unspecified except as to Facebook) in reading and using the "the contents or meaning" of plaintiffs' communications in violation of section 631(a).[20] ECF 1, ¶¶ 263, 269. But the alleged information at issue is not the "content" of a communication as contemplated by the statute.

In interpreting Section 631(a), federal courts apply the Federal Wiretap Act's definition of "contents." *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (collecting cases); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Under the Federal Wiretap Act, a communication's "'contents' . . . includes any information concerning the substance, purport, or meaning of that communication," 18 U.S.C. § 2510(8), which the Ninth Circuit has interpreted as "a person's intended message to another." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Critically, "content" does not include "record" data like "basic identification and address information." *Id.* at 1106, 1109.

The information allegedly collected here is nothing more than record information. Plaintiffs allege the code here collected: (1) the URL and title of the webpage visited; (2) webpage events, such as mouse movements, scrolling, and click events like clicking links and buttons or scrolling on

[20] Plaintiffs do not allege Lakeview directly violated Section 631(a) because it cannot. "It is settled California law . . . that recording by a *participant* to the conversation does not run afoul of Section 631(a), which penalizes recording by a *third party*." *Valenzuela v. Kroger Co.*, No. 22-cv-6382, 2023 WL 4418887, at *2 (C.D. Cal. June 23, 2023); *see also Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (holding Section 631 does not apply to party to conversation because "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation.").

the page (which plaintiffs allege purportedly discloses information regarding whether a user has a *lakeview.com* account or has tried to call Lakeview through the webpage); and (3) users' IP addresses and device characteristics, including "CPU architecture, available memory, and browser characteristics." ECF 1, ¶¶ 53-67. None of this information is "content" under CIPA.

*First*, the URLs and website titles allegedly collected do not contain the type of information that would make them content. The Ninth Circuit has explained that, as a general rule, an unadorned URL is not "content" because it "identifies the location of a webpage a user is viewing on the internet, and therefore functions like an 'address.'" *Zynga*, 750 F.3d at 1107. In *Zynga*, the court held the specific URL "of the Facebook webpage the user was viewing" was not content, nor were URLs such as "http://www.ca9.uscourts.gov/opinions/" or "http://apps.facebook.com/onthefarm." *Id.* at 1102-03.

In *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit clarified when a URL ***can*** be content, namely: (1) if it is a URL from a search engine with a query string that shows the information the user communicated to the search engine; or (2) if it included "the name of a website, folder and sub-folders on the web-server, ***and*** the name of the precise file requested." 956 F.3d 589, 605 (9th Cir. 2020) (emphasis added). In *Brown v. Google*, 685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023), the court offered an example of a URL pointing to a "precise file":




The court explained that this URL constituted "content" because defendant "would know from this communication that the user was searching for updates on Russia's war against Ukraine on the Washington Post's 'World' section." *Id.*

Here, the only specific URLs identified by plaintiffs are *https://lakeview.com*, *https://lakeview.com/leverage-your-home-equity-for-the-cash-you-need/*, and *https://apply.lakeview.com*. ECF 1, ¶¶ 54, 56-67. Like those in *Zynga*, (*http://www.ca9.uscourts.gov/opinions/* and http://apps.facebook.com/onthefarm) they have, at

most, a single subfolder. *Id.* at 1102-03. These point only to the webpage viewed (by a user that cannot be identified); and they are not particularly informative, as they do not identify any specific loan applications, loan type, or information related to any application.

*Second*, user actions, "such as button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more . . . are more akin to the 'record' information that the Ninth Circuit has held not to be contents of a communication." *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (internal quotation marks omitted); *see also Yoon*, 549 F. Supp. 3d at 1082-83 ("mouse clicks" do not constitute "message content in the same way that the words of a text message or an email do" for purposes of CIPA).

