1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2   Viola Trebicka (Bar No. 269526)
    violatrebicka@quinnemanuel.com
3   Valerie Roddy (Bar No. 235163)
    valerieroddy@quinnemanuel.com
4  865 S. Figueroa Street, 10th Floor
   Los Angeles, CA 90017
5  Tel: (213) 443-3000
   Fax: (213) 443-3100
6

7   Ryan Sullivan (*pro hac vice*)
    ryansullivan@quinnemanuel.com
8  111 Huntington Avenue, Suite 520
   Boston, MA 02199
9  Tel: (617) 712-7100
   Fax: (617) 712-7200
10

11 *Attorneys for Defendant Lakeview Loan Servicing, LLC*

12                    **UNITED STATES DISTRICT COURT**

13        **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

14

15  ELIJAH IDRIS, GOWAN MCLIN, and    ) Case No.: 3:25-CV-05087-JSC
    JUSTIN BICKHAM individually and on )
16  behalf of all others similarly situated, ) **LAKEVIEW LOAN SERVICING, LLC'S**
                                       ) **NOTICE OF MOTION AND MOTION TO**
17           Plaintiffs,              ) **DISMISS PLAINTIFFS' AMENDED**
                                       ) **COMPLAINT PURSUANT TO FEDERAL**
18       v.                           ) **RULES OF CIVIL PROCEDURE 12(B)(1)**
                                       ) **AND 12(B)(6);**
19  LAKEVIEW    LOAN    SERVICING,    )
    LLC,                              ) **MEMORANDUM OF POINTS AND**
20                                     ) **AUTHORITIES; AND**
                                       )
21           Defendant.              ) **MEET AND CONFER CERTIFICATION**
                                       )
22                                     ) Before: Hon. Jacqueline Scott Corley
                                       )
23                                     )
24                                       Hearing Date:    February 26, 2026
                                         Hearing Time:    10:00 a.m.
25  ─────────────────────────

26

27

28

**<u>NOTICE OF MOTION AND MOTION AND STATEMENT OF REQUESTED RELIEF</u>**

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on February 26, 2026, at 10:00 a.m., in Courtroom 8 of the United States District Court for the Northern District of California, San Francisco Division, 50 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, defendant Lakeview Loan Servicing, LLC will, and hereby does, move this Court for an order dismissing with prejudice the amended complaint (ECF 31) filed by plaintiffs Elijah Idris, Gowan McLin, and Justin Bickham, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] This motion is based upon the following Memorandum of Points and Authorities; the concurrently-filed Request for Judicial Notice ("RJN") and Declaration of Kawsar Ali ("Ali Decl."); the filings in this action; and any such additional material or argument as may be submitted to the Court.[2]

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

1. Whether the Court should dismiss plaintiffs' amended complaint for lack of Article III standing where plaintiffs have not alleged any concrete injury analogous to one conferring standing under traditional common law privacy torts and specifically where there is no alleged conduct that would be "highly offensive" to a reasonable person, as compelled by the United States Court of Appeals for the Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025)?

2. Whether the Court should dismiss plaintiffs' complaint because plaintiffs consented to the complained-of conduct under Lakeview's comprehensive online privacy notice?

3. Whether the Court should dismiss plaintiffs' claims for numerous claim-specific reasons, including:

    a. Plaintiffs do not state a claim for negligence (Count I) because they have not alleged cognizable damages under California law;

---

[1] Unless otherwise indicated, "Rules" in the accompanying Memorandum of Points & Authorities refers to the Federal Rules of Civil Procedure.

[2] The Court granted the parties' stipulated request for an extension of page limits applicable to the briefing of this motion, permitting Lakeview to file an opening brief of up to 30 pages and a reply brief of up to 18 pages. ECF 44.

b.      Plaintiffs do not state a claim for violation of the Comprehensive Computer Data Access and Fraud Act (Count II) or California's Unfair Competition Law (Count III) because they fail to allege they lost money or property as a result of the alleged disclosure of their information to third parties, as required to establish statutory standing;

d.      Plaintiffs do not state a claim for violation of the California Consumer Privacy Act (CCPA) (Count IV) because they do not (and cannot) allege a security breach involving personal information as defined and expressly required by the CCPA for a private cause of action;

e.      Plaintiffs do not state a claim for breach of implied contract (Count V) because they do not plead the nature or scope of their purported implied contract with Lakeview and do not distinguish between their previously-pleaded claim for breach of an express contract;

f.      Plaintiffs do not state a claim for unjust enrichment (Count VI) because they have not plausibly alleged Lakeview received and unjustly retained any benefit at their expense;

g.      Plaintiffs' claim for declaratory judgment (Count VII)—and its incorporated request for injunctive relief—fails because (i) both declaratory judgment and injunctive relief are remedies, not independent causes of action; (ii) plaintiffs' request for declaratory judgment necessarily fails with the failure of plaintiffs' substantive claims; and (iii) plaintiffs have not plausibly alleged irreparable harm or lack of an adequate legal remedy warranting injunctive relief;

h.      Plaintiffs do not state a claim for breach of confidence (Count VIII) because it is barred by plaintiffs' judicial admissions regarding an express written contract covering the same subject matter;

i.      Plaintiffs' claim for violation of the California Invasion of Privacy Act (CIPA) (Count IX) fails because Lakeview cannot eavesdrop on its own communications with plaintiffs; plaintiffs have not alleged actual eavesdropping by third parties; and no "contents" of communications are at issue; and

j.      Plaintiffs' claim for violation of the Electronic Communications Privacy Act (ECPA) (Count X) fails because the ECPA excepts from its scope the interception of communications by parties to the communication or interceptions to which one party has consented unless the interception was made for a criminal or tortious purpose, which plaintiffs have not

1    adequately alleged?

2         4.      Whether the Court should dismiss plaintiff Idris's California-specific claims because

3    Florida law applies to his claims?

4    Dated: October 27, 2025                    QUINN EMANUEL URQUHART
                                                 & SULLIVAN, LLP

5

6

7                                              By: *Viola Trebicka*
                                               Viola Trebicka (Bar No. 269526)
                                               violatrebicka@quinnemanuel.com
8                                              Valerie Roddy (Bar No. 235163)
                                               valerieroddy@quinnemanuel.com

9

10                                             865 S. Figueroa Street, 10th Floor
                                               Los Angeles, CA 90017

11

12                                             Ryan Sullivan (*pro hac vice*)
                                               111 Huntington Avenue, Suite 520
13                                             Boston, MA 02199

14                                             *Attorneys for Defendant Lakeview Loan*
                                               *Servicing, LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION AND STATEMENT OF REQUESTED RELIEF ............ i

STATEMENT OF ISSUES TO BE DECIDED .................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

PRELIMINARY STATEMENT ......................................................................................1

RELEVANT FACTUAL ALLEGATIONS......................................................................2

RELEVANT PROCEDURAL BACKGROUND ............................................................5

ARGUMENT ...................................................................................................................6

I.   *POPA* REQUIRES DISMISSAL BECAUSE PLAINTIFFS LACK ARTICLE III
     STANDING ............................................................................................................6

     A.   Plaintiffs' Complaint Fails on Its Face to Establish Article III Standing Under
          *Popa* .............................................................................................................7

     B.   Lakeview's Factual Challenge to Standing Also Compels Dismissal Under
          *Popa* ...........................................................................................................10

II.  PLAINTIFFS CONSENTED TO LAKEVIEW'S ALLEGED CONDUCT,
     REQUIRING DISMISSAL...................................................................................12

     A.   Plaintiffs Agreed to Lakeview's Online Privacy Notice .........................13

     B.   The OPN Clearly Discloses the Complained-Of Conduct ........................14

III. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR A HOST OF
     CLAIM-SPECIFIC REASONS ..........................................................................17

     A.   Negligence (Count I).................................................................................17

     B.   Comprehensive Computer Data Access & Fraud Act (CDAFA) (Count II)
          and Unfair Competition Law (UCL) (Count III)......................................19

     C.   California Consumer Privacy Act (CCPA) (Count IV) ...........................19

          1.   Plaintiffs' Claims Based on Sections 1798.100-148 Fail............................20

          2.   Plaintiffs' allegations are insufficient to trigger the right to private
               action under Section 1798.150 ......................................................20

          3.   Plaintiffs' request for statutory damages should be dismissed for
               failure to send a pre-suit notice letter ...........................................21

     D.   Breach of Implied Contract (Count V).....................................................22

     E.   Unjust Enrichment (Count VI)..................................................................22

F.     Declaratory Judgment and Injunctive Relief (Count VII)..........................................23

G.     Breach of Confidence (Count VIII).................................................................23

H.     California Invasion of Privacy Act (CIPA) (Count IX) ............................................24

     1.     Section 631(a) ...................................................................................24

          (a)     The information at issue is not the "contents" of a communication .................................................................25

          (b)     The information was not read "in transit" .........................................26

     2.     Section 632(a) ...................................................................................27

I.     The Electronic Communications Privacy Act (ECPA) (Counts X) ..........................28

IV.     FLORIDA LAW APPLIES TO PLAINTIFF IDRIS AND FORECLOSES HIS CALIFORNIA CLAIMS..........................................................................................29

CONCLUSION .................................................................................................................30

MEET AND CONFER CERTIFICATION…………………………………………………….31

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*Am. Diabetes Ass'n v. United States Dep't of the Army*,
   938 F.3d 1147 (9th Cir. 2019) ...................................................................... 11

5

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 8, 12

7

*Baton v. Ledger SAS*,
   740 F. Supp. 3d 847 (N.D. Cal. 2024) ........................................................ 23

8

9

*Beltran v. Nationstar Mortgage LLC*,
   No. 4:25-cv-04412-JSC (N.D. Cal.) ............................................................... 2

10

11

*Berkla v. Corel Corp.*,
   302 F.3d 909 (9th Cir. 2002) ...................................................................... 23

12

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ...................................................................... 29

13

14

*Birdsong v. Apple, Inc.*
   590 F.3d 955 (9th Cir. 2009) ...................................................................... 19

15

16

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................ 25

17

*Byars v. Sterling Jewelers, Inc.*,
   No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ............ 12

18

19

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) ................................................................. 10

20

*Century 21 Real Est. LLC v. All Pro. Realty, Inc.*,
   889 F. Supp. 2d 1198 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015) .......... 30

21

22

*Cook v. GameStop, Inc.*,
   148 F.4th 153 (3d Cir. 2025) ........................................................................ 9

23

24

*Corales v. Bennett*,
   567 F.3d 554 (9th Cir. 2009) ...................................................................... 18

25

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) ........................................................ 19

26

27

*Delgado v. Meta Platforms, Inc.*,
   718 F. Supp. 3d 1146 (N.D. Cal. 2024) ........................................................ 20

28

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ................................................................................................ 10

*Doe I v. Google LLC*,
    No. 23-cv-02431-VC, 2025 WL 1616720 (N.D. Cal. June 6, 2025) ..................................... 26

