J. Gerard Stranch, IV *(Pro Hac Vice)*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com

*Counsel for Plaintiffs and the Proposed Class*
**[Additional Counsel listed in Signature Block]**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ELIJAH IDRIS, GOWAN MCLIN, and JUSTIN BICKHAM individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**LAKEVIEW LOAN SERVICING, LLC**<br><br>**Defendant.** | **Civil Action No. 3:25-cv-05087-TLT**<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. Jacqueline Scott Corley<br><br>Hearing Date:    February 26, 2026<br>Hearing Time:    10:00 a.m. |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND ............................................................ 2

ARGUMENT ..................................................................................................................... 4

STANDARD OF REVIEW ............................................................................................... 5

I.    *Popa* **Actually Supports Plaintiffs' Standing Here.** ........................................ 6

II.   **The Declaration Lakeview Attaches to Its Brief Is Useless.** ...................... 10

III.  **Plaintiffs Did Not Consent to This Collection.** ........................................... 11

IV.   **Lakeview's Arguments Under Rule 12(b)(6) Fail.** ....................................... 14

      A.   **Negligence** ............................................................................................ 14

      B.   **The CDAFA and UCL Claims are Properly Pled.** ............................... 15

      C.   **The CCPA Claim is Well Pled.** ........................................................... 16

      D.   **The Breach of Contract Claim is Sufficiently Pled.** ........................... 17

      E.   **The Unjust Enrichment Claim Survives.** ............................................. 17

      F.   **Declaratory Judgment Claim** ............................................................... 18

      G.   **Breach of Confidence** ........................................................................... 18

      H.   **The CIPA Claim Survives.** ................................................................... 19

      I.    **The ECPA Claim Survives** ................................................................... 20

      J.    **Florida Law Does Not Apply.** .............................................................. 21

CONCLUSION ................................................................................................................ 21

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ...............................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................5, 8

*B.K. v. Desert Care Network*,
    No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .....................14

*Balanzar v. Fid. Brokerage Servs., LLC*,
    654 F. Supp. 3d 1075 (S.D. Cal. 2023)...................................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................5

*Blumenfeld v. Regions Bank*,
    374 F. Supp. 3d 1165 (N.D. Ala. 2019)....................................................................................8

*Calhoun v. Google, LLC*,
    113 F.4th 1141 (9th Cir. 2024) ...............................................................................................12

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................................................................................16

*Cody v. Ring LLC*,
    718 F. Supp. 3d 993 (N.D. Cal. 2024).....................................................................................13

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................................................................................13

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
    No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024 (D. Nev. Aug. 15, 2025).....................16

*In re Eureka Casino Breach Litig.*,
    No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024).....................17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...............................................................................14, 18

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ......................................16

*Gabrielli v. Haleon US Inc.*,
No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ..............................12

*Gershzon v. Meta Platforms, Inc.*,
No. 23-CV-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ...................................19

*Guardant Health, Inc. v. Natera, Inc.*,
580 F. Supp. 3d 691 (N.D. Cal. 2022) ................................................................................6

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ...............................................................................18

*Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*,
61 Cal.4th 988 (2015) .........................................................................................................18

*Heagerty v. Equifax Info. Servs. LLC*,
447 F. Supp. 3d 1328 (N.D. Ga. 2020) ................................................................................8

*Jensen v. Brown*,
131 F.4th 677 (9th Cir. 2025) .............................................................................................13

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .............................................................................13

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) ...............................................................................21

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018) ...........................................................................................13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ..............................................................................................6

*Marden v. LMND Med. Grp., Inc.*,
No. 23-CV-03288-RFL, 2024 WL 4448684 (N.D. Cal. July 3, 2024)................................15

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ................................................................................................8

*Pemberton v. Restaurant Brands International, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025)
(Corley, J.) ..........................................................................................................................10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......................................................................................6, 7, 8, 22

*In re Progressive Leasing Breach Litig.*,
    No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744 (D. Utah Jan. 16, 2025)..........................17

*R.C. v. Walgreen Co.*,
    733 F. Supp. 3d 876 (C.D. Cal. 2024) ...........................................................................15

*Riganian v. LiveRamp Holdings, Inc*,
    2025 WL 2021802 (N.D. Cal. Jul. 18, 2025*)*..................................................................20, 21

*Riganian v. LiveRamp Holdings, Inc.*,
    791 F. Supp. 3d 1075 (N.D. Cal. July 18, 2025) ..............................................................20

*Rodriguez v. Google LLC*,
    772 F. Supp. 3d 1093 (N.D. Cal. 2025) ..........................................................................15

*Romero v. Securus Techs., Inc.*,
    216 F. Supp. 3d 1078 (S.D. Cal. 2016)............................................................................11

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
    343 F.3d 1036 (9th Cir. 2003) ...........................................................................................6

*Scott v. Kuhlmann*,
    746 F.2d 1377 (9th Cir. 1984) .........................................................................................14

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..................................................................... *passim*

*Smith v. Rack Room Shoes, Inc.*,
    No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)...................................15

*Stein v. Edward-Elmhurst Health*,
    No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ............................................21

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014)...............................................................................15

*Thomas v. Papa Johns Int'l, Inc.*,
    No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) ...........................20

