QUINN EMANUEL URQUHART & SULLIVAN, LLP
Viola Trebicka (Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Ryan Sullivan (*pro hac vice*)
ryansullivan@quinnemanuel.com
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200

*Attorneys for Defendant Lakeview Loan Servicing, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELIJAH IDRIS, GOWAN MCLIN, and JUSTIN BICKHAM individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LAKEVIEW LOAN SERVICING, LLC,<br><br>Defendant. | Case No.: 3:25-CV-05087-JSC<br><br>**LAKEVIEW LOAN SERVICING, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**<br><br>Hon. Jacqueline Scott Corley<br><br>Hearing Date: April 9, 2026<br>Hearing Time: 10:00 a.m. |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. PLAINTIFFS' OPPOSITION DOES NOT ESTABLISH ARTICLE III STANDING UNDER *POPA* OR OTHERWISE ..... 2

A. Popa Is Dispositive on the Pleadings ..... 2

B. The Uncontroverted Ali Declaration Confirms Plaintiffs Lack Standing ..... 5

II. PLAINTIFFS CONSENTED TO THE ALLEGED COLLECTION AND DISCLOSURE ..... 7

III. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(B)(6) ..... 9

A. Negligence (Count I) ..... 9

B. Comprehensive Computer Data Access & Fraud Act (CDAFA) (Count II) and Unfair Competition Law (UCL) (Count III) ..... 10

C. California Consumer Privacy Act (CCPA) (Count IV) ..... 11

D. Breach of Implied Contract (Count V) ..... 12

E. Unjust Enrichment (Count VI) ..... 13

F. Declaratory Judgment and Injunctive Relief (Count VII) ..... 13

G. Breach of Confidence (Count VIII) ..... 13

H. California Invasion of Privacy Act (CIPA) (Count IX) ..... 14

1. Section 631(a) ..... 14

2. Section 632(a) ..... 15

I. The Electronic Communications Privacy Act (ECPA) (Count X) ..... 16

IV. FLORIDA LAW APPLIES TO PLAINTIFF IDRIS' CLAIMS AND FORECLOSES HIS CALIFORNIA LAW CLAIMS ..... 16

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ........ 13

*In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........ 13

*Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983) ........ 7

*B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 10

*Balanzar v. Fidelity Brokerage Services, LLC*, 654 F. Supp. 3d 1075 (S.D. Cal. 2023) ........ 8

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ........ 17

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ........ 11

*Blumenfeld v. Regions Bank*, 374 F. Supp. 3d 1165 (N.D. Ala. 2019) ........ 3

*Calhoun v. Google LLC*, 113 F.4th 1141 (9th Cir. 2024) ........ 8

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 8

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549 (9th Cir. 2020) ........ 17

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010) ........ 4

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021) ........ 8

*In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024) ........ 12

*In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 10

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ..... 11

*Gabrielli v. Haleon US Inc.*,
No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ..... 9

*Heagerty v. Equifax Info. Servs. LLC*,
447 F. Supp. 3d 1328 (N.D. Ga. 2020) ..... 3

*Hernandez v. DTI GmbH*,
No. 21-cv-04065, 2024 WL 3939569 (N.D. Cal. Aug. 26, 2024) ..... 4

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ..... 17

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ..... 7

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ..... 4

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) ..... 17

*Marden v. LMND Med. Grp., Inc.*,
No. 23-CV-03288-RFL, 2024 WL 4448684 (N.D. Cal. July 3, 2024) ..... 9, 10

*Nayab v. Capital One*,
942 F.3d 480 (9th Cir. 2019) ..... 3

*Parziale v. HP, Inc*,
No. 19-cv-05363, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ..... 4

*Pemberton v. Restaurant Brands International, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ..... 3

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..... 4

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ..... 16

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..... 1, 2, 3, 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..... 10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..... 15, 16

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 11

*Ruiz v. Gap, Inc.*,
622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd,* 380 F. App'x 689 (9th Cir. 2010).......... 9, 10

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
343 F.3d 1036 (9th Cir. 2003).......... 6

*Scott v. Kuhlmann*,
746 F.2d 1377 (9th Cir. 1984).......... 8

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 8, 10, 11, 13

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).......... 8, 15

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025).......... 11

*Snyder v. TAMKO Bldg. Prods., Inc.*,
No. 15-cv-01892, 2019 WL 4747950 (E.D. Cal. Sept. 30, 2019).......... 15

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025).......... 16

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014) .......... 10

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024).......... 15, 16

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014).......... 14

**Statutes**

18 U.S.C. § 2511(1) .......... 16

18 U.S.C. § 2511(2)(c) .......... 16

Cal. Civ. Code § 1798.100-148.......... 11, 12

Cal. Penal Code § 631(a).......... 14, 15

Cal. Penal Code § 632(a).......... 15

**Rules/Other Authorities**

Fed. R. Civ. P. 8 .......... 14

Fed. R. Civ. P. 12(b)(1) .......... 1
Fed. R. Civ. P. 12(b)(6) .......... 9
Fed. R. Evid. 201 .......... 4

# INTRODUCTION

Plaintiffs describe Lakeview's motion as "tone deaf" and "dystopian," ECF 51 ("Opp.") at 4, 21, because it explained many companies (including Lakeview) use website analytics for non-invidious commercial purposes, and not to "harvest[] consumer[] identit[ies]." *Id.* at 1. Such empty rhetoric is the consistent thread weaving through plaintiffs' arguments against dismissal. Such bluster is unhelpful to plaintiffs' cause and the task before the Court, and highlights that rhetoric is ***all*** plaintiffs have to support their case.