*Finally*, IP addresses and device configurations are record information, not content. *Yoon*, 549 F. Supp. 3d at 1082-83 (rejecting argument that plaintiff's IP address, browser type, and device operating system were "content" because "[n]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do").[21]

(b) Plaintiffs' recording claims under Section 632(a) should be dismissed

Plaintiffs' claim that Lakeview "intentionally record[ed] confidential communications without consent of all parties to the communication" in violation of section 632(a) also fails. ECF

[21] In *Shah*, this Court cited a vague allegation in plaintiffs' complaint relating to their "Personal and Financial Information" as sufficient to plead "content" for purposes of Section 631(a). 768 F. Supp. 3d at 1054 (citing RJN Ex. 1 at ¶ 354). Plaintiffs' counsel include the same conclusory allegation here, word-for-word. *Compare* RJN Ex. 1 at ¶ 354 *with* ECF 1, ¶ 268. Lakeview respectfully contends that its detailed analysis above of the type of information plaintiffs have identified as collected or disclosed by website code in this case, as described by their own factual allegations, confirm this conclusory allegation is insufficient to plead that any "content" was intercepted. In its entirety, this allegation states: "Plaintiffs and Class Members had a reasonable expectation of privacy regarding the confidentiality of their communications with Defendant. Defendant had duties under statutory and common law to safeguard its Customers' Personal and Financial Information, and not disclose it without authorization. Defendant never received any authorization and disclosed Plaintiffs' and the Class's Personal and Financial Information regardless." ECF 1, ¶ 268. The Court need not (and should not) accept this allegation—which states conclusions, not facts—as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiffs' duty to plead right to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

1, ¶ 264. Section 632(a) applies only to a "confidential communication," which the statute defines as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desired it to be confined to the parties thereto[.]" Cal. Penal Code § 632(c). As discussed above, plaintiffs fail to allege that the communications at issue contained any private information. *See* pp. 2-4, *supra*. Indeed, "[g]iven the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL 1704437 (9th Cir. June 18, 2025) (collecting cases). Thus, a plaintiff must plead "something unique about [ ] particular internet communications" to demonstrate they are confidential. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (distinguishing communications made in context of patient-medical provider relationship from typical online communications because they are protected by federal law and uniquely personal). Plaintiffs here have not done so and their Section 632(a) claim should be dismissed.

6. <u>The Electronic Communications Privacy Act (ECPA) (Counts XI & XII)</u>

Plaintiffs assert two claims under the ECPA, 18 U.S.C. § 2511, *et seq*: (1) in Count XI, plaintiffs contend Lakeview improperly ***intercepted*** their communications; and (2) in Count XII, plaintiffs contend Lakeview, as an electronic communications service ("ECS"), improperly ***divulged*** plaintiffs' communications. ECF 1, ¶¶ 282-312. Both claims fail as a matter of law.

(a) <u>No Improper Interception under 18 U.S.C. § 2511(1) (Count XI)</u>

Any alleged interception of plaintiffs' electronic communications falls within the "party to communication" exception to the ECPA, 18 U.S.C. § 2511(2)(c), which states that it is not unlawful for an individual to intercept a communication when either "such person is a party to the communication." *Id*. Here, Lakeview is a party to the communication and is therefore not liable.

To avoid dismissal, plaintiffs attempt to allege the "crime-tort" exception to the party exception—baldly stating Lakeview intercepted their communications "for the purpose of committing a tortious act" because Lakeview's "sending" and "acquiring the content" of their communications purportedly violates the GLBA and FTC Act. ECF 1, ¶¶ 294, 299. These conclusory allegations are insufficient to invoke the crime-tort exception. "Under section 2511, the

focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotations omitted) (emphasis in original). Plaintiffs thus must adequately allege Lakeview "had an illegal or tortious ***purpose***" that is ***separate and distinct*** from the collection and disclosure of plaintiff's communications. *Id.* at 1203 (emphases added); *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording.").

Plaintiffs do not (and cannot) allege an improper purpose that is separate from the interception itself. Plaintiffs assert the crime-tort exception applies because the interception is for the purpose of committing the tort of "invasion of privacy." ECF 1, ¶ 294. But the Ninth Circuit has held that even where an interception "may well have been a tortious invasion of privacy under state law," it is not a ***separate*** illegal or tortious purpose that would trigger the crime-tort exception. *Sussman*, 186 F.3d at 1203; *see also In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (crime-tort exception not triggered where "the tortious conduct is the alleged wiretapping itself.").