*Doe v. Eating Recovery Center LLC*,
    Case No. 23-cv-05561 (N.D. Cal. Oct 17, 2025) ................................................................. 27

*Doe v. Kaiser Found. Health Plan, Inc.*,
    No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......................................... 29

*Doe v. MKS Instruments, Inc.*,
    No. 23-cv-868, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) ................................................ 22

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ............................................................................................................. 23

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) .............................................................................................. 22

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) .......................................................................................... 25, 26

*Fields v. Legacy Health Sys.*,
    413 F.3d 943 (9th Cir. 2005) ................................................................................................ 30

*Fleshman v. Wells Fargo Bank, N.A.*,
    27 F. Supp. 3d 1127 (D. Or. 2014) ....................................................................................... 14

*Gardiner v. Walmart Inc.*,
    No. 20-cv-04618, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........................................... 21

*Gershzon v. Meta Platforms, Inc.*,
    No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ..................................... 26

*In re Google Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) ................................................................................................. 28

*Griffey v. Magellan Health Inc.*,
    562 F. Supp. 3d 34 (D. Ariz. 2021) ........................................................................... 18, 21, 22

*Hammerling v. Google, LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................... 26

*Haynes v. Uponor, Inc.*,
    No. 21-CV-05480-PJH, 2022 WL 541180 (N.D. Cal. Feb. 23, 2022) ................................... 24

*Hernandez-Silva v. Instructure, Inc.*,
    No. 25-cv-2711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ............................................. 19

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................... 23

*Khamooshi v. Politico LLC*,
    No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) ............................ 9, 10

*Lakes v. Ubisoft, Inc.*,
    777 F. Supp. 3d 1047 (N.D. Cal. 2025) ................................................ 13, 14, 17, 29

*Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*,
    44 Cal. App. 4th 194 (1996) ............................................................................. 23

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........................... 10

*Marden v. LMND Medical Group*,
    No. 23-cv-3288, 2024 WL 4448684 (N.D. Cal. July 3, 2024) ...................................... 18

*McCoy v. Alphabet, Inc.*,
    No. 20-cv-05427, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ..................................... 20

*Medimatch, Inc. v. Lucent Techs. Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) ................................................................. 30

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................. 27

*Mikulsky v. Bloomingdale's, LLC*,
    713 F. Supp. 3d 833 (S.D. Cal. 2024) ................................................................. 26

*Pitzer Coll. v. Indian Harbor Ins. Co.*,
    8 Cal. 5th 93 (2019) ...................................................................................... 30

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) .......................................................................... 28

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ........................................................... 1, 6, 7, 8, 9, 12

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ...................................................................... 18

*R.C. v. Walgreen Co.*,
    733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................................. 19

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ............................................................................. 24

*Ruiz v. Affinity Logistics Corp.*,
    667 F.3d 1318 (9th Cir. 2012) .......................................................................... 30

*Ruiz v. Gap, Inc.*,
 622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd,* 380 F. App'x 689 (9th Cir. 2010)...................18

*Shah v. Capital One Financial Corp.*,
 768 F. Supp. 3d 1047 (N.D. Cal. 2025) ...................................................... 19, 22, 23

*Shah v. Capital One Financial Corp.*,
 No. 3:24-cv-05985-TNT (N.D. Cal.) ........................................................... 2, 22

*Shulman v. Grp. W Prods., Inc.*,
 18 Cal. 4th 200 (1998)................................................................................... 10

*Sicor Ltd. v. Cetus Corp.*,
 51 F.3d 848 (9th Cir. 1995)............................................................................ 24

*Smith v. Facebook, Inc.*,
 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018)......................13

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020)......................................................................... 23

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) ............................................................................... 6, 7

*Sussman v. Am. Broad. Cos.*,
 186 F.3d 1200 (9th Cir. 1999)........................................................................ 28

*Svenson v. Google Inc.*,
 No. 13-cv-4080, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ........................................ 18

*Thomas v. Papa Johns Int'l, Inc.*,
 No. 22-cv-2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL
 1704437 (9th Cir. June 18, 2025)..................................................................... 27

*Tian v. Bank of Am., N.A.*,
 No. 24-cv-9877, 2025 WL 1377767 (C.D. Cal. Apr. 2, 2025) ......................................... 21

*Torres v. Prudential Fin., Inc.*,
 No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)................................. 27

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ................................................................................... 6

*Valenzuela v. Kroger Co.*,
 No. 22-cv-6382, 2023 WL 4418887 (C.D. Cal. June 23, 2023) ......................................... 24

*Yoon v. Lululemon USA, Inc.*,
 549 F. Supp. 3d 1073 (C.D. Cal. 2021)..........................................................25, 26

*Zarif v. Hwareh.com, Inc.*,
   No. 23-cv-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ............................................. 29

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ......................................................................................... 25, 26

### **Rules/Statutes**

#### Federal

F.R.C.P. 12(b)(1) ......................................................................................................................... 1

F.R.C.P.  12(b)(6) ................................................................................................................... 1, 2

16 C.F.R. § 313.3(p)(1)-(3) ...................................................................................................... 15

15 U.S.C. § 6809(4)(B) .......................................................................................... 14, 15, 20, 28

18 U.S.C. § 2510(8) .................................................................................................................. 25

18 U.S.C. § 2511(1) .................................................................................................................. 28

18 U.S.C. § 2511(2)(c) .............................................................................................................. 28

18 U.S.C. § 2511(2)(d) .............................................................................................................. 13

18 U.S.C. § 2511(a) .................................................................................................................. 15

Cal. Civ.Code § 1798.81.5(d)(1)(A) .................................................................................... 20, 21

Cal. Civ. Code § 1798.81.5(d)(1)(A)(i)-(vii) ............................................................................. 21

Cal. Civ. Code § 1798.81.5(d)(1)(A)(iii) .................................................................................. 21

Cal. Civ. Code § 1798.100-148 ........................................................................................... 19, 20

Cal. Civ. Code § 1798.115 ........................................................................................................ 13

Cal. Civ. Code § 1798.145(e) .................................................................................................... 20

Cal. Civ.Code § 1798.150 ......................................................................................................... 20

Cal. Civ. Code § 1798.150(a) .................................................................................................... 20

Cal. Civ. Code § 1798.150(b) .................................................................................................... 21

Cal. Civ. Code § 1798.150(c) .................................................................................................... 20

Cal. Penal Code § 502(c)(1)(B) ................................................................................................ 13

Cal. Penal Code § 502(c)(2) .................................................................................... 13

Cal. Penal Code § 631(a) .................................................................. 13, 24, 25, 26, 27

Cal. Penal Code § 632 ............................................................................................ 13

Cal. Penal Code § 632(a) .......................................................................... 15, 24, 27

Cal. Penal Code § 632(c) ........................................................................................ 27

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Despite making dramatic allegations of "outrageous, illegal, and widespread" disclosure of "Nonpublic Personal Information" and "Personally Identifiable Financial Information," plaintiffs allege the disclosure of nothing more than mundane, non-sensitive information regarding their interactions with Lakeview's website, such as the fact of visiting the top-level *https://lakeview.com* domain webpage, button clicks, scrolling rates, and browser or device specifications. The routine practice of sharing this limited information allows companies to deliver advertising to consumers who are more likely to be interested in their products; it also benefits consumers by alerting them, for example, that the camping gear they admired last week is now on sale (or mortgage interest rates have dropped). The complained-of conduct in plaintiffs' 75-page amended complaint—when stripped of its vague but inflammatory characterizations and conclusory allegations—boils down to a ubiquitous online practice that courts have routinely found cannot be the basis for any claim because it does not disclose *any* sensitive information.

Plaintiffs' amended complaint should be dismissed on four independent grounds:

*First*, plaintiffs have not alleged any concrete injury sufficient for Article III standing. As the Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) makes clear, courts must consider whether alleged data disclosures meet Article III's concrete injury requirement by comparing them to the type of privacy violations or reputational injuries that traditionally have been grounds for suit. As in *Popa*, the disclosure of mundane information about online browsing alleged in the complaint is simply not analogous to those redressed by traditional torts. The *Popa* decision—which is controlling and squarely on-point—compels the conclusion that any alleged mishandling of such unrevealing information (which Lakeview denies) does not give rise to a concrete injury. Pursuant to the Ninth Circuit's clear holding in *Popa*, the entire complaint should be dismissed for lack of standing under Rule 12(b)(1).

*Second*, plaintiffs' complaint should be dismissed under Rule 12(b)(6) because plaintiffs consented to the alleged data collection and distribution. Lakeview fully discloses the complained-of conduct in its comprehensive privacy notice (attached to plaintiffs' complaint). Plaintiffs do not

contest they saw this notice; to the contrary, they affirmatively alleged that it was a binding privacy contract Lakeview has with its customers. Because plaintiffs consented to Lakeview's alleged conduct, they cannot be heard to complain of it now.

*Third*, plaintiffs' "kitchen sink" pleading—which attempts to spin the same alleged data disclosure into **ten** different statutory violations, common law claims, and remedies—should be dismissed for failure to state a claim for a host of claim-specific reasons. For these reasons too, plaintiffs' complaint should be dismissed with prejudice.

Finally, when plaintiff Idris created an account to apply for a Lakeview mortgage on the *lakeview.com* website, he agreed to Lakeview's Terms and Conditions, which include a Florida choice-of-law provision. Thus, the Court should dismiss his California law-based claims.

<u>Relevant Factual Allegations</u>[3]

<u>Plaintiffs and Their Counsel.</u> The named plaintiffs are all California residents with mortgages serviced by Lakeview. ECF 31, ¶¶ 17-19. Their counsel, CohenMalad, LLP, has filed two other nearly identical complaints against other defendants in this District: *Shah v. Capital One Financial Corp.*, No. 3:24-cv-05985-TNT and *Beltran v. Nationstar Mortgage LLC*, No. 4:25-cv-04412-JSC ("*Beltran*").[4] *See* RJN at § I & Exs. 1-2.

<u>Defendant Lakeview.</u> Lakeview services and refinances mortgage loans throughout the United States. ECF 31, ¶ 20. It maintains a website, *lakeview.com*, that markets mortgage and refinancing products. *See, e.g.*, *id.* at 21:1-18. The separate *apply.lakeview.com* subdomain allows individuals to create a "tavant_new_account" and log in online to submit loan applications, including applications for refinancing. *See, e.g.*, *id.* at 22:7-24, ¶¶ 72-75, 120.

<u>The Information Allegedly Collected and Transmitted by Lakeview.</u> Plaintiffs' allegations

---

[3]   For the Rule 12(b)(6) portions of this motion only, Lakeview assumes the truth of plaintiffs' non-conclusory factual allegations, unless contradicted by other allegations in the complaint (ECF 31) or the materials attached to it (ECF 31-1 & 31-2). Page citations are to internal pagination if available.