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ............................................................................11

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .........................................................................................19

**Constitutions**

Fourth Amendment ................................................................................................................19

**Statutes**

Cal. Civ. Code § 1798.145(e) ...............................................................................................17

Cal. Fin. Code § 4052.5 .........................................................................................................17

ECPA ................................................................................................................................20, 21

Gramm Leach Bliley Act .......................................................................................................17

Wiretap Act ...........................................................................................................................21

**Court Rules**

Fed. R. Civ. P. 8(d)(2) ...........................................................................................................14

Rule 8 .........................................................................................................................1, 14, 18

Rule 8(a)(2) ..............................................................................................................................5

Rule 12 .............................................................................................................2, 12, 13, 22

Rule 12(b)(1) ............................................................................................................................6

Rule 12(b)(6) ......................................................................................................................5, 14

Rule 15 ...................................................................................................................................18

Rules 12 and 8 ..........................................................................................................................5

**Other Authorities**

Restatement of Torts ..............................................................................................................8

Restatement (Second) of Torts § 652B ..................................................................................9

Plaintiffs Elijah Idris, Gowan McLin, and Justin Bickham ("Plaintiffs"), by their counsel, respectfully submit their response to Defendant Lakeview Loan Servicing, LLC's ("Lakeview") Motion to Dismiss. D.E. 45, 46.

### INTRODUCTION

This case is about a mortgage company becoming a dealer in data, harvesting a consumer's identity, their account number, payment history, and browsing activity and selling it to tech companies in violation of law and without consumer authorization. The conduct in online tracking cases like this one is troubling, and courts in different jurisdictions employ different (and sometimes conflicting) approaches to tailor a sufficient legal remedy to fit the conduct alleged. Consequently, many of the complaints in these cases allege alternative theories. This approach is permitted by the plain text of Rule 8, but it is easy to get lost in the weeds of the reams of caselaw in cases about online tracking, pixel technology, and the ins and outs of the counts asserted. Even within this District, there are countless unreported decisions on each of these claims. Accordingly, a return to basic principles is warranted. Standing hinges on whether the information taken is of a sensitive nature. Here, it is. The Court must assume all facts in the Amended Complaint are true and draw all inferences in favor of the Plaintiffs as pleaders. With those principles in mind, this Motion is easy to resolve – Plaintiffs plead that their mortgage company improperly shared personal and sensitive financial information about them under several different legal theories. This Motion is no more complicated than that.

In a sprawling motion to dismiss littered with *ad hominem* attacks and kitchen sink defense arguments, Lakeview boldly asserts that personalized advertising is actually good for consumers. Lakeview characterizes the information it shared with tech companies as "mundane" and

"limited," and Plaintiffs' allegations as "absurd" and "inchoate." D.E. 45 at 13, 28.[1] The degree of spin offered by Lakeview should telegraph to the Court that the allegations in this case concern troubling conduct. Lakeview has simply taken allegations that pass muster under Rule 12 and labelled them "bare" or "unasserted" in a thirty-page motion to see what sticks. Plaintiffs have standing here, and the allegations are sufficient under Rule 12. Further, this Court should decline Lakeview's invitation to test the veracity of the testimony Lakeview attached to its brief.

The conduct alleged in this case involves the disclosure of the most sensitive kinds of data: a person's identity as well as financial information and condition. This is not a case where a plaintiff is trying to secure a windfall based on how he jiggled his mouse while alone in his basement. This is a case about a mortgage company sharing with tech companies the choices that a consumer-customer makes while interacting with Lakeview's website, like their account number, payment history, and their browsing activity. This is highly sensitive data that Lakeview was bound by law to safeguard. Instead it shared and sold it.

## FACTUAL & PROCEDURAL BACKGROUND

Lakeview is a mortgage lender that has configured secret trackers on its website to harvest and sell consumer data to tech companies. D.E. 31 at ¶¶ 2–4, 224. None of the Plaintiffs consented to the type of data collection alleged here. D.E. 31 at ¶¶ 1, 14, 78, 92, 118, 137, 142, 202, 211, 237, 269, 279. The trackers that Lakeview uses or has used include the Meta Pixel, Google trackers, and Microsoft Clarity. D.E. 31 at ¶¶ 43, 53, 54. These trackers do not only collect the URLs that users visit, the kind of loan they are seeking, and whether the user is a customer—but even more troublingly, they collect and transmit the consumer's first name, telephone number, address, their

---

[1] Plaintiffs employ the blue pagination in citing to the Motion to Dismiss. D.E. 45.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS
CASE NO. 3:25-CV-05087-TLT
2

account/loan number, their payment history (including payment amounts), payment dates, URLs from inside the consumer payment portal, and whether a loan was paid off or not. D.E. 31 at ¶¶ 43, 53, 55, 60. Some of the trackers use Artificial Intelligence to analyze the data collected from customers. D.E. 31 at ¶ 58. This is a great deal of private financial information surreptitiously shared with companies that have nothing to do with Lakeview's business.