Consider, for example, plaintiffs' response to the threshold inquiry of Article III standing. Under *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), plaintiffs lack Article III standing because they have not alleged any concrete injury analogous to the types of "highly offensive" intrusions or disclosures traditionally vindicated by common law privacy torts. Lakeview devoted a substantial portion of its motion and supporting documents (including Mr. Ali's declaration in support of Lakeview's Rule 12(b)(1) factual standing challenge) to establishing that the specific information plaintiffs allege was collected and/or disclosed about ***them***—commercial browsing activities, customer status, and cookie identifiers, ECF 31, ¶¶124, 133—is not "highly offensive," and does not confer Article III standing. Plaintiffs do not meaningfully contest that analysis, nor have they opposed Lakeview's Request for Judicial Notice or objected to Mr. Ali's declaration.

Tacitly conceding that none of the information plaintiffs specifically allege they shared with Lakeview was sensitive, plaintiffs' opposition zeroes in on a single allegation asserting Microsoft Clarity transmitted data from "inside the consumer payment portal." Enter the inflammatory rhetoric: Plaintiffs spin from that single allegation tales of sensitive information one ***might*** see in a portal for managing a mortgage account or making payments on it. But no such portal exists on *lakeview.com*. Loan servicing occurs exclusively on independent subservicer websites that Lakeview does not control. ECF 45-1, ¶¶ 6-9. Indeed, a webpage cited in plaintiffs' amended complaint, ECF 31 ¶ 125 n.55, confirms Lakeview customers log in to their subservicer's websites to manage their accounts and make payments. This dispositively contradicts this single allegation on which plaintiffs now premise their claims to standing. The Court should dismiss this case in its entirety for lack of Article III standing.

Beyond standing, plaintiffs' claims fail because plaintiffs consented to the challenged conduct. Plaintiffs have judicially admitted Lakeview has express contracts with its customers (including plaintiffs) in the form of Lakeview's privacy policy and notice. *See* ECF 31, ¶¶ 81, 91. Lakeview's motion showed the policies comprehensively disclose that Lakeview collects browsing data and shares it with third-party advertising partners, ECF 45 ("Mot.") at 14-17, an analysis plaintiff's opposition fails to address. Plaintiffs have not identified a single factual dispute regarding Lakeview's policies or consent that requires discovery or a trial.

Finally, each of plaintiffs' ten individual claims fails for additional claim-specific reasons. As with plaintiffs' responses regarding standing and consent, plaintiffs' arguments pay no mind to what their complaint actually says. Where plaintiffs have pleaded facts that are inconvenient to or dispositive of their claims, they simply ignore them or wave them off (erroneously) as "pleading in the alternative"; where an absence of allegations defeats their claims, plaintiffs simply demand discovery as though discovery is a reward conferred on plaintiffs who are unable to plead facts to support a viable claim instead of plaintiffs who have stated a plausible claim for relief to aid in resolving factual disputes. Plaintiffs do not identify a single factual dispute warranting discovery or deferring a decision on the pleadings.

The Court should grant Lakeview's motion to dismiss and, because this is plaintiffs' second bite at the apple, afford no leave to amend.

## ARGUMENT

### I. Plaintiffs' Opposition Does Not Establish Article III Standing Under *Popa* or Otherwise

#### A. Popa Is Dispositive on the Pleadings

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) makes clear that not every collection or disclosure of information will confer Article III standing and unlock the doors of the federal courthouse. To the contrary, privacy plaintiffs must still plead an injury of the nature traditionally vindicated by common law privacy tort claims. Non-sensitive information—such as how far a person scrolls on a webpage—does not suffice.

Plaintiffs attempt to coopt *Popa* by claiming that its *dictum* reference to "sensitive medical or financial information" confers standing in this case. *See* Opp. at 6-7. But *Popa* reinforced, and

did not replace, the fundamental principle that both relevant privacy torts—intrusion upon seclusion and public disclosure of private facts—require conduct that is "highly offensive to a reasonable person," for which *Popa* confirmed one needs to plead the disclosure of "sensitive" information. *Popa*, 153 F.4th at 791. The fact that someone visited a mortgage website, browsed refinancing options, or viewed a general information page with the title "Leverage Your Home Equity for the Cash You Need" does not rise to that standard, and *Popa* does not say otherwise. The alleged disclosures here involve mere commercial interests that are not remotely similar to the highly offensive disclosures actionable at common law, which is precisely what *Popa* held insufficient.

The cases cited by plaintiffs confirm this principle. For example, *Nayab v. Capital One*, 942 F.3d 480, 490-91 (9th Cir. 2019), *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1337 (N.D. Ga. 2020) and *Blumenfeld v. Regions Bank*, 374 F. Supp. 3d 1165, 1170 (N.D. Ala. 2019) each involved unauthorized access to credit reports that are afforded uniquely substantial protections under the FCRA. Likewise, plaintiffs' reliance on this Court's recent decision in *Pemberton v. Restaurant Brands International, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) (Corley, J.) is misplaced; there, the Article III injury was based on the collection of information plaintiff *had expressly excluded from collection*, such that the injury conferring standing was based on the plaintiff's loss of control over his information. *Id.* at *3-4.