Plaintiffs also assert that because Lakeview's "trackers" allegedly violate the GLBA and the FTC Act, the crime-tort exception is satisfied. But that is also "contrary to *Sussman* which holds that the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (violation of HIPAA did not satisfy crime-tort exception).

Indeed, plaintiffs actually allege the opposite of a tortious or illegal purpose, claiming that Lakeview intercepted their communications for perfectly legal purposes such as "increas[ing] its profit margins and sav[ing] on marketing costs" and "financial gain." ECF 1, ¶¶ 295-96. Courts have routinely held that where "purpose of the interception was not to 'perpetuate torts on millions of Internet users, but to make money," the crime-tort exception to the party-exception is not satisfied. *Lakes*, 777 F. Supp. 3d at 1058 (ECPA crime-tort exception did not apply); *see also Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 WL 486317, at *10 (S.D. Cal. Feb. 13, 2025) (allegations

interceptions were for "purposes of targeting advertising to [] website users" insufficient to state ECPA crime-tort exception).

(b) Lakeview is not an ECS under 18 U.S.C. § 2511(3) (Count XI)

Plaintiffs cannot state a claim under 18 U.S.C. § 2511(3)(a) because (1) Section 2511(3)(a) also contains a party-exception to liability; and (2) it applies only to "electronic communication services" ("ECS"), which Lakeview is not.

*First*, Section 2511(3)(a) exempts parties to the communication from liability, and therefore the claims against Lakeview must fail. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (Section 2511(3) does not apply to communications sent to defendant); *see also Yunker v. Pandora Media, Inc.*, No. 11-cv-03113, 2013 WL 1282980, at *8 (N.D. Cal. Mar. 26, 2013) (same). And unlike section 2511(1), there is no statutory a crime-tort exception in Section 2511(3) (though it could not be met anyway).

*Second*, Lakeview is not an "electronic communication service," which is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Plaintiffs allege the Lakeview website meets this definition because customers can use the website to send and receive communications, and "in the absence of Defendant's Website, internet users could not send or receive communications regarding Plaintiffs' and Class Members' Personal and Financial Information." ECF 1, ¶ 302. Courts have routinely rejected such allegations. "It is not enough to assert, as the Plaintiff does, that the Defendant is an electronic communication service simply because 'in the absence of Defendant's Website, internet users could not send or receive communications regarding' their information." *Doe v. Genesis Health Sys.*, No. 23-cv-4209, 2025 WL 1000192, at *10 (C.D. Ill. Mar. 18, 2025) (collecting cases) (dismissing section 2511(3) claim because defendant was not an ECS). Rather, in the context of the Stored Communications Act ("SCA")—which relies on the same statutory definition of ECS as the ECPA[22]—courts have interpreted ECS to include precisely the types of

[22] The ECPA definition of an ECS applies to both section 2511(3) and the Stored Communications Act, 18 U.S.C. § 2702(a)(1). *See* 18 U.S.C. § 2711 (adopting the terms as defined in § 2510).

services one would expect: email providers, text messaging services, certain social media platforms, etc. *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 977-79 (2010). Relatedly, plaintiffs do not allege Lakeview is the ***provider*** of the service transmitting the messages, which also means that Lakeview cannot be an electronic communication service. *See, e.g.*, *Pica v. Delta Air Lines, Inc.*, No. 18-cv-2876, 2019 WL 1598761, at *7 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591 (9th Cir. 2020) (applying SCA) ("[A] website that receives and transmits data to and from its customers . . . is ***not the provider of the electronic communication service*** that allows such data to be transmitted over the Internet." (emphasis in original)); *see also Shah*, 768 F. Supp. 3d at 1055 (considering ECS definition in SCA context and finding defendant was not ECS because its "website [did] not allow customers to send and receive messages to third parties"); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal 2001) (online merchant with website that allowed customers to send communications to merchant is not electronic communication service provider under ECPA). Counts XI and XII should be dismissed as a matter of law.

Conclusion

For the foregoing reasons, the Court should dismiss the complaint without leave to amend.

Dated: September 15, 2025

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By: */s/ Viola Trebicka*
Viola Trebicka (Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Ryan Sullivan (*pro hac vice*)
111 Huntington Avenue, Suite 520
Boston, MA 02199

*Attorneys for Defendant Lakeview Loan Servicing, LLC*