[4]   On October 20, 2025, the Court found that this case and *Beltran* are related. ECF 41. The defendant in *Beltran* (Mr. Cooper) subservices a substantial portion of Lakeview loans, and two of the three named plaintiffs have mortgages subserviced by Mr. Cooper. *See generally* ECF 37.

are conspicuously light on specifics of the information actually collected and disclosed. Plaintiffs contend that "IP addresses and browser characteristics are necessarily transmitted to the tracking platforms." ECF 31, ¶ 63. But plaintiffs' allegations are different for each alleged third-party code:

*Meta Pixel*. Plaintiffs only specifically allege that the website name "Lakeview: Largest Mortgage Loan Servicer in the U.S." and the URL *https://lakeview.com/* are collected and transmitted by the Meta Pixel. *Id.* ¶ 64; *cf. id.* at 19, § ii (omitting Meta Pixel from analysis of alleged "personal and financial information" collected from user interactions with Lakeview's website). Plaintiffs also assert that the Meta Pixel collects the "the 'c_user cookie,' which enables Facebook [one of Lakeview's advertising service providers] to link the user to their logged in Facebook account and thereby identify the user." *Id.* ¶ 43.

*Google Analytics*. Plaintiffs allege Google code collects and transmits: (1) pageview events showing website information, including the title and URL for each webpage on the *lakeview.com* website; (2) information related to other specific events, including the event category and event name parameters, for button, outbound link, and phone number click events, scroll events (how far a user scrolled on a page), and a "tavant_new_account" event when a user makes a new account on *https://apply.lakeview.com/*; (3) information related to the browser settings; and (4) an identifier for a first-party cookie set by Lakeview. ECF 31, ¶¶ 53, 64, 66-77. Plaintiffs allege this information shows a user is viewing pages where they might "learn about refinancing loans" and/or indicates a user created or logged into an account to submit a refinancing application. *Id.* ¶¶ 67, 72-75. When a user is filling out an application for refinancing, the only specific information plaintiffs allege is collected or transmitted is "that the user is viewing a 'loan-application'" page. *Id.* ¶ 77. Plaintiffs do not allege any of this information is linked to a user's identity. Only plaintiff Idris alleges he created an account and submitted a loan application through *lakeview.com*. *Id.* ¶ 120; *cf. id.* ¶¶ 126, 130.

*Microsoft Clarity*. Plaintiffs allege the Microsoft Clarity code is a "session recording" tool which collects and transmits the current webpage a user is visiting, session recording information for the webpage, and a first-party cookie ID. ECF 31, ¶¶ 54, 64, 67, 72. Plaintiffs also offer the bare assertion that Lakeview transmits to Microsoft, through Clarity, "a consumer's first name, telephone number, address, their account/loan number, their payment history (including payment amounts),

payment dates, the URLs from inside the consumer payment portal, and whether a loan was paid off or not." *Id.* ¶ 55. But plaintiffs make no specific allegations that such information of the plaintiffs was disclosed to Microsoft (or anyone else). *See id.* ¶¶ 124, 133-34.

*Tavant's VELOX NXT.* Finally, plaintiffs allege Tavant's VELOX NXT platform collects "user data, including granular information about users' device[s], such as CPU architecture, available memory, and browser characteristics, as well as behavioral tracking, including mouse movements and click events." ECF 31, ¶ 58. Like Microsoft Clarity, the VELOX NXT platform is allegedly a "session replay" tool. As with the Google code, plaintiffs do not allege that this information is linked to a user's identity.

<u>Lakeview's Declaration For Factual Standing Challenge.</u> Although plaintiffs' lack of Article III standing is facially apparent from the pleadings, Lakeview is additionally asserting a factual challenge. To that end, Lakeview has provided a declaration from its Website Manager, Mr. Kawsar Ali, which confirms and adds context to plaintiffs' allegations. For example, Mr. Ali confirms the Meta Pixel on the Lakeview website is configured to transmit "only pageview events" and sends only the truncated *https://lakeview.com* URL regardless of which page is viewed or action is taken on Lakeview's website. Ali Decl. ¶¶ 13-14, 16. It is not configured to, and will not, collect or transmit any information entered by a user or any other user behavior. *Id.* ¶ 17. Mr. Ali also explains that although the code remains on the website, Lakeview terminated its Meta Pixel account in early 2022, such that data is not collected when it is transmitted to Meta. *Id.* ¶ 18.

Similarly, consistent with plaintiffs' allegations, Mr. Ali confirms the Google code transmits only a limited set of events including button presses, clicked links, and scrolling, and does not transmit any information entered by a user into a text field. *Id.* ¶ 26, 29-31. Mr. Ali also confirms that the Google code does not collect or transmit any personally-identifying information and that Lakeview has no way to link a first-party cookie ID with an individual user. *Id.* ¶ 27. Mr. Ali further explains that if a user is applying for a loan, no application information entered into any field will be collected. *Id.* ¶¶ 29, 35. Moreover, all information collected by the Google code is anonymous, and Lakeview is unaware of any way that it could be re-identified. *Id.* ¶ 27.

Mr. Ali also confirms Microsoft Clarity is configured to mask all information entered by a

1  user, and to mask sensitive information that appears on the webpages. *Id.* ¶¶ 20-21.

2      Mr. Ali further explains that Lakeview did not install and does not manage the VELOX NXT

3  platform on the *apply.lakeview.com* subdomain. *Id.* ¶ 34. Tavant is an independent company that

4  provides online application technology for use by Lakeview to originate loans and manages the

5  *apply.lakeview.com* subdomain. *Id.* ¶¶ 12, 32-33. Thus, this platform is not third-party code at all,

6  but instead a first-party program used by *Tavant* to collect information for its own use when a

7  customer applies for a loan. Lakeview does not have access to the VELOX NXT platform. *Id.* ¶ 34.

8      Finally, Mr. Ali makes clear that the *lakeview.com* website does not have any functionality

9  which allows for customers to log in and manage their loans. *Id.* ¶¶ 9, 33. Instead, it provides

10 individuals information about loans and it serves as a portal to connect customers with the third-

11 party subservicers that manage their loans. *Id.* ¶¶ 6-10. This evidence is also largely consistent with

12 plaintiffs' complaint, which does not identify anywhere on the *lakeview.com* website plaintiffs

13 serviced their loans, and identifies only the *apply.lakeview.com* application and login for users to

14 create a "tavant_new_account" and apply for a loan. *See* ECF 31, ¶¶ 72-77; *see also id.* at 23:1-18

15 (showing "tavant_new_account" event is collected by Google code).

16 Relevant Procedural Background

17     Plaintiffs filed the amended complaint at issue in lieu of responding to Lakeview's motion

18 to dismiss plaintiffs' original complaint. *See* ECF 23, 31. Judge Thompson denied Lakeview's

19 motion to dismiss as moot in light of plaintiffs' decision to amend. *See* ECF 32.

20     As they did in the related *Beltran* case, plaintiffs' largely overlapping counsel made *de*

21 *minimis* amendments to their pleadings in response to defendants' motions to dismiss. In both cases,

22 plaintiffs' counsel added assertions regarding third-parties Google and Meta allegedly sharing

23 information generally with "data brokers" (none of which relate specifically to the defendant at

24 issue) and removed purported claims for "negligence *per se.*" *Compare* ECF 31, ¶¶ 101-04 *with*

25 *Beltran*, ECF 26, ¶¶ 101-05; *compare* ECF 31-3 at 52-54 *with Beltran*, ECF 26-4 at 56-58. In this

26 case, plaintiffs also added assertions regarding the time frame in which the Meta Pixel and Google

27 Tag Manager software was allegedly in use, the behavior of Microsoft Clarity software, and

28 purported estimates of the value of unspecified "personal data," *see* ECF 31, ¶¶ 43, 44-50, 53, 55-

1   57, and removed claims for breach of express contract and for unauthorized divulgence by an

2   electronic communications service under the ECPA (*see* ECF 31-3 at 63-64, 77-80).

<u>Argument</u>

3

4   I.    <u>*Popa* Requires Dismissal Because Plaintiffs Lack Article III Standing</u>

5          To proceed in federal court, plaintiffs must sufficiently allege they "suffered an injury in fact

6   that is concrete, particularized, and actual or imminent," that must be "real, and not abstract."

7   *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 424 (2021). "At base . . . *TransUnion* requires a

8   court to assess whether an individual plaintiff has suffered a harm that has traditionally been

9   actionable in our nation's legal system" to determine standing. *Popa v. Microsoft Corp.*, 153 F.4th

10  784 (9th Cir. 2025). Plaintiffs have not alleged a "concrete" injury that confers standing.

11         The Ninth Circuit's recent decision in *Popa*—a single-issue appeal considering the sole

12  question of whether the plaintiff alleged a "concrete" injury for standing purposes—controls and

13  compels dismissal here. In *Popa*, the plaintiff alleged a website's use of Microsoft Clarity's "session

14  replay" technology to capture user interactions, including some "30 different categories" of

15  information such as "the date a user visited the website, the device the user accessed the website on,

16  the type of browser [used], the [device's] operating system [], the country where the user accessed

17  the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on

18  the website, and how far down a webpage a user scrolls," violated statutory and common law privacy

19  laws. *Id.* at 786. Summarizing the Supreme Court's teachings in *Spokeo, Inc. v. Robins*, 578 U.S.

20  330 (2016) and *TransUnion*, the Ninth Circuit explained that for intangible injuries (such as alleged

21  data privacy violations), courts must "assess whether the alleged injury to the plaintiffs has a 'close

22  relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American

23  courts," *i.e.*, "whether plaintiffs have identified a close historical or common-law analogue for their

24  asserted injury." *Id.* at 789 (quotation marks and citations omitted). Further, the court reiterated that

25  although *Spokeo* "does not require an exact duplicate in American history and tradition," that "is

26  not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving

27  beliefs about what kinds of suits should be heard in federal courts." *Id.* (quotation marks and

28  citations omitted). The court then surveyed recent decisions applying *Spokeo* and *TransUnion*,

finding "these approaches all share an important feature: they look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common law tort." *Id.* at 791.

Turning to the *Popa* plaintiff's alleged injuries—which are strikingly similar to those alleged here—the Ninth Circuit considered the two relevant common law tort analogues: intrusion upon seclusion and public disclosure of private facts. *Id.* The Court of Appeals found neither was apt because both torts involved conduct that would be highly offensive to a reasonable person. *Id.* Specifically, the former requires "an intentional interference" with a plaintiff's "interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man*," and the latter requires that a defendant "gives publicity" to a matter that concerns "the private life of another" and that the "information is *highly offensive* to a reasonable man." *Id.* (quotation marks and citations omitted). The Ninth Circuit found Ms. Popa identified no such information that was collected by the session replay technology; instead, the court likened the recording of the plaintiff's website interactions to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* The court also noted the stark difference in nature between plaintiff's alleged injuries and those resulting from the Restatement's hypothetical examples of the traditional torts, such as "taking intimate pictures" through an upstairs bedroom window with a telescopic lens (as an example of intrusion upon seclusion) and the unauthorized publication of a photograph of a nursing mother (as an example of public disclosure of private facts). Finally, the court rejected plaintiffs' argument that the statutory violations she alleged, by creating a private right of action, necessarily conferred standing absent a concrete injury. *Id.* at 791-95 ("'Article III standing requires a concrete injury even in the context of a statutory violation.'") (quoting *Spokeo*, 578 U.S. at 341).