What this collection means in practice is that through Lakeview, a tech company could sell to a Lakeview customer's creditors valuable information, like: (1) whether that customer paid off their loan (and thus had additional cash available), (2) what kind of loan they are looking for, (3) when users create new accounts to apply for a loan, (4) whether the customer was capable of making larger payments on his or her mortgage than the minimum payment, and (5) whether the customer was behind on payments. D.E. 31 at ¶¶ 56, 60, 111. If a consumer visits a page titled "Leverage Your Home Equity for the Cash You Need," Lakeview transmits that information to tech companies. D.E. 31 at ¶ 67. The fact that the tech companies have what may seem innocuous data is in fact a nefarious behavioral monitoring and predictive advertisement business. And Lakeview facilitated it by taking customer data without consent. A person's payment history can disclose all kinds of private facts about them. So too can a person's browsing decisions on the Lakeview website. The data Lakeview shared is confidential financial information that Lakeview should not have shared. The remedy for such conduct is an open question, hence the number of different legal theories asserted here.

Like most modern companies doing business online, Lakeview has ostensible privacy policies. Though Lakeview has privacy policies, those policies do not accurately represent that consumers may not limit certain collection activities. For example, even if a consumer chooses not to accept cookies on its website, one of the trackers used by Lakeview still uses cookies. D.E. 31

at ¶ 83. Lakeview promises to only disclose personal and financial information in connection with servicing a consumer account, but instead, it indiscriminately shares personal and financial information with tech companies. D.E. 31 at ¶¶ 88–92. The privacy policies are relevant to the representations Lakeview made about its collection practices. Plaintiffs in this case started seeing targeted ads for mortgages with other companies and for refinancing after entering personal and financial information on Lakeview's website. D.E. 31 at ¶¶ 123, 128, 132.

Plaintiffs filed this case on June 16, 2025. D.E. 1. Following consented extensions, Lakeview moved to dismiss on September 15, 2025. D.E. 23, 24. On October 6, 2025, Plaintiffs filed an Amended Complaint, which is the operative complaint in this case. D.E. 31. On October 27, 2025, Lakeview filed the instant Motion to Dismiss. D.E. 45, 46. Of course, on a motion to dismiss, the Court must presume that all facts alleged in the complaint are true. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) (denying motion to dismiss in part in financial pixel case).

## **ARGUMENT**

Lakeview opens its brief with a startling assertion: that personalized ads based on improperly harvested personal information are actually good for consumers, who should just docilely accept deals on their favorite products: "The routine practice of sharing this limited information…benefits consumers by alerting them, for example, that the camping gear they admired last week is now on sale (or mortgage interest rates have dropped)." D.E. 45 at 13. This is an inflammatory and dystopian perspective on what is alleged here: that a mortgage company trusted to safeguard its customers' confidential financial information treated that entrusted information like just another commodity to broker and sell to predatory tech companies. The essence of Lakeview's assertion is that consumers should just accept that the companies that hold

their data are going to sell it and that that theft is in fact socially desirable and will enable them to effectively be better consumers (namely, consumers who buy more products). Sharing a mortgagor's account number and payment history is neither routine nor beneficial – it is illegal and unauthorized. That is a far cry from "[t]he routine practice of sharing this limited information [that] allows companies to deliver advertising to consumers who are more likely to be interested in their products[.]" D.E. 45 at 13.

Lakeview also calls its practices "ubiquitous." *Id.* Lakeview's bid to dismiss this case amounts to, "*Well, Judge, everyone was doing this, so we shouldn't be liable for something everyone was doing, and it's good for consumers anyway, so who care*s?" A commercial practice like data collection can be ubiquitous but still unlawful, as it is here. And it's highly unlikely that it is "ubiquitous" to secretly track and share account/loan number, payment history, payment amounts, payment dates, and URLs from inside a password-protected consumer payment portal. And such an assertion is outside the pleadings and improper on a motion to dismiss anyway. Lakeview spends a good deal of mischaracterizing what the Amended Complaint in this case actually says, minimizing the troubling allegations it does not like and calling them "bare" or unfounded, and injecting accusations that are outside the pleadings. Lakeview's perspective on this case is not the standard that governs. Rules 12 and 8 do. The Motion should be denied.

**<u>STANDARD OF REVIEW</u>**

Rule 8(a)(2) requires only a short and plain statement of the claim giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "does not require 'detailed factual allegations,'" but merely expects "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6)

motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). All reasonable inferences are to be drawn in the pleader's favor. *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 702 (N.D. Cal. 2022). On a motion to dismiss under Rule 12(b)(1), the factual allegations in the complaint are presumed true and the motion is granted only if plaintiff fails to allege an element necessary for subject matter jurisdiction. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

## I.    *Popa* **Actually Supports Plaintiffs' Standing Here.**

Lakeview first invokes Rule 12(b)(1) to assert that Plaintiffs lack standing. D.E. 45 at 18. Lakeview sets much store by the *Popa* case, but there, the plaintiff was simply browsing for pet supplies on www.petsuppliesplus.com. *Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025). Browsing for pet supplies is nothing like logging into your payment portal to make a loan payment.

*Popa* supports that Plaintiffs have standing under Article III here:

> At most, Popa alleges that Clarity gathered her pet-store preferences and her street name. To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest.