Paragraph 55, to which plaintiffs repeatedly cite, is contradicted by other allegations in the complaint. Paragraph 55 alleges Microsoft Clarity transmitted "account/loan number," "payment history (including payment amounts)," and "URLs from inside the consumer payment portal." ECF 31, ¶55; Opp. at 7. But a webpage plaintiffs incorporate by reference in their amended complaint,[1]

[1] Exhibit A, the webpage titled *Log In to My Servicer – Lakeview* (https://lakeview.com/log-in-to-my-servicer/) as it existed in May 2025, is incorporated by reference in plaintiffs' amended complaint. A document is incorporated by reference where the complaint necessarily relies upon it, its authenticity is not in question, and it is relevant. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). All three elements are met. *First*, plaintiffs use this webpage to allege that plaintiff McLin has standing where his mortgage was transferred "to Lakeview and/or Mr. Cooper." *See* ECF 31, ¶ 125 & n.55. *Second*, the authenticity of the document is not in question; Lakeview used the Internet Archive's Wayback Machine to access the version of the webpage plaintiffs cited, a source for webpages courts regularly find "inherently reliable." *Parziale v. HP, Inc*, No. 19-cv-05363, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (collecting cases). *Third*, the webpage is relevant because it contradicts of the allegations in paragraph 55 of the amended complaint

*see* ECF 31, ¶ 125 n.55 and Exhibit A to this brief, and that is further or alternatively subject to judicial notice,[2] confirms customers manage their mortgage accounts and make payments by ***logging into their subservicer's payment portal***, not through any payment portal on Lakeview's website. Specifically, the "Log In to My Servicer" page explains Lakeview "partner[s] with various [subs]ervicers to service loans on [Lakeview's] behalf" and customers must "log into their [applicable subservicer's] site" to manage their loans or make payments. The Court "need not accept as true allegations contradicting documents that are referenced in the complaint[.]" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Although plaintiffs' opposition focuses singularly on the alleged collection and disclosure of information associated with a payment or account management portal (such as payments, payment status, and delinquencies) plaintiffs have not plausibly alleged any such portal exists on Lakeview's website when the very webpage they cite regarding such accounts confirms payment and account management occurs on subservicers' sites.

Finally, even if Paragraph 55 were plausible, it would not confer standing because plaintiffs do not allege their own sensitive information was disclosed. When describing the information disclosed about them, plaintiffs identify only non-sensitive information: "[e]xisting user or Customer status," "[b]rowsing activities," "[w]hen Plaintiff called Lakeview," and cookie identifiers. ECF 31, ¶¶ 124, 133, 134. Although plaintiffs urge the Court to "infer[]" their account numbers were shared because Clarity allegedly collected such information in 2023 and they were customers in 2023, Opp. at 7-8, *Popa* rejects this approach: Article III requires injury that is "concrete and particularized"—not speculative inferences. 153 F.4th at 788.

---

regarding information purportedly shared in a non-existent Lakeview "payment portal," which plaintiffs cite in their opposition ***no less than 10 times***. *See Hernandez v. DTI GmbH*, No. 21-cv-04065, 2024 WL 3939569, at *1 (N.D. Cal. Aug. 26, 2024) ("Where the text of the referenced material differs from the factual allegations in the SAC, the Court, ***as it must***, considers the referenced material in full." (emphasis added)).

[2] Additionally, or alternatively, the Court may take judicial notice of the website under Federal Rule of Evidence 201 as information "that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (explaining public websites are "[p]roper subjects of judicial notice when ruling on a motion to dismiss").

Plaintiffs' hyperbolic analogies in their opposition notwithstanding,[3] plaintiffs' amended complaint simply does not plausibly allege the disclosure of plaintiffs' ***sensitive*** financial information, as required for standing.

B. The Uncontroverted Ali Declaration Confirms Plaintiffs Lack Standing

Although plaintiffs' lack of standing is apparent from the face of the pleadings, Lakeview also asserts a factual challenge to standing supported by the declaration of Mr. Kawsar Ali, Lakeview's Website Manager. Mr. Ali attested in his sworn testimony that, among other things, (i) the Meta Pixel on the Lakeview website is configured to transmit only pageview events, and that Lakeview terminated its Meta Pixel account in 2022; (ii) the Google Analytics code is configured to capture only a limited number of events (none of which are sensitive in nature); (iii) the Microsoft Clarity code is configured to mask all user-typed and dropdown inputs; and (iv) that the *lakeview.com* website directs users to the third-party subservicers' websites for customers to manage their loans because such functionality does not exist on the *lakeview.com* website. *See generally* ECF 45-1. Mr. Ali's testimony ***confirms*** Lakeview customers cannot input sensitive loan-related financial information on *lakeview.com* to service their loans, because they cannot service their loans on the *lakeview.com* website. And even if they could, the software is configured to protect their identity and information. Thus, there could not be a harm closely related to a traditional privacy tort.