A.    Plaintiffs' Complaint Fails on Its Face to Establish Article III Standing Under *Popa*

There is no material or qualitative difference between the relevant facts of this case, the legal analysis applicable to those facts, or the conclusions that follow, and those in *Popa*. The intangible injury alleged in this case derives from the alleged improper collection, use, and/or disclosure of mundane, non-sensitive information, just as in *Popa*: plaintiffs allege the code collects the same type and nature of information the Microsoft Clarity session recorder in *Popa* collected, namely,

1   (i) the URL and title of the webpage visited; (ii) webpage events, such as mouse movements,

2   scrolling, and click events like clicking links and buttons or scrolling on the page (which plaintiffs

3   allege disclose information regarding whether a user has a *lakeview.com* account or has initiated a

4   call to Lakeview through the webpage); and (iii) users' IP addresses and device characteristics,

5   including "CPU architecture, available memory, and browser characteristics." ECF 31, ¶¶ 63-77.

6       In an apparent attempt to evade *Popa*'s holding, plaintiffs now make the bare assertion that

7   the Microsoft Clarity code installed on Lakeview's website transmits "information inside the

8   Lakeview login portal like a consumer's first name, telephone number, address, their account/loan

9   number, their payment history (including payment amounts), payment dates, the URLs from inside

10  the consumer payment portal, and whether a loan was paid off or not." ECF 31, ¶ 55. But plaintiffs

11  make no allegations the Clarity code actually collected *their* such information. *See id.* ¶¶ 124, 133-

12  34 (specifying allegedly disclosed information). As the *Popa* court explained, it is not enough for

13  the plaintiff to "identif[y] potential harms that *might* be associated with session-replay technology";

14  rather, the plaintiff is required to "link[] these potential, generalized harms to the operation of Clarity

15  on [defendant's] website vis-à-vis [the plaintiff]." *Popa*, 153 F.4th at 791 n.5. Moreover, the court

16  may disregard these Microsoft Clarity allegations as a "naked assertion[] devoid of further factual

17  enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as plaintiffs offer no factual support this

18  information is disclosed, and fail even to identify a "payment portal" on the *lakeview.com* website.

19      Even for the sole code on the *apply.lakeview.com* loan application pages (which, unlike other

20  pages, at least *could* implicate sensitive financial information), plaintiffs allege that Lakeview

21  captures only pageview events. ECF 31, ¶ 76-77. There are no allegations Lakeview captures any

22  of the information a user enters, or how much progress, if any, a user makes on the application. *Id.*

23  Plaintiffs do not allege their sensitive financial information such as account numbers, loan status, or

24  details of any specific loan are captured and disclosed by any code on the *lakeview.com* website.

25      Just as in *Popa*, the only two common law invasion of privacy torts[5] that could *potentially*

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5]  As the Ninth Circuit explained in *Popa*, "there existed no free-roaming privacy right at common

28  law," 2025 WL 2448824, at *6; rather, in addition to the torts discussed above, there are only two
    other torts "protecting specific kinds of privacy-related harms," namely, (i) appropriation of a

provide analogues to plaintiffs' alleged injuries are claims for intrusion upon seclusion and public disclosure of private facts. The alleged collection and limited disclosure of the non-sensitive information in this case cannot give rise to an injury analogous to those redressed by these torts. Plaintiffs do not and cannot allege that any collection or disclosure of such information would be "highly offensive" to a reasonable man; like the recording in *Popa*, the tracked data bears no resemblance to the hypothetical examples of actionable invasions of privacy in the Restatement (intimate photos taken through an upstairs bedroom window with a telephoto lens or publication of a photograph of a nursing mother).

Rather, just as the Ninth Circuit analogized the session replay recording in *Popa* to a store clerk observing shoppers, here too, information that someone visited a mortgage-related website is not sufficiently sensitive to give rise to a privacy tort. Just three decades ago, before the complete ascendance of the Internet and online conveniences, people walked into banks—public places in their communities—to apply for mortgages. They asked to see a mortgage consultant and sat at the mortgage desk to discuss options. They did not wear disguises or hide their faces to do so. Seeking or having a mortgage simply is not the type of information that would cause a reasonable person "embarrassment or humiliation" if disclosed. Courts have found specific information plaintiffs allege was collected and disclosed—such as IP addresses—are not subject to a protected privacy interest. *See, e.g.*, *Cook v. GameStop, Inc.*, 148 F.4th 153, 159 (3d Cir. 2025) (affirming dismissal for lack of standing, finding collection of similar information using session replay was not analogous to injuries redressed by intrusion upon seclusion or public disclosure of private facts); *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (dismissing for lack of standing because disclosure of IP addresses does not give rise to privacy injury) (collecting cases). Indeed, that a property is encumbered by a mortgage, and the identity of the owner of the property, is typically a matter of public record. RJN at § II.

Finally, although all of the information alleged to be at issue here is non-sensitive even when personally-identifiable, most of the collected information in this case is not—and cannot be—

---

person's name or likeness and (ii) false light publicity. *Id.* Neither has any applicability here.

identified with a specific person, confirming the impossibility of a concrete injury. *See* pp. 2-4, *supra*. Plaintiffs make no non-conclusory allegations that the anonymous information collected by Google, Microsoft or Tavant code on the *lakeview.com* website can be—or have ever been—re-identified to specific individuals. *See id*. The only information in this case that can be linked to a particular individual at all (and ***only if*** the user is concurrently logged into a Facebook account) is the fact that a user visited Lakeview's website, ECF 31, ¶ 43, and the code that collects this information is alleged to transmit ***only*** pageview events and the *https://lakeview.com* URL. *Id.*, ¶ 64. The other information is collected anonymously by cookies, *id.* at ¶¶ 53-54,[6] which are tied only to browsers, not individuals.

Plaintiffs cannot explain why or how their privacy has been invaded—much less in a manner that was highly offensive—by the collection or disclosure of the fact that ***someone*** clicked a button, scrolled to a certain point on webpage, or had a browser with certain configurations. Even with respect to traditionally private and sensitive information like medical records, there is no standing where the information is not associated with an individual. *See, e.g.*, *Dinerstein v. Google, LLC*, 73 F.4th 502, 513-14 (7th Cir. 2023) (noting skepticism that allegations related to de-identified medical records "would give rise to any injury at all—let alone one concrete enough to support Article III standing"); *see also Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (no privacy injury where there are "no specific allegations as to why this data is sensitive or individually identifiable"); *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (no concrete injury from collection of anonymous, de-identified data); *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 230 (1998) (no public disclosure of private facts claim where there is "a complete lack of identification or identifiability"). Because plaintiffs do not allege any concrete injury, the complaint should be dismissed in its entirety for lack of Article III standing.

**B.**     Lakeview's Factual Challenge to Standing Also Compels Dismissal Under *Popa*

Plaintiffs' lack of standing is evident on the face of the complaint, despite plaintiffs' efforts to obfuscate precisely what information is collected and shared through vague and artful pleading.

---

[6]  Plaintiffs' cited article, ECF 31 at 15 n.22, is in accord. *See* RJN Ex. 4 ("Google Analytics strictly prohibits sending Personally Identifiable Information (PII).").

To provide further comfort there is no injury-in-fact, Lakeview also brings a factual challenge based on Mr. Ali's declaration, which evidences all of the key facts confirming plaintiffs' lack of standing.

In a factual challenge to standing, "the 'court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.'" *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019). "'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Id.*

Here, Mr. Ali's declaration clearly establishes that (i) the Meta Pixel transmits only the fact that a user visited the top-level *lakeview.com* URL (and no other information) and, since early 2022, has not actually "collected" the top-level URL information at all because Lakeview terminated the Meta Pixel account associated with the code on its website, Ali Decl. ¶¶ 13-18; (ii) the Microsoft Clarity code installed on *lakeview.com* is session-recording software that is configured to mask all information a user may type into any input box or select from a drop-down menu and all sensitive information that appears in the text of a webpage, *id.* ¶¶ 19-22; (iii) the Google Analytics code (now deprecated) and Google Analytics 4 code never captured or transmitted any personally identifiable information, and instead have collected only specific page events (like clicking on an outbound link), and Lakeview's data sharing configurations relating to Google allows only aggregated data collection that cannot be identified with a user (or even Lakeview), *id.* ¶¶ 23-31; and (iv) the Tavant Velox NXT code on the *apply.lakeview.com* subdomain is managed and controlled by Tavant (not Lakeview), and the only Tavant-specific information collected by Lakeview is that a Tavant account was created or a Tavant application was submitted by an anonymous user, *id* ¶ 35. Moreover, the Google Analytics code alleged by plaintiffs to capture information during the loan application process collects no user input information, personally identifying information, sensitive financial information, or other private information. *Id.* ¶ 36. Finally, Mr. Ali confirms that all alleged servicing of loans occurs on the independent subservicer websites, and does not occur on the *lakeview.com* website. *Id.* ¶¶ 8-9; *cf.* ECF 31, ¶¶ 120, 126, 116 (conclusory assertion that named plaintiffs "use[] Lakeview's Website" to make mortgage payments).

1    Mr. Ali's declaration also confirms that plaintiffs' newly-minted allegation regarding the

2    information transmitted by the Microsoft Clarity code should be disregarded as a conclusory "naked

3    assertion," *Iqbal*, 556 U.S. at 678, that lacks factual support in the complaint because it is simply

4    untrue. Mr. Ali explains that Lakeview customers can only service their loans through their

5    independent subservicers. Ali Decl. ¶¶ 6-9. In other words, there is no "consumer payment portal"

6    on the *lakeview.com* website from which customers can view or service their Lakeview loans. As

7    Mr. Ali and the *lakeview.com* website itself explain, customers must go to the website of their

8    subservicer to manage their loan. *Id.* ¶¶ 7-8 & 2:1-16. Moreover, as Mr. Ali testifies, even if

9    Lakeview did have a "consumer payment portal" (which it does not), the settings used by Lakeview

10   for the Clarity code would prevent the asserted information from being transmitted. The Lakeview

11   website uses the "Balanced" configuration for the Clarity tool, which masks "sensitive content,"

12   such as numbers and email addresses that appear on the text of a webpage. *Id.* ¶ 21. Mr. Ali further

13   confirms that—no matter which Clarity settings mode is used—the Clarity software masks all

14   content in input boxes and drop-down menus. *Id.* ¶ 20; *accord Popa*, 153 F.4th at 786-87 & n.1

15   ("While Popa also alleges that a user's mailing address is captured when entered for delivery

16   information, the screenshot produced in the complaint indicates that masking software—a function

17   that limits what information Clarity collects—omitted the street number and zip code.").