*Popa*, 153 F.4th at 791 (emphasis in original). Account numbers, payment history, and browsing activity are all sensitive financial information and nothing like a pet store preference. D.E. 31 at ¶¶ 55, 60. Unsurprisingly, Lakeview ignores that *Popa* explicitly suggested that "financial information" is sufficiently sensitive for standing. The allegations in this case do not turn on some random person visiting the website of an online retailer selling basic commercial

inventory like pet supplies. Plaintiffs here explicitly allege that Lakeview transmitted account numbers, payment history information, payment dates, and the kind of loan they wanted to tech companies. D.E. 31 at ¶¶ 55, 60.

Transmitting a consumer-customer's loan account number to a tech company is categorically different from "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Popa*, 153 F.4th at 791. In that example, the shopkeeper holds no confidential information about the shoppers flitting up and down his aisles; he only can record what he sees about what kinds of products are popular. By rearranging cereal brands or putting spices at eye-level, the clerk is merely responding to how consumers interact with his wares in front of him. What is alleged here is far more nefarious: disclosing that someone applied for refinancing, wants to leverage their home equity for cash, or that they want a certain kind of loan. D.E. 31 at ¶¶ 53, 66, 67. A grocery store is a public place. The chair in the office of your local bank's branch manager (or indeed, the inside of the bank's internal physical file labelled "Consumer Last Name – Mortgage File") is *not*. So this case falls precisely into *Popa*'s description of sensitive financial information, and the privacy interest asserted here confers standing.

Lakeview knows that the facts alleged in the Amended Complaint make it sound bad. So Lakeview resorts to calling those allegations "bare," "unasserted," and lacking factual support. D.E. 45 at 20. This approach should signal to the Court that Lakeview's arguments regarding standing in this case is mistaken. Plaintiffs in this case have been customers of Lakeview since 2022 (Idris), 2023 (McLin), and 2022 (Bickham), respectively. D.E. 31 at ¶¶ 121, 125, 130. And Plaintiffs explicitly allege that in 2023, Lakeview transmitted to Microsoft through the Clarity tool consumer's first names, telephone numbers, addresses, their account

numbers, payment history, and payment dates. D.E. 31 at ¶ 55. So it is an eminently reasonable inference that Lakeview shared the names and account numbers of these three Plaintiffs in 2023 through Clarity. And at this stage of the case, the Court must make all reasonable inferences in the pleader's favor. Lakeview baldly cites *Iqbal* in arguing that this specific allegation lacks sufficient factual support. D.E. 45 at 20. That is because Lakeview has no more specific authority on point.

Where financial information is concerned, courts have generally found a sufficient basis for standing rooted in the common law torts of public disclosure of private facts or intrusion upon seclusion. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 492 (9th Cir. 2019) ("This harm is highly offensive and is not trivial because a credit report can contain highly personal information."); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1337 (N.D. Ga. 2020) ("intrusion on financial information" was a sufficient basis for standing); *Blumenfeld v. Regions Bank*, 374 F. Supp. 3d 1165, 1170 (N.D. Ala. 2019) ("Under the correct standard, the alleged harm in this case—disclosure of Ms. Blumenfeld's private financial information to a third party—bears a close relationship to the common law's protection against disclosure of private information."). The context of disclosing a credit report is not so different than disclosing the kind of loan someone wants or their payment history. And disclosing a credit report, the type of loan that someone wants, and payment history are wildly different than a pet store preference.

The injury here is precisely the type of injury that cases like *Popa* conclude as sufficient for Article III standing. Indeed, an illustration from the Restatement of Torts for the section on intrusion upon seclusion is instructive: "A is seeking evidence for use in a civil action he is bringing against B. He goes to the bank in which B has his personal account, exhibits a forged

court order, and demands to be allowed to examine the bank's records of the account. The bank submits to the order and permits him to do so. A has invaded B's privacy." Restatement (Second) of Torts § 652B at cmt. b (1977). As this illustration makes clear, the data Lakeview allegedly disclosed arises to the level of Article III injury.[2] Lakeview's counter-analogy does not bear: it asserts that before the Internet, banks were public places and that people did not wear disguises to come into a branch office and apply for a mortgage. D.E. 45 at 21. Lakeview leaves out in its analogy the part where the bank manager tells the entire town what the applicant's account number is, how he actually hasn't paid his mortgage in six months, that now he wants a 5/1 mortgage, and actually went ahead with the application. D.E. 31 at ¶¶ 55, 66. That is the kind of information allegedly disclosed here.

Mortgage companies have a duty to safeguard the data of their customers, especially when the data they collect is shared outside of the context of the mortgagor-mortgagee relationship. A better analogy than Lakeview's might be a loan officer disclosing to a drinking buddy over beers that Mrs. Jones had come to the bank in her Sunday best and tearily confessed that she needed to tap into her equity to pay her bills or needed to refinance to make ends meet (and then sliding her account number across the table on a napkin). Sharing such information violates the bank employee's duty to keep Mrs. Jones' confidential information safe. And tech companies are much more nefarious than the loan officer's drinking buddy.