Rather than engage with Lakeview's factual challenge to plaintiffs' Article III standing, plaintiffs dismiss Mr. Ali's declaration as "useless" and "wholly unhelpful." Opp. at 10-11. But when a defendant presents a factual standing challenge, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036,

[3] Plaintiffs' colorful analogies are divorced from both the pleadings and reality. For example, plaintiffs' "Mrs. Jones," teary-eyed in her Sunday finery, confesses she cannot make ends meet without refinancing or taking out a home equity loan, only to be gossiped about by drunken barflies(!). *See* Opp. at 9. There is no suggestion these details are available to, much less shared by, Lakeview's website. Even with respect to "Mrs. Jones'" general interest in a loan, such interest provides no basis to infer she cannot make ends meet. Borrowers may refinance or take out home equity loans for any number of reasons, including reasons that reflect financial savviness, not financial distress.

1039 n.2 (9th Cir. 2003). Plaintiffs furnish no such evidence, nor did they file any objection to Mr. Ali's declaration.[4]

Plaintiffs do not reference the Meta or Google software in their argument for standing, instead relying on the allegations regarding the Clarity software in paragraph 55 of their amended complaint. But Mr. Ali's testimony refutes paragraph 55's allegation that Clarity collects the kind of financial information entered by a consumer seeking to service or apply for a mortgage: (1) Clarity masks all content entered in input boxes, a setting that "cannot be changed," Ali Decl. ¶ 20; (2) Clarity's "Balanced" mode masks "sensitive content" including numbers and email addresses appearing on webpages, *id*. ¶ 21; (3) Clarity data is anonymized and does not identify the specific *lakeview.com* visitor, *id*. ¶ 22; and (4) no "consumer payment portal" exists on *lakeview.com*, *id*. ¶¶ 6-9. With respect to the last point, Mr. Ali's testimony confirms (as a webpage plaintiffs cite in their complaint also establishes) that the *lakeview.com* website does not have any consumer payment portal or any place on the website in which a customer can service or make payments on their loan. *Id*. Rather, "all servicing of Lakeview loans occurs ***on the independent subservicer websites***, [and] the *lakeview.com* website ***does not have any mechanism*** for Lakeview customers to log into the lakeview.com website to service their loan." *Id.* ¶ 9 (emphases added).

Plaintiffs' opposition fails to disturb Mr. Ali's factual conclusions. Its complaint that Mr. Ali did not work at Lakeview until August 2021 is irrelevant because plaintiffs allege they became customers of Lakeview in 2022 and 2023. *Id.* ¶¶ 119, 125, 129. That there were alleged deployments of Google code predating Mr. Ali's tenure do not undermine Mr. Ali's knowledge regarding Microsoft Clarity code configurations. *See* Opp. at 11 (citing ECF 31, ¶ 53). Further, although plaintiffs complain Mr. Ali testifies about how the Lakeview website and alleged code are configured *presently*, plaintiffs have not alleged the configurations changed over time—either in their amended complaint or even in their opposition. "Maybe the experts will find something!" *see* Opp. at 11, is not a defense to a factual challenge to standing.

[4] Plaintiffs complain the Ali Declaration is untested by cross-examination, but they did not ask to depose Mr. Ali before filing their opposition. The Court should reject their attempt to maintain the illusion that the fact discovery they want to take will salvage their insufficient claims.

Contrary to plaintiffs' claim that the issues here are "highly technical," Opp. at 11, whether the Lakeview website has a consumer payment portal is a simple inquiry with a simple answer: It does not. That makes implausible plaintiffs' allegations in Paragraph 55 about ***actual*** financial information having been entered into the Lakeview website. All plaintiffs are left with are the scrolling, masked inputs, and other innocuous data discussed in Lakeview's motion.

Plaintiffs claim the Court must allow discovery if the jurisdictional and merits issues are intertwined. Opp. at 11. That is wrong. Courts apply a summary judgment standard where there are concerns that resolving standing will require them to decide merits issues. *See, e.g.*, *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Under that standard, plaintiffs must demonstrate a genuine dispute of material fact to survive dismissal. They have not. Plaintiffs have failed to allege any plausible concrete injury giving rise to Article III standing and this case should be dismissed with prejudice on this threshold ground.

## II. Plaintiffs Consented to the Alleged Collection and Disclosure

Where, as here, plaintiffs allege they agreed to comprehensive privacy policies, attach those policies to the complaint, and fail to allege specific misrepresentations in those policies, consent is a question of law the Court can and should decide at the pleading stage. Plaintiffs' opposition fails to even argue, much less show, there is any daylight between the alleged disclosures and the allegedly wrongful conduct. Consent is dispositive here.

*First*, courts can and do decide consent at the pleading stage, as demonstrated in *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1051-57, 1058-60 (N.D. Cal. 2025), where the court found the privacy policies "clearly disclosed" the complained-of conduct and plaintiff was put on notice of these policies at multiple junctures. Plaintiffs' one-sentence attempted distinction—that the user "had to consent over and over every time they made a purchase," Opp. at 13—is a distinction without a difference outside of the specific VPPA context considered there. Dispositive for other claims was not the repeated act but rather the clear disclosures in privacy policies. *See Lakes*, 777 F. Supp. 3d at 1057, 1059-60. (In any event, plaintiffs allege they visited *lakeview.com* multiple times, where cookie banners put them on notice each time of Lakeview's privacy policies. ECF 31, ¶¶121, 126, 130; ECF 46-3.)