18   Because Mr. Ali's declaration confirms that no personal or sensitive information of any kind

19   is collected or transmitted by Lakeview's website, the Court can and should dismiss the complaint

20   in its entirety on the basis of Lakeview's factual challenge to plaintiffs' standing as well. *See, e.g.*,

21   *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *2-3 (C.D. Cal.

22   Apr. 5, 2023) (where standing challenge included both facial and factual aspects, dismissing

23   complaint based on factual challenge to standing where evidence showed no record that online

24   privacy plaintiff ever chatted with defendant's website and based on facial challenge where plaintiff

25   failed to allege she disclosed any sensitive information to defendant or identify any specific personal

26   information she disclosed implicating protectable privacy interest).

27   II.    Plaintiffs Consented to Lakeview's Alleged Conduct, Requiring Dismissal

28   Where, as here, a plaintiff consents to the collection or disclosure of information, there can

-12-    Case No. 3:25-CV-05087-JSC

be no liability. "Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim," *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (citations and quotation marks omitted) (dismissing similar claims based on website tracker), which is the case for at least four of plaintiffs' ten causes of action.[7] Consent is also dispositive for plaintiffs' remaining six causes of action,[8] because consent is an affirmative defense that can be established on the pleadings. *Id.* at 1058 (dismissing claims where pleadings established consent defense). Here, Lakeview's detailed Online Privacy Notice ("OPN"), ECF 31-1, definitively establishes plaintiffs consented to the complained-of conduct, defeating their claims.

A.    Plaintiffs Agreed to Lakeview's Online Privacy Notice

There is no dispute Lakeview's OPN governs the collection and disclosure of plaintiffs' information in this case; plaintiffs specifically allege that "[t]he contracts that Lakeview has with its Customers include the 'Privacy Notice' and 'Privacy Policy' (collectively, 'Privacy Contracts')," ECF 31, ¶ 81, and attach both the OPN and Lakeview's Privacy Policy to the complaint. ECF 31-1, 31-2.[9] *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (plaintiffs bound by data and cookie policies where they alleged they "constitute[] a valid contract" and alleged reliance on policies for fraud claim).

---

[7]  *See, e.g.*, Cal. Penal Code § 502(c)(1)(B) (requiring conduct that is "knowing . . . and without permission"); Cal. Penal Code § 502(c)(2) (same); Cal. Civ. Code § 1798.115 (creating notice and opt-out rights); Cal. Penal Code §§ 631(a), 632 (prohibiting communication interception and eavesdropping "without the consent of all parties"); 18 U.S.C. § 2511(2)(d) (no liability for consensual conduct).

[8]  *See, e.g.*, ECF 1, ¶ 157 (alleging negligence based on failure to protect information from "unauthorized transmittal and use"), ¶ 173 (claiming negligence *per se* based on failure to detect and prevent "unauthorized dissemination"), ¶ 190 (claiming Lakeview violated CDAFA by installing code "without permission"), ¶¶ 198, 200, 206, 209, 211 (alleging UCL violation based on statutory violations that require lack of consent and repeatedly alleging UCL violations based on lack of consent), ¶ 232 (alleging breach of express and implied contract based on allegedly unauthorized "disclos[ures]" described in complaint), ¶ 242 (alleging unjust enrichment based on "unauthorized Disclosure alleged herein"), ¶¶ 254, 256, 257, 258 (alleging "breach of confidence" based on disclosures "without . . . consent," "without express permission," and "without [plaintiffs'] consent").

[9]  Indeed, plaintiffs allege Lakeview customers both read and rely on these disclosures. ECF 31, ¶ 91 ("***Lakeview's Privacy Contracts only reinforced this reasonable understanding*** [that Lakeview will "securely maintain and protect their information].") (emphases added).

Plaintiffs' own allegations are binding and dispositive here. But even beyond that, users of the Lakeview website have ample notice of the disclosures in the OPN. Users navigating to the Lakeview webpage are immediately greeted with a banner alerting them to the use of cookies on the website, including "for analytics about [Lakeview] visitors." RJN at § III & Ex. 3. The banner invites users to see Lakeview's OPN (hyperlinked in the banner). *Id.* Finally, the banner instructs users they can consent to the cookies by (i) continuing to scroll or (ii) clicking an "Accept" button; it also offers a "Dismiss" button and instructions on how to opt-out of cookies.[10] RJN Ex. 3, at 2.

Although plaintiffs complain they never "sign[ed] any written authorization permitting [Lakeview] to send their [so-called] Personal and Financial Information to Third Parties (or fourth parties)," this allegation takes issue with the *sufficiency* of Lakeview's disclosures in the OPN, not their agreement to be bound by them. Indeed, none of the plaintiffs alleges he sought to opt-out, ECF 31, ¶¶ 119-144, and they all allege they continued using Lakeview's website, whether to "research refinancing options," *id.* ¶ 121, or to regularly pay or manage a mortgage and explore refinancing options, *id.* ¶¶ 120, 126, 130. In any event, dispositive here, plaintiffs admit they agreed to Lakeview's OPN and privacy policy by alleging they are "contracts that Lakeview has with its customers." ECF 31, ¶ 81. This Court can decide whether plaintiffs consented as a matter of law based on the text of the contracts plaintiffs acknowledge exist between Lakeview and its customers. *Lakes*, 777 F. Supp. 3d at 1056 (interpreting disclosures in similar policy on motion to dismiss).

      **B.**    The OPN Clearly Discloses the Complained-Of Conduct

Plaintiffs seek to obfuscate the precise complained-of conduct at issue by lumping together distinct concepts, such as collection and disclosure, disparate types of information, and disclosure to third and (unspecified) fourth parties, in vague allegations.[11] Untangling these concepts,

---

[10]  Lakeview's Terms and Conditions, available on its website, also state plainly that "[y]our use of this website constitutes your agreement to all such terms, conditions and notices." RJN Ex. 5, at 4.

[11]  For example, plaintiffs combine two definitions from the Gramm-Leach-Bliley Act ("GLBA") and its implementing regulations to create a plaintiff-defined term, "Personal and Financial Information," to suggest the information at issue in this case is imbued with statutory privacy rights. ECF 31, ¶ 1 & nn. 1-2. As an initial matter, the GLBA affords no private right of action, *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1138-39 (D. Or. 2014), so its definitions are not controlling here. In any event, plaintiffs *omit* the GLBA's carve-out in these definitions for public

1   plaintiffs' (few) specific allegations regarding the information and actions at issue in this case, as

2   they relate to Lakeview's OPN, comprise three discrete categories: (i) information collected by

3   Lakeview; (ii) information allegedly disclosed to third-party code (Google, Microsoft, Tavant, and

4   Meta); and (iii) bald allegations of disclosure to unspecified "fourth" parties.

5       *Lakeview's Collection Is Disclosed.* The OPN clearly discloses that "Lakeview may collect

6   certain types of information from you, such as information you voluntarily provide via forms,

7   surveys, applications, etc. when you visit the Company's sites." ECF 31-1 at 2. It further states it

8   "may also collect information about you from your online browsing and transactions, including your

9   preferences, pages visited, technical information regarding your computer and operating systems,

10  such as your Internet Protocol (IP) address, domain name and system configuration and settings."

11  *Id.* Thus, all claims—to the extent they rely on Lakeview's alleged improper collection of

12  information—should be dismissed.[12]

13      *Lakeview Also Disclosed It Shares Information with Advertisers.* Lakeview's OPN also

14  makes clear Lakeview and its "third-party advertising service providers" may use "cookies," which

15  "allow [Lakeview] to collect technical and navigational information, such as browser type, time

16  spent on its respective site, and pages visited," ECF 31-1 at 3, which is precisely the information

17  plaintiffs claim was improperly disclosed, *see* pp. 2-4, *supra*. In the "Advertising" section of the

18  OPN, Lakeview further informs users that it "advertises on pages within its websites as well as on

19  other websites not affiliated with [Lakeview]. [Lakeview] may contract with another organization

20  ─────────────────────────

21  information, 15 U.S.C. § 6809(4)(B), which can include, *e.g.*, **the fact a person has a mortgage** or

    a consumer's telephone number, 16 C.F.R. § 313.3(p)(1)-(3), both of which are more substantive

22  than any of the information at issue in this case. Plaintiffs then use their selectively-crafted,

    intentionally broad, and sensationally-worded "Personal and Financial Information" term

23  throughout the complaint to suggest anything from social security numbers to credit scores were

    collected, disclosed, and even "reflect[ed]" in ads plaintiffs received and are at issue in this case,

24  *e.g.*, ECF 31 ¶ 123, despite that plaintiffs' own *specific* allegations confirm they are not. *E.g.*, *id.*

25  ¶ 124. This too-cute-by-half pleading style pervades the amended complaint.

26  [12]  Section 632(a) of the California Invasion of Privacy Act specifically applies to eavesdropping,

    *i.e.*, the obtainment or collection of information (not its use), and plaintiffs' claim Lakeview violated

27  this provision is thus barred in view of plaintiffs' consent to this specific disclosure. Similarly, 18

    U.S.C. § 2511(a) applies to a party's interception of an electronic communication, and those claims

28  are also barred. The remainder of plaintiffs' claims—which purport to be based on both collection

    and disclosure—are likewise barred to the extent they are based on the collection of information.

to advertise to you through the use of cookies, social media platforms and web beacons." ECF 31-1 at 4. Lakeview also explains that it "contracts with other companies to advertise Lakeview's services on websites not affiliated with Lakeview," *id.*, and that these third parties may use this data "to assist [Lakeview] in measuring the effectiveness of the Lakeview ads," *id.* at 5. The OPN thus leaves no question Lakeview may collect the information at issue and share it with third parties.

Plaintiffs' complaints that Lakeview discloses de-identified information to Google, Microsoft, and Tavant fail for another reason: Lakeview disclosed it "may . . . share aggregated or anonymous data about [its] customers and visitors to [Lakeview's] websites with advertising service providers and with companies that help Lakeview understand how use its websites." ECF 31-1 at 5. This disclosure dooms any claim to the extent it is based on the alleged collection or distribution of deidentified information such as that collected by the Microsoft, Google, or Tavant code.[13]

*Plaintiffs' Inchoate Allegations About Disclosure to "Fourth" Parties Should Be Disregarded.* The only use or disclosure of customer information that is even arguably ***not*** expressly covered by Lakeview's extensive, plain-language disclosures is the alleged ***hypothetical*** disclosure of information to what plaintiffs call "fourth parties"—presumably to distinguish them from the "third parties" disclosed as using and receiving data at multiple points in Lakeview's privacy policy. Scrutiny of the complaint shows plaintiffs are simply speculating that Meta, Google and other "third parties" ***might*** sell data to fourth parties based on reporting these companies—which have many different business lines within their organizations—are alleged to have done so in certain instances (none of which relates to Lakeview).[14] Thus, in terms of what plaintiffs allege Lakeview or any third

---

[13]  Were there *any* doubt these plaintiffs agreed to having information like URL and browser data disclosed for advertising purposes, it would be extinguished by yet another provision in Lakeview's privacy policy, ECF 31-2, under which plaintiffs agreed to having even sensitive personal information—like their social security number—shared for "marketing purposes" including for "joint marketing" with "other financial institutions," with no ability to "limit this sharing." ECF 31-2 at 2-3. To be clear, no such information is at issue in this case, and the mere fact that Lakeview *can* do something under its privacy policies does not mean that it *does* do those things. But the broad permissions to which plaintiffs concede they agreed highlights the absurdity of their claims.