The notion that a consumer with a mortgage lacks standing to sue the mortgage company when the mortgage company has been disclosing his account number and payment history is

---

[2] Plaintiffs also explicitly allege that the information shared was personally identifiable. D.E. 31 at ¶ 1. For example, nobody else has the same account number as one consumer. D.E. 31 at ¶ 55. That information is not anonymized at all. Thus, the cases Lakeview offers about de-identified information, D.E. 45 at 22, are not apposite.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS
CASE NO. 3:25-CV-05087-TLT
9

wrong. D.E. 31 at ¶ 55. Certainly it is true, as Lakeview says, that a mortgage company's interests in real property are matters of public record. But a customer's financial condition (like their payment history), the kind of loan they want, or the fact that they want to leverage their equity for cash are confidential. Consider the kinds of data that would be valuable to a tech company looking to sell ads that Lakeview allegedly shared in this case. Considering refinancing because your interest rate is too high? Want to cash out your equity because you are getting divorced? Want to get a 5/1 or a 7/1 because you think interest rates will drop? Want to pay off your mortgage in full because you just won the lottery? That is the substance of what Lakeview sent to tech companies through these trackers, that data is confidential, and Plaintiffs have suffered an injury constituting a concrete harm sufficiently related to the common law torts like intrusion upon seclusion to proceed in federal court. Mere days ago, this Court held that a plaintiff suing Burger King had Article III standing to sue based on an invasion of privacy into his browsing history. *Pemberton v. Restaurant Brands International, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) (Corley, J.) (finding plaintiff had protectable privacy interest in browsing history and website interactions). The same allegations are present here – Lakeview tracked consumers' browsing activities on its website. D.E. 31 at ¶¶ 4, 60, 124(b), 133(b), 301.

## II. The Declaration Lakeview Attaches to Its Brief Is Useless.

The Ali Declaration is wholly unhelpful to resolving this Motion. D.E. 45-1. For example, Mr. Ali avers that he reviewed what the "current functionality" of the Meta Pixel on Lakeview's website is. D.E. 45-1 at ¶ 13. He also states that "to [his] knowledge," Meta Pixel has never been configured to collect certain information. D.E. 45-1 at ¶ 14. But tellingly, Mr. Ali's discussion of the Microsoft Clarity tool's functionality is only phrased in the present tense

– it offers no information about prior configurations that may have been used. D.E. 45-1 at ¶¶ 19–22. Mr. Ali's tenure at the company only began in August of 2021, D.E. 45-1 at ¶ 3, and Plaintiffs allege that certain tracking technologies were used on Lakeview's website before then, *e.g.*, D.E. 31 at ¶ 53. All Mr. Ali's declaration "clearly establishes," D.E. 45 at 23, is that Lakeview really wants to win this Motion.

The way these trackers work is highly technical and is a more proper subject for expert discovery rather than for resolution here. Mr. Ali's declaration is self-serving, lacks critical detail, and has not been tested by cross-examination. *Cf. In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1022 (C.D. Cal. 2011) ("To the extent that WellPoint Defendants' declarations contest the factual bases for standing other than the merits, the Court notes that Plaintiffs have not had an adequate opportunity to depose Defendants' declarants and the claims in the Complaint are not clearly frivolous or made solely for the purpose of obtaining federal jurisdiction.") (internal citation and quotation marks omitted). Lakeview asks this Court to resolve significant factual disputes before the parties have engaged in any discovery based on little more than a single self-serving, untested affidavit. That is improper. The Ninth Circuit has made it clear where the jurisdictional and substantive merits issues of a case are intertwined, the trial court is better off letting the case proceed into discovery. *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1087 (S.D. Cal. 2016) ("The salient question in evaluating Plaintiffs' standing is whether Defendant recorded Plaintiffs' calls. Likewise, the salient question in determining which party prevails on the merits will also be whether Defendant recorded Plaintiffs' calls."). Mr. Ali's self-serving declaration raises more questions than it answers and is no substitute here for discovery.

**III. Plaintiffs Did Not Consent to This Collection.**

The Amended Complaint is clear that Plaintiffs did not consent to the collection practices described. D.E. 31 at ¶¶ 1, 14, 78, 92, 118, 137, 142, 202, 211, 237, 269, 279. The allegation here is that the choices Lakeview offers its customers through its privacy policies are illusory or noneffective. D.E. 31 at ¶¶ 83, 90. Customers reasonably understand that Lakeview will securely maintain their personal and financial information (like their account numbers), Lakeview's representations reinforced that understanding, but Lakeview actually just indiscriminately shared information. D.E. 31 at ¶¶ 91, 92. Plaintiffs allege breach of implied contract as an alternative theory in Count Five. D.E. 31 at ¶¶ 229–235. This Court must accept these well-pled allegations regarding consent as true. That alone resolves Lakeview's consent-based arguments.

The allegation here is that Lakeview misrepresented its cookie and collection policies. Thus, the Lakeview banner regarding accepting or rejecting cookies is appropros of nothing. D.E. 46-3. *See Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025) ("I agree with Gabrielli that this is an argument better suited to summary judgment; for now, his allegations support that Haleon misrepresented its practices with respect to cookies. Haleon allegedly represented to him (and the class) that they could 'Reject All' cookies, but that was false…Discovery will reveal the truth of these allegations, but they are sufficient to sustain Gabrielli's claims at the pleading stage."). Lakeview then spends pages regurgitating its privacy policies. Because the allegation is that Lakeview's conduct does not match what the policies say, it is of no moment that the policies' text creates a parchment guarantee of X or Y.