That plaintiffs' consented is further bolstered by plaintiffs' own allegations that "the contracts that Lakeview has with its Customers include the 'Privacy Notice' and 'Privacy Policy'" and that customers read and rely on these contracts. ECF 31, ¶¶ 81, 91. By alleging the policies are binding contracts, plaintiffs judicially admitted consent. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

Plaintiffs' cited cases do not assist their argument that consent cannot be decided at the motion to dismiss stage on these facts. In none of these cases did the plaintiffs—like the plaintiffs here—affirmatively allege they agreed to binding contracts governing the alleged data practices at issue. *See, e.g.*, *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) (consent was "a factual question" after analyzing and finding specific gaps between privacy policy at issue and conduct alleged in complaint);[5] *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (no mention of complaint allegations that plaintiff agreed to privacy policies). And *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 481 (N.D. Cal. 2021) and *Balanzar v. Fidelity Brokerage Services, LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) are inapposite because, like *Shah*, they involved competing factual allegations about whether defendants' practices were consistent with their privacy disclosures. Finally, *Calhoun v. Google LLC*, 113 F.4th 1141 (9th Cir. 2024), which involved summary judgment, stands for the principle that consent is an affirmative defense on which defendant bears the burden. *But see Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when. . . the defense raises no disputed issues of fact." (internal citations omitted)).

*Second*, plaintiffs argue Lakeview's policies are "appropos of nothing" because they allegedly do not match its practices. Opp. at 12. But plaintiffs' opposition does not address, much less refute, Lakeview's detailed analysis showing that its alleged practices are plainly disclosed in its privacy policies. ECF 45 at 14-17 (matching alleged practices to policy disclosures). Plaintiffs' argument, which boils down to "no need to read all those pesky specifics about the privacy policies;

---

[5] In any event, *Shah* was decided by Judge Thompson, who subsequently decided *Lakes*; accordingly, to the extent *Shah* ever stood for the proposition that consent cannot be decided at the motion to dismiss stage, it was negated by *Lakes.*

just trust us that Lakeview's practices were different," does not create a factual dispute regarding consent.

In any event, plaintiffs' contention that Lakeview's practices did not match its policies rings hollow. Plaintiffs withdrew their breach of express contract claim in amending their complaint. As Lakeview noted in its motion to dismiss this claim in plaintiffs' original complaint, *see* ECF 23 at 17, plaintiffs did not (and could not) allege any specific provision of the privacy policies that Lakeview had breached. Plaintiffs' reliance on *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, *12 (N.D. Cal. Aug. 29, 2025) is also unavailing. There, the court was considering a fraud claim (not consent) and the plaintiff had specifically alleged a difference between what he was told would happen if he rejected cookies and what actually happened when he rejected cookies. *Id.* Notably, although plaintiffs here allege "on information and belief" that cookie rejection is illusory on Lakeview's website, plaintiffs do not allege they rejected cookies at any time.

Plaintiffs' opposition fails to address, and therefore concedes, that the alleged wrongful conduct was disclosed and consented to by plaintiffs. The Court should dismiss the amended complaint on the basis of consent without leave to amend.

## III. Plaintiffs' Complaint Fails to State a Claim Under Rule 12(b)(6)

### A. Negligence (Count I)

Under California law, a plaintiff must allege "appreciable, nonspeculative, present harm" to bring a negligence claim. *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009), *aff'd,* 380 F. App'x 689 (9th Cir. 2010). Plaintiffs argue their "embarrassment, humiliation, emotional distress, and [the] decreased value of their information," ECF 51 at 14, suffices, but they are wrong: The amended complaint includes no non-conclusory allegations supporting these claims, and does not plead a market for plaintiffs' personal information in which plaintiffs can participate.

Plaintiffs' attempt to distinguish *Marden v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4448684 (N.D. Cal. July 3, 2024), by complaining it "expended one sentence" on negligence, fails. The brevity of *Marden's* analysis shows the finding was obvious, not unpersuasive: the *Marden* plaintiffs alleged they received "targeted health ads" but failed to state how these ads "caused them injury or mental distress." *Id.* at *5. So too here: Plaintiffs allege they

received mortgage-related ads, ECF 31, ¶¶ 123, 128, 132, but never explain how these generic advertisements caused embarrassment or distress. In both cases, nothing more needs to be said. Similarly, plaintiffs' claim its allegations are "more specific" than those in *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) falls flat. In *R.C.*, the court dismissed negligence claims because allegations of "embarrassment, emotional distress, humiliation and loss of enjoyment of life" (among others) were "too vague and conclusory to survive." 733 F. Supp. 3d at 897-99. Plaintiffs' allegations here—"embarrassment, humiliation, frustration, and emotional distress," ECF 31, ¶ 179—are both nearly identical and equally lacking in factual detail.