[14]  For example, plaintiffs cite to articles asserting Meta shared Facebook profiles with third parties, and an article reporting on a complaint filed against Facebook and Google. *See* ECF 31, ¶ 97 & n. 46; RJN Exs. 7-9. Plaintiffs also assert Meta and Google "sell [data] to third parties," but cite an article suggesting that developers have access to Facebook and Google data through an Application

party has *actually* done with any Lakeview customer's data, it is all plainly disclosed in the OPN.

Because all of the specifically alleged collection and disclosures of plaintiffs' information was disclosed to plaintiffs in Lakeview's OPN, plaintiffs' consent defeats all of their claims. *Lakes* is instructive. There, the plaintiff alleged defendant violated statutory and common law with its use of the Meta Pixel on its website and sharing of information regarding plaintiff with Meta under the Meta Pixel's terms of use. 777 F. Supp. 3d at 1051. The defendant—like Lakeview—disclosed its use of cookies and its sharing of data with its partners for advertising. *Compare, e.g.*, *id.* at 1051-52 (cookies banner notified users defendant "and its partners" used cookies 'to offer advertising adapted to your interests'" *with* RJN Ex. 3 (Lakeview cookie banner alerting to use of cookies for analytics and linking to OPN) & ECF 31-1 at 3, 5 (OPN disclosing Lakeview and its "third-party advertising service providers" may use "cookies," which "allow [Lakeview] to collect technical and navigational information, such as browser type, time spent on its respective site, and pages visited" and advertise to users). The court found plaintiffs' consent defeated their claims because they were put on notice of these policies at multiple junctures. 777 F. Supp. 3d at 1054-55. In doing so, it rejected the plaintiff's argument that more "granular" disclosures—identifying, for example, that information would be shared with Meta specifically—was required for consent. *Id.* at 1056-57. Because Lakeview's OPN fully discloses the use of information alleged by plaintiffs, and plaintiffs cannot allege they did not consent to this policy, plaintiffs' claims all fail as a matter of law.

III.    Plaintiffs' Complaint Fails to State a Claim for a Host of Claim-Specific Reasons

Plaintiffs assert ten claims based on the same alleged website-related collection and sharing of data. ECF 31, ¶ 15. Each one is legally deficient and should be dismissed with prejudice.

A.    Negligence (Count I)

Plaintiffs allege Lakeview was negligent in its handling of their information, but fail to allege any cognizable damages. Because "actual loss (damages)" is an essential element of a negligence

---

Programming Interface (API). *See* ECF 31, ¶ 98 & n. 47; RJN Ex. 9. Similarly, plaintiffs allege Google and Meta "buy information from, and sell information to, [] data brokers," but cite an article which states that "[a]ll of Facebook's agreements with its data vendors are one-way in which the companies send Facebook all the information they hold on each user, but Facebook does not share any information back with them." ECF 1, ¶ 98 & n. 48; RJN Ex. 10, at 10. None of these articles suggest Meta or Google is selling information collected through Lakeview's use of their code.

1  claim, *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009), this claim should be dismissed.[15]

2      "Under California law, appreciable, nonspeculative, present harm is an essential element of

3  a negligence cause of action." *Ruiz*, 622 F. Supp. 2d at 913 (compromised personal information was

4  insufficient to support negligence claim). Plaintiffs offer boilerplate allegations asserting a litany of

5  damages, including "improper disclosure of their Personal and Financial Information," "receipt of

6  targeted advertisements," "lost value of their Personal and Financial Information," and

7  (implausibly) "embarrassment, humiliation, frustration, and emotional distress." EFC 31, ¶ 179. But

8  the Ninth Circuit has held "the mere misappropriation of personal information does not establish

9  compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir.

10  2021) (citation and internal quotations marks omitted). Moreover, "general allegations that a

11  plaintiff's personal information has diminished in value are not enough." *Griffey v. Magellan Health

12  Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021). Plaintiffs "must establish both the existence of a market

13  for [their] personal information and an impairment of [their] ability to participate in that market."

14  *Svenson v. Google Inc.*, No. 13-cv-4080, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016).

15  Plaintiffs allege the value of personal information generally, and assert that "[t]here is a market for

16  this personal information." ECF 31, ¶¶ 44-51. But these allegations are insufficient to show that

17  plaintiffs' ability to participate in the market for personal information has been impaired.

18      The other alleged "harm" plaintiffs assert is that they received ads "related to mortgages

19  with other companies like rocket lawyer and for refinancing." ECF 31, ¶ 123; *see also id.* ¶¶ 128,

20  132. Plaintiffs vaguely allege these ads "reflect[]" the information plaintiffs input on Lakeview's

21  website. *Id.* ¶¶ 123, 128, 132. But they do not allege these ads included or referenced any specific

22  private or personal financial information. Nor do they include any non-conclusory allegations

23  regarding how these ads caused them any injury or emotional distress. Courts addressing similarly

24  conclusory allegations of harm have dismissed negligence claims. For example, in *Marden v. LMND*

---

[15]  Even if the Court finds the alleged injuries are sufficiently concrete to confer Article III standing, those injuries still may not "rise to the level of appreciable harm necessary to assert a negligence claim under California law." *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

*Medical Group*, No. 23-cv-3288, 2024 WL 4448684, at *5 (N.D. Cal. July 3, 2024), the court dismissed plaintiffs' negligence claims as insufficiently pleaded where plaintiffs complained of "targeted health ads" but failed to "state how these ads caused them injury or mental distress[.]" Similarly, in *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897-99 (C.D. Cal. 2024), the court dismissed the negligence claim because claims of "loss of the benefit of the bargain, increased infiltrations into their privacy through spam and targeted advertising they did not ask for, loss of privacy, loss of confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life" were "too vague and conclusory to survive."

     B.    <u>Comprehensive Computer Data Access & Fraud Act (CDAFA) (Count II) and Unfair Competition Law (UCL) (Count III)</u>

In *Shah*, Judge Thompson dismissed identically-pleaded CDAFA and UCL claims for plaintiffs' failure to allege they lost money or property as a result of the alleged disclosure of their information to third parties, as required to establish statutory standing.[16] 768 F. Supp. 3d at 1047-48. Plaintiffs' statutory standing allegations are deficient for the same reasons: plaintiffs do not have a property interest in their "personal information," did not allege any participation in the market for their information or any economic benefit they derived from it, confused alleged gains by the defendant with losses by plaintiffs, and cannot claim diminution in value of information as damages. 768 F. Supp. 3d at 1048 (citing cases); *compare* ECF 31 at ¶¶ 193, 214-217 *with* RJN Ex. 1 at ¶¶ 261, 282-285. Counts II and III should be dismissed with prejudice. *See, e.g.*, *Hernandez-Silva v. Instructure, Inc.*, No. 25-cv-2711, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025) (dismissing CDAFA claim for lack of standing where plaintiff did not allege what valuable data defendant obtained or its use caused its value to plaintiff to diminish).

     C.    <u>California Consumer Privacy Act (CCPA) (Count IV)</u>

Plaintiffs allege Lakeview violated various provisions of the CCPA, Cal. Civ. Code

---

[16] A CDAFA claim requires a plaintiff "suffer[ed] damage or loss by reason of a violation" of the statute. *Shah*, 768 F. Supp. 3d at 1047-48, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021). Similarly, for a UCL claim, a plaintiff must allege they "lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.* 590 F.3d 955, 959 (9th Cir. 2009).

1  § 1798.100, *et seq.*, all of which fail for the reasons below.

2            1.     <u>Plaintiffs' Claims Based on Sections 1798.100-148 Fail</u>

3        Plaintiffs' attempt to sue Lakeview on the basis of purported violations of

4  Sections 1798.100-148 fail at the threshold. The CCPA provides a private right of action ***only*** for

5  violations of section 1798.150. Cal. Civ. Code § 1798.150(c) ("The cause of action established by

6  this section ***shall apply only to violations as defined in subdivision (a) and shall not be based on***

7  ***violations of any other section of this title***." (emphases added)); *accord Delgado v. Meta Platforms,*

8  *Inc.*, 718 F. Supp. 3d 1146, 1155 (N.D. Cal. 2024) (noting CCPA "calls for enforcement by the

9  California Attorney General, allowing a private right of action only in the event of a security breach"

10  under section 1798.150); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427, 2021 WL 405816, at *8 (N.D.

11  Cal. Feb. 2, 2021) (dismissing CCPA claim for lack of alleged security breach).[17]

12            2.     <u>Plaintiffs' allegations are insufficient to trigger the right to private action</u>

13                         <u>under Section 1798.150</u>

14        Under Section 1798.150, plaintiffs must allege: (1) disclosure of personal information that

15  includes an email address in combination with a password or security question or information as

16  defined in Section 1798.81.5(d)(1)(A); and (2) that the disclosed personal information was "subject

17  to an unauthorized access and exfiltration, theft, or disclosure" through a "violation of the duty to

18  implement and maintain reasonable security procedures and practices." Cal. Civ. Code

19  § 1798.150(a). Plaintiffs do not allege either requirement.

20        *First*, Plaintiffs do not allege Lakeview disclosed any email address in combination with a

21  password or security question—*i.e.*, log-in credentials. Nor do plaintiffs allege any disclosure of

22  "nonredacted personal information" as defined in Section 1798.81.5(d)(1)(A), which requires that

23  the disclosed information include "[a]n individual's first name or first initial and . . . last name" in

24

---

25  [17]  Plaintiffs' claims based on Sections 1798.100-148 should also be dismissed because the CCPA
26  expressly provides those sections "***shall not apply*** to personal information collected, processed,
    sold, or disclosed subject to the federal [GLBA]," with the exception of claims brought under
27  section 1798.150. Cal. Civ. Code § 1798.145(e) (emphases added). Here, plaintiffs actually ***define***
    the alleged personal information at issue as information that is "subject" to the GLBA. *See, e.g.*,
28  ECF 31, ¶¶ 1, 10-12 & nn.1-2.

combination with another specified data element, such as a social security number, driver's license number, a unique identification numbers issued on a government document, an account number or credit or debit card number in combination with a security code, or medical, health insurance, genetic, or biometric information, Cal. Civ. Code § 1798.81.5(d)(1)(A)(i)-(vii). Plaintiffs assert that Microsoft Clarity transmits a customer's name and account number (ECF 31, ¶ 55), but the statute requires that an account number be disclosed "in combination with any required security code, access code, or password that would permit access to an individual's financial account." Cal. Civ. Code § 1798.81.5(d)(1)(A)(iii). For this reason, plaintiffs' CCPA claim must be dismissed. *See Gardiner v. Walmart Inc.*, No. 20-cv-04618, 2021 WL 2520103, at *3 (N.D. Cal. Mar. 5, 2021) (dismissing CCPA claims that did not "allege disclosure of Plaintiff's personal information" as defined in section 1798.81.5(d)(1)(A)).