Consent is generally not a resolvable issue at the Rule 12 stage. Fundamentally, it is an affirmative defense upon which the *defendant* bears the burden of proof. *Calhoun v. Google,*

*LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). This issue implicates not only whether the Plaintiffs themselves assented to certain privacy policies, but whether those notices contain sufficient notice of what Lakeview did with this data. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (finding lack of consent was sufficiently pled and denying motion to dismiss). So it is not appropriate to resolve here. *Shah*, 768 F. Supp. at 1044 ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question, the Court need not reach it at the motion to dismiss stage."); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021) ("[T]he question of whether Plaintiffs consented to Plaid's collection of their personal information is a key factual dispute to be decided on the merits rather than a Rule 12 motion."); *see also Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023). The scope of Plaintiffs' consent is something that the parties will address in discovery. In *Lakes*, cited by Lakeview, the user had to consent over and over every time they made a purchase. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025). That is not the situation here.

Courts have rightly rejected attempts to assert consent defenses this early. And consent is an affirmative defense anyway that must be pled and proven. This is a wholly insufficient record upon which to conclude that Lakeview has met its burden to prove that an affirmative defense should end this case right now. *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025) ("This rule reflects that affirmative defenses require the defendant to prove facts beyond those necessary to support the plaintiff's *prima facie* case, making it difficult to assess the defense's merit on a 12(b)(6) motion where review is limited to the allegations in the complaint."); *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) ("Ordinarily, affirmative defenses such as preemption may not be raised on a motion to dismiss except when the defense raises no

disputed issues of fact."); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact.") (internal citation omitted). Consent is a disputed factual issue here. Lakeview says Plaintiffs consented, and Plaintiffs say they did not. Thus, consent is not a sufficient basis to dismiss this case now.

## IV. Lakeview's Arguments Under Rule 12(b)(6) Fail.

Lakeview raises a number of arguments to attack each of Plaintiffs' claims under Rule 12(b)(6). But in so doing, Lakeview criticizes Plaintiffs for asserting different claims. *E.g.*, D.E. 45 at 14, 27, 29 ("kitchen sink pleading," "too-cute-by-half pleading style," "ten claims based on the same alleged website-related collection"). Histrionic briefing notwithstanding, Plaintiffs may plead alternative, even conflicting claims. Fed. R. Civ. P. 8(d)(2). That is how Rule 8 works.

### A. Negligence

Lakeview alleges that Plaintiffs fail to allege damages. D.E. 45 at 29. Not so. Plaintiffs plead embarrassment, humiliation, emotional distress, and decreased value of their information. D.E. 31 at ¶ 145; *see also id.* at ¶¶ 123, 128, 132. That is sufficient. *See Shah*, 768 F. Supp. 3d at 1046 ("Because Plaintiffs plead non-economic injuries, the pleadings are sufficient for purposes of the motion to dismiss.") (negligence claim). These are not speculative injuries. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (declining to dismiss negligence theory because plaintiffs' damages were not speculative, and noting at 786: "The alleged injury is 'concrete' largely for the reasons already discussed – if you use a company's social media platform to share sensitive information with only your friends, then you suffer a concrete injury when the company disseminates that information widely."); *see also B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDX), 2024 WL

1343305, at *10 (C.D. Cal. Feb. 1, 2024) (declining to dismiss negligence claim because privacy injuries were sufficient). The cases cited by Lakeview are not helpful – in *Marden v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4448684, at *5 (N.D. Cal. July 3, 2024), the court expended one sentence on the negligence claim, and the damages allegations in this case are more specific than in *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024). And a detailed explanation of damages is not required at the pleadings stage. *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1171 (D. Minn. 2014) ("Rather, those allegations are a 'short and plain statement,' Fed. R. Civ. P. 8(a)(2), that plausibly alleges that Plaintiffs suffered damage as a result of the delay.") (concluding "more detailed explanation" not required). The negligence claim survives.

**B.  The CDAFA and UCL Claims are Properly Pled.**

Lakeview alleges that Counts Two and Three cannot survive because Plaintiffs do not have any property interest in their personal information. D.E. 45 at 31. Caselaw from this district has held otherwise. For example, where Plaintiffs have alleged a disgorgement theory, D.E. 31 at ¶¶ 145(g, h, i), 218, 244, Prayer for Relief at ¶ G, courts have said that such damages are sufficiently pled under the CDAFA. *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) ("In light of that intent, Rack Room's alleged unjust profit from the use of Plaintiffs' private personal information, which holds at least some financial value to Rack Room, plausibly constitutes a 'damage or loss' within the meaning of CDAFA."); *see also Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) ("Accordingly, a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data.") (denying summary judgment). And importantly, "Section 502 sets no threshold level of damage or loss that must be reached to

impart standing to bring suit. Under the plain language of the statute, any amount of damage or loss may be sufficient." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010). The CDAFA claim survives.

The injuries Plaintiffs allege are also cognizable bases for UCL liability. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("Indeed, the Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024, at *12 (D. Nev. Aug. 15, 2025) (similar). The UCL claim survives.