Plaintiffs' cited authorities do not change the conclusion. For example, in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) (cited at Opp. at 14) the parties did not focus on the injury requirement for California common law negligence claims. And the analysis cited by plaintiffs relates to injury for standing purposes, *see id.* at 799, but even injuries sufficient to confer Article III standing do not necessarily "rise to the level of appreciable harm necessary to assert a negligence claim under California law." *Ruiz*, 622 F. Supp. 2d at 913. Likewise, *B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305, at *10 (C.D. Cal. Feb. 1, 2024) offers no analysis and merely cites to *In re Facebook*. And *In re Target Corp. Data Security Breach Litigation*, 66 F. Supp. 3d 1154, 1171 (D. Minn. 2014), is readily distinguishable; there, the plaintiffs alleged specific harms related to preventing "unauthorized charges," "canceling . . . compromised accounts," and "obtain[ing] credit monitoring services." Plaintiffs here have alleged no such specific harms and their negligence claims should be dismissed.

B. <u>Comprehensive Computer Data Access & Fraud Act (CDAFA) (Count II) and Unfair Competition Law (UCL) (Count III)</u>

Plaintiffs do not even *attempt* to address Judge Thompson's dismissal of the CDAFA and UCL claims alleged by plaintiffs' same counsel in *Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1047-48 (N.D. Cal. 2025). Judge Thompson dismissed identically-pleaded CDAFA claims in *Shah* because plaintiffs confused alleged gains by the defendant with losses by plaintiffs, and cannot claim diminution in value of information as damages. *Id.* at 1048; ECF 31, ¶¶193, 214-

17 *with* ECF 46-1 ¶¶ 261, 282-85. Plaintiffs' counsel repeat their error here, defeating statutory standing under both CDAFA and the UCL. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (UCL requires plaintiff "lost money or property as a result of the unfair competition").

Plaintiffs' cited authorities do not salvage their deficient CDAFA and UCL claims. *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) (cited by plaintiffs) ***dismissed*** the plaintiffs' UCL claim at the pleading stage without leave to amend for failure to plead statutory standing for a UCL claim based on "generalized allegations . . . regarding the value of web browsing data" because plaintiffs' unjust enrichment theory was not a "'loss of money or property' or a 'tangible increased cost or burden to the consumer,' and not merely [] general 'damage.'" *Id.*, 2025 WL 2210002, at *3. In *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025), Opp. at 15, there was an evidentiary record of a market for plaintiffs' data and the value of that data (not even alleged here). Similarly, *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010)—which merely observed that CDAFA requires "any amount of damage or loss" in finding that standard was met on very different facts—does not help plaintiffs who have not alleged ***any*** actual loss to themselves.

C. <u>California Consumer Privacy Act (CCPA) (Count IV)</u>

Plaintiffs' CCPA claim fails for at least three reasons.

*First*, plaintiffs concede by their silence that their CCPA claim fails to the extent it is based on any section or subsection other than subsection 1798.150(a), requiring dismissal of this claim to the extent it is based on any other CCPA provision. Instead, plaintiffs argue they have alleged a violation of subsection 1798.150 because no "security breach" is required if "the 'defendants disclosed plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices.'" Opp. at 16. But plaintiffs do not allege "a failure to maintain reasonable security practices"; they allege privacy practices they claim they do not like. The two are not the same and, in any event, plaintiffs have not alleged any facts supporting a failure to maintain reasonable security practices.

*Second*, plaintiffs do not address, and therefore concede, that plaintiffs' section 1798.150(a) claim fails because they do not allege any disclosure of information meeting the specific statutory

requirements. Mot. at 20-21 (summarizing combinations of data required, not alleged here). Plaintiffs' only "response," Opp. at 16-17, is a misdirect. Lakeview did not claim the cited provision regarding the GLBA does not apply to Section 1798.150; its argument was expressly directed to "[p]laintiffs' claims based on Sections 1798.100-148." Mot. at 20 n.17. In any event, the dispositive issue is not related to the GLBA but rather to the simple question of whether the alleged disclosures meet the statutory requirements of the CCPA. They do not, as plaintiffs concede by silence. Plaintiff's concession is dispositive here.

*Third*, plaintiffs likewise do not dispute they failed to provide the required 30-day pre-suit notice for statutory damages. Opp. at 17; *see also* ECF 31, ¶ 227. Plaintiffs miscite *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024) for the proposition that the remedy for failure to provide notice is amendment, not dismissal. That case is readily distinguishable because the plaintiffs there did not plead a CCPA statutory damages claim in their original complaint, and they provided the required notice some four months before filing an amended complaint first asserting that claim. *Id.* at *12-13 ("The defendant was provided the statutorily mandated opportunity to cure before the plaintiff ever took the claim to court."). That is not what happened here, ECF 1, ¶ 225 (allegation in original complaint that plaintiffs "will" send CCPA notice), and, in fact, *Eureka Casino* expressly distinguishes this scenario. 2024 WL 4254198, *13 (distinguishing situations where "a plaintiff [] initially file[d] a complaint seeking CCPA statutory damages in violation of the thirty-day notice requirement, only to file an amended complaint with the same claim thirty days later"). Count IV should be dismissed in its entirety, but at minimum, any request for statutory damages should be dismissed with prejudice.

D. <u>Breach of Implied Contract (Count V)</u>

Plaintiffs' five-line defense of its breach of implied contract claim does not salvage it.

*First*, it completely ignores plaintiffs' judicial admission that there are express contracts embracing the same subject matter, *i.e.*, Lakeview's collection, use, and disclosure of customer information. Mot. at 22 (citing original and amended complaints). "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

*Second*, plaintiffs fail to address *Shah*, which rejected this claim as pleaded by the same plaintiffs' counsel using materially identical allegations. 768 F. Supp. 3d at 1050-51; Mot. at 22. Plaintiffs' citation to *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130, 1144 (C.D. Cal. 2021), does not help because it did not address the requirement that an implied contract cannot exist if it covers the same scope as express agreements.