*Second*, even if plaintiffs **had** alleged a disclosure of information covered by the CCPA's private right of action (which they have not), plaintiffs have not alleged that their supposed personal information was subject to unauthorized access and exfiltration, theft, or disclosure due to any failure to implement or maintain reasonable security procedures and practices. "Courts regularly require CCPA claimants to 'allege sufficient facts to establish how or why . . . systems were inadequate or unreasonable or how or why a business knew or should have known its systems were inadequate or unreasonable.'" *Tian v. Bank of Am., N.A.*, No. 24-cv-9877, 2025 WL 1377767, at *3 (C.D. Cal. Apr. 2, 2025) (citations omitted). As discussed above, there was no unauthorized access or exfiltration, and Lakeview procedures and practices are reasonable for the types of information at issue. *See* pp. 4-5, *supra*.

### 3. Plaintiffs' request for statutory damages should be dismissed for failure to send a pre-suit notice letter

Plaintiffs' request for statutory damages should also be dismissed because plaintiffs did not provide Lakeview with statutorily-required 30 days' pre-suit written notice. Cal. Civ. Code § 1798.150(b). This notice requirement serves an important function by giving businesses "an opportunity to cure the defect outside of court." *Griffey*, 2022 WL 1811165, at *6. Plaintiffs concede the required pre-suit notice was not provided. ECF 31, ¶ 225 ("Plaintiffs sent Defendant notice of

1  their CCPA claims shortly after the date of filing the complaint."). This admitted failure to give pre-

2  suit notice warrants (i) dismissal of plaintiffs' CCPA claim in the absence of any allegations of

3  actual damages, *Griffey*, 2022 WL 1811165, at *6, or ***at minimum*** (ii) limitation of plaintiffs'

4  available remedies to their actual pecuniary damages. *Doe v. MKS Instruments, Inc.*, No. 23-cv-868,

5  2023 WL 9421115, at *4 (C.D. Cal. Nov. 3, 2023).

6         D.    Breach of Implied Contract (Count V)

7         In *Shah*, Judge Thompson rejected the *Shah* plaintiffs' near-identical claim for breach of

8  implied contract, finding identical allegations failed to state a claim because: (i) they allege "an

9  implied contract with Defendant that it would keep their personal information confidential" but did

10  not expand on the nature or scope of the implied contract; and (ii) they did not differentiate between

11  the express contract claim and implied contract claim. 768 F. Supp. 3d at 1050-51. Plaintiffs'

12  counsel made no attempt to correct those defects here; indeed, the amended complaint alleges an

13  implied contract with plaintiffs "to protect their nonpublic personal information," without any

14  expansion on the nature or scope of the implied contract, and previously alleged that an ***express***

15  contract covered the same subject matter. *Compare* ECF 1, ¶ 232 *with* ECF 31, ¶ 324; *see also* ECF

16  31 ¶¶ 81, 91 (alleging existence of express contract).

17         E.    Unjust Enrichment (Count VI)

18         "To allege unjust enrichment as an independent cause of action, a plaintiff must show the

19  defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners,*

20  *LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiffs' allegations do not meet this burden.

21         Notwithstanding plaintiffs' allegation they "conferred a monetary benefit upon [Lakeview]

22  in the form of valuable, sensitive, personal, and financial information," ECF 31, ¶ 238, plaintiffs do

23  not allege any specific information collected and distributed through code on Lakeview's website

24  has any value (much less alleging how or why). Plaintiffs contend that general, non-specified

25  "personal information" may be worth $700 per user. *See* ECF 31, ¶ 44; *see also id.* ¶¶ 45-51. But

26  they make no showing that the general "personal information" is the same type of information

27  Lakeview allegedly improperly collected and disclosed. Indeed, the vast majority of the specific

28  information alleged to be shared is anonymized and none is sensitive, personal, or private (*see* pp.

2-4, *supra*), and plaintiffs do not allege Lakeview sold ***any*** customer information. Because plaintiffs cannot show that Lakeview unjustly retained a monetary benefit, this claim should be dismissed. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 946 (N.D. Cal. 2023) (dismissing unjust enrichment claim where plaintiffs "neither directly expended their own resources, nor show[ed ] their property has become less valuable.").

F.     Declaratory Judgment and Injunctive Relief (Count VII)

Plaintiffs request declaratory judgment and injunctive relief on the ground that Lakeview's actions allegedly create an "imminent risk that additional disclosure of their Personal and Financial Information will occur in the future." ECF 31, ¶ 247. But "[d]eclaratory relief is a remedy, not an independent cause of action." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 913 (N.D. Cal. 2024).

Plaintiffs' request for injunctive relief—in addition to being a remedy and not a substantive cause of action—should be dismissed because plaintiffs must show they will suffer irreparable harm from a defendant's actions and that no adequate legal remedy is available in order to obtain injunctive relief. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (party must show lack of adequate remedy at law to seek injunctive relief); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (party seeking permanent injunction must show irreparable harm). Plaintiffs allege neither except in the most conclusory terms and this "claim" should be dismissed.

G.     Breach of Confidence (Count VIII)

In dismissing an identical claim in *Shah*, Judge Thompson explained that, because a breach of confidence claim is "grounded on an implied-in-law or quasi-contractual theory," such claims are barred where (as here) plaintiffs allege the existence of an ***express*** contract covering the same subject matter. 768 F. Supp. 3d at 1051; ECF 31, ¶¶ 81, 91; ECF 1, ¶¶ 228-232 (alleging existence of express contract covering handling of plaintiffs' data). That plaintiffs dropped their claim for breach of an express contract in their Amended Complaint does not cure the defect.

A breach of confidence claim is preempted based on the *existence* of a contract, regardless of whether a claim for breach has been asserted. *See Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time."); *see also Lance Camper Mfg. Corp. v. Republic*

*Indem. Co. of Am.*, 44 Cal. App. 4th 194, 203 (1996) ("[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."). Plaintiffs have alleged the existence of a valid, express contract, governing the subject matter at issue, defeating their breach of confidence claim. *See* ECF 31, ¶ 81 ("The contracts that Lakeview has with its Customers include the 'Privacy Notice' and 'Privacy Policy'") (citations omitted); *id.* ¶ 91 ("Lakeview's Privacy Contracts only reinforced this reasonable understanding.").

A pleaded statement is a judicial admission; to retract it, a party is required to "explain[] the error in a subsequent pleading or by amendment." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995). Not only have plaintiffs offered no explanation for removing their claim for breach of an express contract, they have retained their allegations regarding the existence of contracts between Lakeview and its customers. *See* ECF 31, ¶¶ 81, 91. Plaintiffs thus remain bound by their prior judicial admission, *see Haynes v. Uponor, Inc.*, No. 21-CV-05480-PJH, 2022 WL 541180, at *3 (N.D. Cal. Feb. 23, 2022) (removing implied warranty claims did not remedy judicial admission of privity where no explanation was provided), and their breach of confidence claim still fails.

H.    California Invasion of Privacy Act (CIPA) (Count IX)

Plaintiffs contend Lakeview violated CIPA by (a) aiding and abetting third parties' attempts to read or use a communication's contents in violation of section 631(a); and (b) recording a confidential communication in violation of section 632(a). ECF 31, ¶¶ 263-83. Both theories fail.

1.    Section 631(a)

Plaintiffs contend Lakeview aided and abetted third parties (unspecified except as to Facebook) in reading and using the "the contents or meaning" of plaintiffs' communications in violation of section 631(a).[18] ECF 31, ¶¶ 265, 272. But the alleged information at issue is not the

---

[18] Plaintiffs do not allege Lakeview directly violated Section 631(a) because it cannot. "It is settled California law . . . that recording by a *participant* to the conversation does not run afoul of Section 631(a), which penalizes recording by a *third party*." *Valenzuela v. Kroger Co.*, No. 22-cv-6382, 2023 WL 4418887, at *2 (C.D. Cal. June 23, 2023); *see also Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (holding Section 631 does not apply to party to conversation because "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation.").

1  "content" of a communication as contemplated by the statute, and the alleged information was not

2  read "in transit" as required by section 631(a).

3                          (a)        The information at issue is not the "contents" of a communication

4          In interpreting Section 631(a), federal courts apply the Federal Wiretap Act's definition of

5  "contents." *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021)

6  (collecting cases); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The

7  analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Under the

8  Federal Wiretap Act, a communication's "'contents' . . . includes any information concerning the

9  substance, purport, or meaning of that communication," 18 U.S.C. § 2510(8), which the Ninth

10  Circuit has interpreted as "a person's intended message to another." *In re Zynga Privacy Litig.*, 750

11  F.3d 1098, 1106 (9th Cir. 2014). Critically, "content" does not include "record" data like "basic

12  identification and address information." *Id.* at 1106, 1109.

13          The information allegedly collected here is nothing more than record information. Plaintiffs

14  allege the code here collected: (1) the URL and title of the webpage visited; (2) webpage events,

15  such as mouse movements, scrolling, and click events like clicking links and buttons or scrolling on

16  the page (which plaintiffs allege purportedly discloses information regarding whether a user has a

17  *lakeview.com* account or has tried to call Lakeview through the webpage); and (3) users' IP

18  addresses and device characteristics, including "CPU architecture, available memory, and browser

19  characteristics." ECF 31, ¶¶ 63-77. None of this information is "content" under CIPA.

20          *First*, the URLs and website titles allegedly collected do not contain the type of information

21  that would make them content. As the Ninth Circuit explained, as a general rule, an unadorned URL

22  is not "content" because it "identifies the location of a webpage a user is viewing on the internet,

23  and therefore functions like an 'address.'" *Zynga*, 750 F.3d at 1107. In *Zynga*, the court held the

24  URL "of the Facebook webpage the user was viewing" was not content, nor were URLs such as

25  "http://www.ca9.uscourts.gov/opinions/" or "http://apps.facebook.com/onthefarm." *Id.* at 1102-03.

26          In *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit clarified when a URL ***can***

27  be content, namely: (1) if it is a URL from a search engine with a query string that shows the

28  information the user communicated to the search engine; or (2) if it included "the name of a website,

1    folder and sub-folders on the web-server, ***and*** the name of the precise file requested." 956 F.3d 589,

2    605 (9th Cir. 2020) (emphasis added); *see also Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069,

3    1093 (N.D. Cal. 2022) (URLs content "when they reproduce a person's personal search engine

4    queries"); *Gershzon v. Meta Platforms, Inc.*, No. 23-cv-00083-SI, 2023 WL 5420234, at *12 (N.D.