## C. The CCPA Claim is Well Pled.

Lakeview offers three reasons it should not be liable under the CCPA claim asserted in Count Four. First, Lakeview mischaracterizes Plaintiffs' claim, which includes a claim under Section 1798.150(c). D.E. 31 at ¶ 228. Contrary to the caselaw cited by Lakeview, no security breach is required to assert a claim under this section. *Shah*, 768 F. Supp. 3d at 1048–49 ("Courts, however, have also permitted the CCPA claims to survive a motion to dismiss in cases where the plaintiff does not allege a data breach, but instead where the 'defendants disclosed plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices.'") (quoting *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024)).

Next, Lakeview contends that the CCPA carves out an exemption for information subject to the GLBA. D.E. 45 at 32. But the carveout says in full:

> This title shall not apply to personal information collected, processed, sold, or disclosed subject to the federal Gramm-Leach-Bliley Act (Public Law 106-102), and implementing regulations, or the California Financial Information Privacy Act (Division 1.4 (commencing with Section 4050) of the Financial Code), or the federal Farm Credit Act of 1971 (as amended in 12 U.S.C. 2001-2279cc and

implementing regulations, 12 C.F.R. 600, et seq.). *This subdivision shall not apply to Section 1798.150.*

Cal. Civ. Code § 1798.145(e) (emphasis added). That is precisely one of the sections at issue in this case. No information is collection, processed, sold, or disclosed pursuant to the Gramm Leach Bliley Act in any event, making this exception irrelevant. Further, in general, "a financial institution shall not sell, share, transfer, or otherwise disclose nonpublic personal information to or with any nonaffiliated third parties without the explicit prior consent of the consumer to whom the nonpublic personal information relates." Cal. Fin. Code § 4052.5. Plaintiffs here allege enough to assert this claim. D.E. 31 at ¶¶ 1, 55, 118.

Lakeview's third argument regarding proper notice is a red herring—*if* there is a deficiency, the remedy is to amend. Courts have found that statutory damages are sufficiently alleged in amended complaints following the expiration of the 30-day period. *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *13 (D. Nev. Sept. 19, 2024); *see also In re Progressive Leasing Breach Litig.*, No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744, at *20 (D. Utah Jan. 16, 2025) (rejecting *Griffey* case). The CCPA claim should proceed.

### D. The Breach of Contract Claim is Sufficiently Pled.

The implied contract claim survives. D.E. 31 at ¶¶ 229–235. Lakeview promised to keep Plaintiffs' confidential information safe and instead shared it. D.E. 31 at ¶¶ 79, 80, 91, 92. Courts have found implied contract claims survive where individuals disclose sensitive information to receive a benefit. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1144 (C.D. Cal. 2021). This claim survives.

### E. The Unjust Enrichment Claim Survives.

As Lakeview admits, unjust enrichment is a cognizable claim under California law. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (plaintiffs stated claim for unjust enrichment under California law as alternative to contract theory); *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*, 61 Cal.4th 988, 998 (2015) ("An individual who has been unjustly enriched at the expense of another may be required to make restitution"). The Amended Complaint is replete with allegations that Lakeview received and unjustly retained a benefit at plaintiffs' expenses, so this claim survives. *E.g.*, D.E. 31 at ¶¶ 145, 209, 241.

### F. Declaratory Judgment Claim

Plaintiffs' claims here are well pled. The Amended Complaint specifically alleges irreparable harm. D.E. 31 at ¶ 250. That is all that is required at this stage. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 604 (N.D. Cal. 2021) ("the Declaratory Judgment Act 'specifically allows a plaintiff to seek declaratory relief regardless of other claims brought.'") (quoting *In re Am. Bankers Ins. Co. of Fla.*, 2020 WL 137164, at *3 (N.D. Cal. Jan. 13, 2020)).

### G. Breach of Confidence

The breach of confidence claim survives. Plaintiffs are permitted to plead in the alternative by the plain text of Rule 8. Thus, this claim can stand alongside a claim for breach of contract. There is nothing untoward about alleging a contract theory in one count and a non-contract theory in another count at the pleading stage. Lakeview offers a nonsensical argument that somehow, a claim in a prior, non-operative complaint in this case operates as a judicial admission. This is not a game of "gotcha" where Lakeview can somehow hold it against Plaintiffs that they exercised their rights to amend under Rule 15. A breach of confidence claim can stand alongside a contract theory pled in the alternative – period.

**H.  The CIPA Claim Survives.**

First, Lakeview alleges that Plaintiffs' claim under Section 631(a) cannot survive because the information at issue is not "contents" of a communication. D.E. 45 at 37. Lakeview further asserts that the information allegedly shared is simply "record information." The Amended Complaint contains extensive information regarding the contents of the communications shared. D.E. 31 at ¶¶ 269, 273, 295. And information like the kind of loan you want, your account number, and payment history are not record information. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("Under the Fourth Amendment, courts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy)."); *Gershzon v. Meta Platforms, Inc.*, No. 23-CV-00083-SI, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) ("This type of information is substantive and personal, as it shows that Gershzon has a disability (or believes that he has a disability) and that he requires a disability parking placard."). The information alleged in the complaint is far more than "record information." D.E. 31 at ¶¶ 55, 56, 60, 63, 111; *see also Shah*, 768 F. Supp. 3d at 1054 ("Because Plaintiffs' communications included Plaintiffs' personal information, Defendant therefore disclosed contents of the communication."). Lakeview transmitted personally identifying financial information. D.E. 31 at ¶¶ 55, 62, 124, 133, 273. So the CIPA claim should proceed.