The Court should dismiss plaintiffs' breach of implied contract claim just as the court did in *Shah* when faced with identical allegations.

E. Unjust Enrichment (Count VI)

Plaintiffs' response to Lakeview's motion to dismiss their unjust enrichment claim answers an argument plaintiffs concede Lakeview did not make (*i.e.*, whether California law recognizes a claim for unjust enrichment). Opp. at 18. Plaintiffs' response to Lakeview's actual argument (*i.e.*, that plaintiffs have not alleged that Lakeview sold any user data or unjustly retained a monetary benefit) fails to convince. Plaintiffs assert only that "[t]he Amended Complaint is replete with allegations that Lakeview received and unjustly retained a benefit at plaintiffs' expense[]," *id.* (citing to conclusory allegations Lakeview "retain[ed] the profit and/or other benefits"). ECF 31, ¶ 241; *see also id.*, ¶¶ 145, 209. Because plaintiffs fail to allege a single ***fact*** about this supposed "profit and/or other benefits," Count VI should be dismissed.

F. Declaratory Judgment and Injunctive Relief (Count VII)

Plaintiffs do not dispute that declaratory judgment and injunctive relief are remedies, not independent causes of action. Instead, they argue the remedies are "well-pled" because they allege irreparable harm. Opp. at 18 (citing ECF 31, ¶ 250). This argument fails for multiple reasons, including: (1) plaintiffs cannot demonstrate irreparable harm from conduct to which they consented, *see* Section II; (2) the possibility of "multiple lawsuits" or "not readily quantified" injuries, *see* ECF 31, ¶ 250, does not establish irreparable harm here (plaintiffs can recover damages for their past harms and, indeed, are seeking damages); and (3) Count VII necessarily fails with the failure of all substantive claims underlying it (indeed, plaintiffs cite no authority permitting declaratory or injunctive relief absent a viable substantive claim). Count VII should be dismissed.

G. Breach of Confidence (Count VIII)

As demonstrated in Lakeview's motion, plaintiffs' breach of confidence claim fails for the same reason their implied contract claim fails: plaintiffs have judicially admitted that express written contracts (Lakeview's privacy notice and policy) govern Lakeview's handling of customer information, which precludes an implied agreement on the same subject matter. Mot. at 23-24. Plaintiffs' invocation of Rule 8's allowance of alternative pleading, Opp. at 18, misses the point. Rule 8 permits pleading alternative legal theories based on uncertain facts—it does not permit plaintiffs to make definitive factual assertions that no party disputes (*e.g.*, express contracts exist regarding an issue) and then plead contradictory legal theories (*e.g.*, quasi-contractual claims covering the same issue exist). Moreover, plaintiffs' argument that Lakeview cannot rely on allegations in a "prior, non-operative complaint" as judicial admissions, *id*., is immaterial: plaintiffs repleaded the judicial admissions at issue in the operative amended complaint. ECF 31, ¶¶ 81, 91. Count VIII should be dismissed.

H. California Invasion of Privacy Act (CIPA) (Count IX)

1. Section 631(a)

Plaintiffs' claim under section 631(a) fails because (1) the information at issue is not "content" and (2) plaintiffs do not allege third parties read the information in transit.

*First*, plaintiffs specifically allege only: "[e]xisting user or Customer status," "[b]rowsing activities, including the pages and content Plaintiff viewed," "[w]hen Plaintiff called Lakeview," and cookie identifiers as the named plaintiffs' allegedly disclosed information. ECF 31, ¶¶ 124, 133, 134. *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) confirms that unadorned URLs and basic identification information are record data, not contents. Mot. at 25-26.

The argument that "account number[] and payment history are not record information," Opp. at 19, is of little use where plaintiffs do not allege their account numbers or payment history were disclosed. Plaintiffs make "specific allegations" about what information *might* be collected generally but engage in "tactful avoidance of clarification" regarding what information about the named plaintiffs was disclosed, and "the only reasonable inference the Court can draw is that Plaintiff cannot properly allege" that sensitive information was disclosed about them. *Snyder v. TAMKO Bldg. Prods., Inc.*, No. 15-cv-01892, 2019 WL 4747950, at *9 (E.D. Cal. Sept. 30, 2019).

Plaintiffs also argue the URL "Leverage Your Home Equity For the Cash You Need" is "content" because it communicates interest in a specific financial product. Opp. at 19. Just as viewing a general, publicly available web page pertaining to general health information is not personal health information, *see Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), viewing information about "cash out refinanc[ing]" and "home equity loans" is not personal financial information.

*Second*, plaintiffs do not allege Meta, Google, Microsoft, or any other third party read or attempted to read the information during transmission as required by Section 631(a). Mot. at 26-27. Plaintiffs' reliance on *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025), Opp. at 20, is misplaced because *Riganian* involved "specific factual allegations" of "real-time interception and contemporaneous reading," such as the use of "'event listeners' to detect specific types of contents of communications . . . and intercept those contents and simultaneously transmit them"). *Id*. at 1092 (emphasis omitted). No such allegations exist here.