5    Cal. Aug. 22, 2023) (same); *Doe I v. Google LLC*, No. 23-cv-02431-VC, 2025 WL 1616720, *3

6    (N.D. Cal. June 6, 2025) (URLs "contained . . . the query string").

7         Here, the only specific URLs identified by plaintiffs are *lakeview.com*,

8    *lakeview.com/leverage-your-home-equity-for-the-cash-you-need/*, and *apply.lakeview.com*.

9    ECF 31, ¶¶ 64, 66-77; *id.* at 19:11-28. Like those in *Zynga*, (*www.ca9.uscourts.gov/opinions/* and

10   *apps.facebook.com/onthefarm*) they have, at most, a single subfolder. *Id.* at 1102-03. These point

11   only to the webpage viewed (by a user that cannot be identified), contain no search engine query

12   string, and are not particularly informative, as they do not identify any specific loan applications,

13   loan type, or information related to any application.

14        *Second*, user actions, "such as button clicks, mouse movements, scrolling, resizing, touches

15   (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers,

16   network requests, and more . . . are more akin to the 'record' information that the Ninth Circuit has

17   held not to be contents of a communication." *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d

18   833, 845 (S.D. Cal. 2024) (quotation marks omitted); *Yoon*, 549 F. Supp. 3d at 1082-83 ("mouse

19   clicks" do not constitute "message content in the same way that the words of a text message or an

20   email do" for purposes of CIPA).

21        *Finally*, IP addresses and device configurations are record information, not content. *Yoon*,

22   549 F. Supp. 3d at 1082-83 (rejecting argument that plaintiff's IP address, browser type, and device

23   operating system were "content" because "[n]one of these pieces of data constitutes message content

24   in the same way that the words of a text message or an email do").

25                    (b)    The information was not read "in transit"

26        As alleged, violation of section 631(a) would require that a third-party "read" or "attempt[ed]

27   to read" or attempted "to learn" the contents of an internet communication between the plaintiff and

28   the website operator while that communication was "in transit." Plaintiffs assert that their

communications are "***intercepted*** in transit" (ECF 31, ¶ 276 (emphasis added)), but interception alone is insufficient for liability under the statute. Section 631(a), requires that a party "read[], or attempt[] to read, or to learn the contents" while the communication is "in transit," and plaintiffs do not allege that Meta, Google, or Microsoft read the information during transmission. This is fatal to plaintiffs' claim. *See Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Even if [the] software intercepts the contents of Plaintiffs' communications in real time …, nothing in the record plausibly indicates that [the party] reads or attempts to read the contents of the communication under they are in transit."); *see also Doe v. Eating Recovery Center LLC*, Case No. 23-cv-05561 (N.D. Cal. Oct 17, 2025), ECF 167 at 12 ("[I]t would not be appropriate to interpret the 'in-transit' requirement of Section 631(a) so broadly as to cover" the use of a "third-party company to perform data analytics for web traffic.").

### 2.  Section 632(a)

Plaintiffs' section 632(a) claim that Lakeview "intentionally record[ed] confidential communications without consent of all parties to the communication" also fails. ECF 31, ¶ 266. Section 632(a) applies only to a "confidential communication," which the statute defines as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desired it to be confined to the parties thereto[.]" Cal. Penal Code § 632(c). As discussed above, plaintiffs fail to allege plausibly that the communications at issue contained any private information. *See* pp. 2-4, *supra*. "Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL 1704437 (9th Cir. June 18, 2025) (collecting cases). Thus, a plaintiff must plead "something unique about [ ] particular internet communications" to demonstrate they are confidential. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (distinguishing communications made in context of patient-medical provider relationship from typical online communications because they are protected by federal law and uniquely personal). Plaintiffs here have not done so and their Section 632(a) claim should be dismissed.

I.     The Electronic Communications Privacy Act (ECPA) (Counts X)

Plaintiffs contend Lakeview improperly intercepted their communications under the ECPA, 18 U.S.C. § 2511(1), *et seq*. ECF 31, ¶¶ 284-301. But this claim fails as a matter of law.

Any alleged interception of plaintiffs' electronic communications falls within the "party to communication" exception to the ECPA, 18 U.S.C. § 2511(2)(c), which states that it is not unlawful for an individual to intercept a communication when either "such person is a party to the communication." *Id*. Here, Lakeview is a party to the communication and is therefore not liable.

To avoid dismissal, plaintiffs attempt to allege the "crime-tort" exception to the party exception—baldly stating Lakeview intercepted their communications "for the purpose of committing a tortious act" because Lakeview's "sending" and "acquiring the content" of their communications purportedly violates the GLBA and FTC Act. ECF 31, ¶¶ 296, 301. These conclusory allegations are insufficient to invoke the crime-tort exception. "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotations omitted) (emphasis in original). Plaintiffs thus must adequately allege Lakeview "had an illegal or tortious ***purpose***" that is ***separate and distinct*** from the collection and disclosure of plaintiff's communications. *Id.* at 1203 (emphases added); *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording.").

Plaintiffs do not (and cannot) allege an improper purpose separate from the interception itself. Plaintiffs assert the crime-tort exception applies because the interception is for the purpose of committing the tort of "invasion of privacy." ECF 31, ¶ 296. But the Ninth Circuit has held that even where an interception "may well have been a tortious invasion of privacy under state law," it is not a ***separate*** illegal or tortious purpose that triggers the crime-tort exception. *Sussman*, 186 F.3d at 1203; *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (crime-tort exception not triggered where "the tortious conduct is the alleged wiretapping itself.").

Plaintiffs also assert that because Lakeview's "trackers" allegedly violate the GLBA and the FTC Act, the crime-tort exception is satisfied. But that is also "contrary to *Sussman* which holds

that the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (violation of HIPAA did not satisfy crime-tort exception).

Indeed, plaintiffs actually allege the opposite of a tortious or illegal purpose, claiming that Lakeview intercepted their communications for perfectly legal purposes such as "increas[ing] its profit margins and sav[ing] on marketing costs" and "financial gain." ECF 31, ¶¶ 297-98. Courts have routinely held that where "purpose of the interception was not to 'perpetuate torts on millions of Internet users, but to make money," the crime-tort exception to the party-exception is not satisfied. *Lakes*, 777 F. Supp. 3d at 1058 (ECPA crime-tort exception did not apply); *see also Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 WL 486317, at *10 (S.D. Cal. Feb. 13, 2025) (allegations interceptions were for "purposes of targeting advertising to [] website users" insufficient to state ECPA crime-tort exception).

IV.    Florida Law Applies to Plaintiff Idris' Claims and Forecloses His California Claims

Finally, plaintiff Idris's California claims should be dismissed because he agreed to the application of Florida law to his claims. To create an account on the *lakeview.com* website to apply for a mortgage, a customer is required to check a box stating: "I acknowledge that I have read and agree to the Lakeview Loan Servicing, LLC Terms & Conditions and Privacy Policy," in which "Terms & Conditions" and "Privacy Policy" are blue, underlined, and unmistakably hyperlinked. *See* RJN Ex. 11. The hyperlinked Terms and Conditions include a choice of law provision, stating: "You agree that disputes arising out of or relating to the contents or use of this website are to be governed by the laws of the State of Florida." RJN Ex. 5, at 4.

Plaintiff Idris alleges that he "regularly uses Lakeview's Website to . . . apply online for a mortgage and account." ECF 31, ¶ 120. To create the account, and apply online through Lakeview's website, Mr. Idris must have checked the box acknowledging that he had read and agreed to the Terms and Conditions, including the choice of law provision. Indeed, under Ninth Circuit law, Mr. Idris "unambiguously manifest[ed] his . . . assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (agreement enforceable when "the consumer takes some action, such as clicking a button or checking a box").

1       Under applicable California choice of law rules, Florida law—not California law—thus

2   supplies the substantive law applicable to plaintiff Idris's claims. *Fields v. Legacy Health Sys.*, 413

3   F.3d 943, 950 (9th Cir. 2005). Where the parties' contract contains a choice-of-law provision, the

4   Court first considers whether the chosen state has a substantial relationship to the parties or their

5   transaction, or whether there is any other reasonable basis for the parties' choice of law. *Ruiz v.*

6   *Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012). If there is, the Court then considers

7   whether applying that state's law is contrary to a *fundamental* policy of California, and if so, whether

8   California has a materially greater interest than that state in resolution of the issue. *Id.*

9       Here, there is a substantial relationship and a reasonable basis to apply Florida law because,

10  as the Terms of Use explain, the servers hosting the *lakeview.com* website are located in the State

11  of Florida. *See* RJN Ex. 5, at 4. Nor would the application of Florida law be contrary to any

12  fundamental policy of California because Florida has similar laws to protect those rights afforded

13  under the California laws at issue here. Even where laws differ, "[t]he mere fact that the chosen law

14  provides greater or lesser protection than California law, or that in a particular application the chosen

15  law would not provide protection while California law would, are not reasons for applying

16  California law."[19] *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).

17  The Court should enforce the parties' agreed choice of law, and dismiss plaintiff Idris's claims under

18  California law (Counts II, III, IV, and IX) for this additional reason. *Century 21 Real Est. LLC v.*

19  *All Pro. Realty, Inc.*, 889 F. Supp. 2d 1198, 1235 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir.

20  2015) (dismissing California UCL claim based on enforceable New Jersey choice of law provision).

21  Conclusion

22      The Court should dismiss the amended complaint without leave to amend.

23

24

25

26  _____

27  [19]  Under California law, the party opposing application of the choice of law provision has the

28  burden of establishing that "both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 101 (2019).

Dated: October 27, 2025

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP


By: *Viola Trebicka*
Viola Trebicka (Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Ryan Sullivan (*pro hac vice*)
111 Huntington Avenue, Suite 520
Boston, MA 02199

*Attorneys for Defendant Lakeview Loan
Servicing, LLC*

## <u>MEET AND CONFER CERTIFICATION</u>

Pursuant to the Court's website instruction regarding meet-and-confer requirements for motions filed during the federal government shutdown, Lakeview's counsel certifies as follows:

The parties met and conferred. Although the parties agree that Lakeview's motion to dismiss does not have to be "urgently" resolved if the urgency required is that typically associated with *ex parte* relief, Lakeview identifies for the Court that its motion makes an Article III standing challenge, which means that an early grant of the motion would lower the Court's burden. For the same reason, litigation should not proceed indefinitely while plaintiffs' lack of standing, and thus this Court's subject matter jurisdiction, remains in question. Lakeview also reserves the right to object that discovery is not proportional to the needs of the case while this threshold issue is pending.

Dated: October 27, 2025

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP


By: *Viola Trebicka*
Viola Trebicka (Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Ryan Sullivan (*pro hac vice*)
111 Huntington Avenue, Suite 520
Boston, MA 02199

*Attorneys for Defendant Lakeview Loan
Servicing, LLC*