Lakeview's argument that visiting the URL with the heading "Leverage Your Home Equity For the Cash You Need" is "not particularly informative," D.E. 45 at 38, is wrong. "Leverage Your Home Equity For the Cash You Need" communicates that the customer-consumer is looking for a specific financial product that would attract certain kinds of advertisers to target that person. Maybe the customer is trying to complete a home renovation product, pay for their kid's education,

or otherwise needs cash and wants to tap into their equity to do it. By virtue of sharing what page the consumer was on, D.E. 31 at ¶¶ 69–71, Lakeview communicates personal financial information to tech companies. This kind of information is very valuable to any number of companies looking to advertise, including rival financial firms, construction businesses, or any number of other companies. And whether communications are read in transit is a "fact-intensive question that depends on how the challenged technology and processes actually work[.]" *Riganian v. LiveRamp Holdings, Inc,* 2025 WL 2021802 at *10 (N.D. Cal. Jul. 18, 2025). And the Court must presume that Plaintiffs' allegations regarding the contents of the communications are true. D.E. 31 at ¶ 276.

The Section 632 claim survives. The caselaw cited by Lakeview involved communication with a company that sold pizza – a far cry from communications with a mortgage company. *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *5 (S.D. Cal. May 8, 2024) ("The type of data allegedly collected here is also a far cry from the type of data that supports a finding of a reasonable expectation of privacy.") (specifically citing caselaw from California regarding "financial information"). This claim survives.

## I.   The ECPA Claim Survives

Lakeview next asserts that Plaintiffs improperly invoke the crime-tort exception to the ECPA. D.E. 45 at 40. Lakeview alleges that it must have had a tortious purpose separate and distinct from the collection and disclosure. As other courts have found, the crime-tort exception applies here. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. July 18, 2025) ("Because Plaintiffs have otherwise adequately alleged that LiveRamp intercepted their communications for the purpose of 'associating their data with preexisting [identity] profiles' and then preparing that data for sale on LiveRamp's data marketplace—triggering the crime-tort exception and rendering consent an inapplicable defense—the Court declines to dismiss their

Wiretap Act claim.") (internal citations omitted); *see also Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime – it was to make money.") (extensive analysis of crime-tort exception, relied on by *Riganian*); *Shah*, 768 F. Supp. 3d at 1053. The ECPA claim survives.

**J.    Florida Law Does Not Apply.**

Buried in the last section of its brief, Lakeview asserts an extension of its consent-based arguments, namely, that Plaintiff must have checked a box consenting to Lakeview's terms and conditions. D.E. 46-5, 46-11. First, as explained above, consent is a subject ill-suited to resolution at the motion to dismiss stage. This is especially true with sign-in wrap where the terms and conditions are buried amidst a sea of other text in the exact same shade of blue right below is. D.E. 46-11 at 2. These are complex assertions about so-called "browsewrap," "sign-in wrap," and "clickwrap." *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 763 (N.D. Cal. 2025) (explaining distinction). They should not be resolved here. Second, Plaintiff Idris resides in California and the real property he owns has a Lakeview mortgage. D.E. 31 at ¶ 17. This case has no connection to Florida whatsoever. Florida does not have similar laws to California, the Plaintiffs all have property in California, and Lakeview availed itself of the California marketplace by selling mortgages there. Florida law has no application here at all.

## **CONCLUSION**

The vision Lakeview articulates in its brief – that consumers actually benefit from the "routine" sharing of "limited" information – not only flies in the face of the allegations in the Amended Complaint but comes off as tone deaf and dystopian. This complaint explicitly alleges

that Lakeview shared incredibly sensitive financial information, like a consumer's account number and their payment history. Lakeview has filed an empty suit motion to dismiss that crows about how bare, unfounded, and unsupported Plaintiffs' allegations are. But this is a defense gloss on allegations that are well pled and pass muster under Rule 12. *Popa* recognized that sharing financial information could mean an individual has standing. Courts generally find in online tracking cases that where the consumer is interacting with a retailer or a vendor of a product like pizza or a retailer, there is no violation because there is no expectation of privacy. Health and financial information are different. So this complaint survives.

Dated: December 5, 2025                    Respectfully submitted,


*/s/ J. Gerard Stranch, IV (Pro Hac Vice)*
J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
**COHEN MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com

Carly M. Roman, No. 349895
**STRAUSS BORRELLI, PLLC**
2261 Market Street, Suite 22946
San Francisco, CA, 94114
Telephone: (872) 263-1100
Facssmilie: (872) 263-1109

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS
CASE NO. 3:25-CV-05087-TLT

22

croman@straussborrelli.com

***Counsel for Plaintiffs and the Proposed Classes***

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: December 5, 2025                 */s/ J. Gerard Stranch, IV*
                                        J. Gerard Stranch, IV