2. <u>Section 632(a)</u>

Plaintiffs' sole argument in support of its Section 632(a) claim is that *Thomas v. Papa Johns International, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) (cited by Lakeview) involved a pizza company rather than a mortgage company. Opp. at 20. But the nature of the defendant's business does not control; what matters is whether there was an expectation of privacy in the specific communications.

In *Thomas*, the court found no expectation of privacy for internet communications with a commercial website even though those communications included names, addresses, and credit card information—information at least as sensitive as the browsing data and customer status alleged here. 2024 WL 2060140, at *5. Plaintiffs here visited a commercial website to browse publicly available information about mortgage products and, in one instance, to apply for a loan. Courts have consistently held that "[g]iven the inherent nature of the internet . . . consumers do not have a reasonable expectation of privacy over their activity in that space." *Id*. at *2. Count IX should be dismissed.

I. The Electronic Communications Privacy Act (ECPA) (Count X)

Plaintiffs do not dispute their ECPA claim fails under the "party to communication" exception to the ECPA, 18 U.S.C. § 2511(2)(c), which states that it is not unlawful for an individual to intercept a communication when either "such person is a party to the communication," *id*., ***unless*** the crime-tort exception to that exception applies. As explained in Lakeview's motion, under Ninth Circuit law, the "criminal or tortious purpose must be separate and independent from the act of the recording" itself. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Here, the only tortious purpose plaintiffs specifically allege is "invasion of privacy," ECF 31, ¶ 296, but that is the alleged tort of the interception itself, not a separate purpose.

Plaintiffs argue *Riganian*, 791 F. Supp. 3d at 1090-91 and *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025), support them. Opp. at 20-21. But these cases stand for the unremarkable principle that defendants cannot render an alleged tort or crime lawful for purposes of the crime-tort exception by describing it as the pursuit of financial gain, using examples of bank robbery and blackmail as crimes committed for personal gain. Here, plaintiffs allege no such crime or tort other than the purported invasion of privacy that is the recording itself. Count X should be dismissed.

IV. Florida Law Applies to Plaintiff Idris' Claims and Forecloses His California Law Claims

Plaintiffs offer no analysis of how California choice-of-law rules apply to this case, except to argue (without authority) that "Florida does not have similar laws to California" and proclaim (ignoring Lakeview's Florida headquarters, ECF 31, ¶ 20) that "[t]his case has no connection to Florida whatsoever." Opp. at 21. Of course, these analytically-untethered musings fail to address the Florida choice-of-law provision to which he admits he consented. Specifically, to create a Lakeview account to apply for a mortgage (as Mr. Idris alleges he did, ECF 31, ¶ 120), Mr. Idris was required to check a box accepting Lakeview's "Terms & Conditions," which were presented as a blue, underlined hyperlink and included a clear Florida choice-of-law provision. ECF 46-11; ECF 46-5 at 4 ("By accessing this website, you have directed your system to a computer located in the State of Florida. You agree that disputes arising out of or relating to the contents or use of this website are to be governed by the laws of the State of Florida."). Courts in this District regularly

enforce such agreements. *See, e.g.*, *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 941-42 (N.D. Cal. 2023) (enforcing arbitration provision where blue text hyperlinks to terms amid gray text, next to box user must check to accept, on uncluttered screens provided "'reasonably conspicuous notice'" of terms, as "routinely found" by courts).

Plaintiffs' contention, Opp. at 21, that the Court cannot consider choice of law unless and until they get discovery is unsupported (and wrong). Indeed, in the sole case cited by plaintiffs, *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755 (N.D. Cal. 2025), the court resolved whether the plaintiff was bound by website terms of use at the pleading and motion to compel arbitration stage. *Id.* at 761, 768; *see also Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 558-59 (9th Cir. 2020) (district court properly resolved choice-of-law at motion to dismiss stage); *Houtchens*, 649 F. Supp. 3d at 936-37 (enforcing click-wrap arbitration provision prior to discovery).

Here, no discovery is required to resolve these issues. Plaintiff Idris alleges he created an account and Lakeview has provided the relevant disclosures and "click" screens required to create an account as exhibits to its uncontested Request for Judicial Notice. *See* Mot. 29-30; ECF 46-5, 46-11. Plaintiffs have failed to identify any specific factual disputes that require discovery. Plaintiffs do not even deny plaintiff Idris must have checked the box accepting the Terms of Service (and Florida choice-of-law provision). *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (agreement enforceable if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box"). Because Florida law governs plaintiff Idris's claims, his California claims should be dismissed.

<u>Conclusion</u>

Plaintiffs filed their amended complaint with the benefit of Lakeview's fully-briefed motion to dismiss their original complaint, and they had ample notice of and opportunity to cure the defects in their pleading. They did not. Nor do plaintiffs identify any additional allegations they would assert to improve their pleading. The vague promise that future discovery might save untenable claims does not cut it. The Court should dismiss the amended complaint without leave to amend.

Dated: January 13, 2026

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By: */s/ Viola Trebicka*

Viola Trebicka (Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Ryan Sullivan (*pro hac vice*)
111 Huntington Avenue, Suite 520
Boston, MA 02199

*Attorneys for Defendant Lakeview Loan Servicing, LLC*